## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MARIA CANALES,<br>2501 S. Ocean Drive<br># 1032<br>Hollywood, Florida 33019<br><br>M SQUARED STRATEGIES, INC.,<br>1616 H Street, NW<br>Suite 1010<br>Washington, DC 20016<br><br><br>     Plaintiffs,<br><br>v.<br><br>HENRY M. PAULSON,<br>SECRETARY OF THE UNITED STATES<br>DEPARTMENT OF TREASURY<br>1500 Pennsylvania Avenue<br>Washington, D.C. 20220<br><br>THOMAS A SHARPE, JR.,<br>Office of the Procurement Executive<br>U.S. Department of Treasury<br>1500 Pennsylvania Avenue<br>Washington, D.C. 20220<br><br>and<br><br>DENNIS S. SCHINDEL,<br>Acting Inspector General<br>U.S. Department of Treasury<br>1500 Pennsylvania Avenue<br>Washington, D.C. 20220<br><br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No: |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF FROM DEBARMENT ORDER

Plaintiffs MARIA CANALES, hereinafter "Canales," and M SQUARED STRATEGIES, INC., hereinafter "M Squared," by and through their undersigned counsel, bring this action against HENRY M. PAULSON, SECRETARY OF THE UNITED STATED DEPARTMENT OF TREASURY, THOMAS A. SHARPE, JR. and DENNIS S. SCHINDEL, for temporary restraining order, preliminary and permanent injunctions and for declaratory judgment. In support thereof, Plaintiffs state as follows:

## PARTIES

1.      Maria (Mayi) Canales is an individual residing in Hollywood, Florida. She is the sole shareholder of M Squared, an 8(a)-certified disadvantaged small business (Hispanic woman owned). Canales owns 100% of the company's interests, and is the company's Chief Executive Officer.

2.      M Squared is a Maryland Corporation with its principal place of business located at 1616 H Street, N.W., Suite 1010, Washington, D.C. 20016.

3.      Henry M. Paulson is the Secretary of the United States Department of Treasury, which is a United States Federal Government Agency with its principal place of business in Washington, D.C., hereinafter "Treasury."

4.      Thomas A. Sharpe, Jr. is the Debarring Official at the Office of the Procurement Executive at the U.S. Department of Treasury whose principal place of business is in Washington, D.C.

5.      Dennis S. Schindel was the Acting Inspector General of the U.S. Department of Treasury, whose principal place of business is in Washington, D.C. The current Inspector General of Treasury is Harold Damelin.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter as an agency's decision to debar a government contractor is subject to review under the standards prescribed in the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq.

## FACTS

7.    Plaintiff Canales was employed by Treasury between June 1999 and October 2002 and worked in various capacities and positions.

8.    From June 1999 through July 2001, Canales worked as Director of Business Practices for the Chief Information Officer at Treasury.  From July 2001 to December 2001, Canales worked as Director of Operations and Deputy Chief Information Officer for the Chief Information Officer.  From December 2001 through April 2002, Canales served as Director of Security and Deputy Chief Information Officer, and from April 2002 through October of that year, Canales served as Acting Chief Information Officer and Acting Deputy Assistant Secretary - - all at Treasury.

9.    On June 6, 2002, the Office of Inspector General ("OIG") of Treasury interviewed Canales about gifts she received from an individual who acted as a consultant to various vendors, John M. Neal ("Neal").

10.    At this lengthy interview, Canales answered questions about her relationship with Neal, which was a long-standing personal one, and any gifts he had given her.

11.    At this interview, Canales was not represented by counsel.

12.    At the time, Neal was an independent consultant and had no contracts with Treasury.

13.    Immediately following the OIG interview, OIG personnel assisted Canales with the statements that she made in the interview, (they even dictated the wording on one of the sentences) and had her sign it as an affidavit.

14.    During the interview and in the affidavit, Canales stated that Neal gave her a vase of indeterminate value, which she stated she would return if the OIG deemed it appropriate, but no jewelry though she stated he offered her several small loose emeralds, which she declined.

15.    Canales later recanted that statement and admitted that Neal had given her several small emeralds valued at approximately $800.

16.    Late in October 2002, Canales voluntarily resigned as an employee of Treasury to open her own business to provide consulting services to both public and private clients. As of that date, she has declined any contracts from the Treasury Department.

17.    In January 2003, Canales started M Squared, a technology consulting services company.

18.    In 2003, Canales had contracts in the private sector with CACI, Entrust, AMS, Tripwire, Cap Gemini, Ngrain, and Sapeint.

19.    On April 19, 2004, Canales plead guilty to Magistrate Judge Magistrate Robinson in the United Stated District Court for the District of Columbia to the misdemeanor offense of making a false writing in violation of 18 U.S.C. § 1018.  At this hearing William W. Nickerson, counsel for Plaintiff, made clear in the record that her misstatement was not related to the acceptance of any gratuity or bribe.  Mr. Nickerson's statement, with the acquiescence of the AUSA, was accepted by Judge Robinson and was read into the record at sentencing on July 13, 2004. (Attached hereto as Exhibits A and B are true correct copies of the April 19, 2004 Arraignment Hearing and July 13, 2004 Sentencing Hearing).

20.    Canales was not charged or convicted of obstruction of an administrative investigation, 18 U.S.C. § 1505, witness tampering, 18 U.S.C. § 1512, or accepting unlawful

gratuities, 18 U.S.C. § 201 or of violating any other bribery or gratuity statute or anything to do with the awarding, conduct or administration of any

21.     In April 2004, Canales transitioned from private sector contracts to contracting with various United States Federal Government agencies.

22.     Since 2004, Canales and M Squared have had contracts with the Department of Veterans Affairs, the Department of Energy, and the Small Business Administration.

23.     Canales does not have, and never had, any government contracts with the Treasury.

24.     All of the Federal agencies with which Canales contracted from 2004 to the present knew of her misdemeanor conviction for making a false writing while she was a Treasury employee as she is required to fully disclose any convictions in the "Representations and Certifications" on all applications for government contracts.

25.     None of the Federal agencies with which Canales and M Squared contracted ever complained about her or M Squared since they began doing business with Canales and M Squared in 2004.

26.     On April 30, 2004, Dennis S. Schindel, Acting Inspector General of the Department of Treasury ("Schindel"), published the Department of the Treasury Office of the Inspector General's Semiannual Report To The Congress for the period  October 1, 2003 - March 31, 2004. The Semiannual Report falsely stated "[Canales] as part of or in exchange for a $5.8 million contract for cyber-security related software and consulting services, Treasury's former Acting CIO directed the contractor to place a $1.5 million subcontract with a company owned by a friend of the CIO.  In return, the CIO, received various gratuities including jewelry and use of a time-share rental property located in the Bahamas. **The former CIO agreed to …**

**be debarred from doing business with the federal government for life**." (Attached hereto as Exhibit C is the relevant excerpt of the report).

27.     On October 29, 2004, Schindel again published the Department of the Treasury Office of the Inspector General's Semiannual Report To The Congress for the period April 1, 2004-September 30, 2004, which again he reiterated his former **false statements** about Canales, the disposition of her case, and her debarment.  He stated that Canales "directed a consulting firm under contract with the Department to secure a $1.5 million subcontract with a company owned by the CIO's friend, as a part of (or in exchange for), a $5.8 million contract that Treasury awarded to the consulting firm.  The investigation revealed the acting CIO accepted various gratuities including jewelry and the use of a time-share rental property.  **The former acting CIO ... has been debarred for life from doing business with the federal government.**"  (Attached hereto as Exhibit D is the relevant excerpt of the report).

28.     The statements regarding Canales in the April 30, 2004 and October 29, 2004 Semiannual Reports To The Congress were false at the time they were made, and the OIG knew they were false, as there had been no debarment of Canales from doing business with the federal government, no agreement by Canales to be debarred from life from doing business with the federal government, and no debarment proceedings were initiated or pending by Treasury as of the dates of these publications.  Further, there was no conviction of Canales with regard to any Federal Government procurements.

29.     On November 29, 2005, <u>more that one (1) year after</u> Treasury's OIG had twice falsely notified Congress of Canales' alleged "lifetime debarment" in two semi-annual official reports to the Congress by Treasury's OIG, the defendants wrongfully and intentionally attempted to cover up their false statements by hurriedly issuing a notice that Treasury was

"initiating proceedings" to debar Canales, signed by Thomas A Sharpe, Jr., Debarring Official. (Attached hereto as Exhibit E is the Initiation of Debarment Proceedings dated November 29, 2005).

30.    The Notice of Initiation of Debarment Proceedings stated that it applies to M Squared as well as Canales.

31.    On March 17, 2006, Canales filed a response and protest and requested a Due Process hearing.  Defendants denied Canales' request for a Due Process hearing.

32.    Instead, on June 27, 2006, Defendant Sharp issued a Notice of Debarment prohibiting Canales and M Squared from participating in all United States Government procurement "throughout the executive branch of the Government."  The debarment is stated to be effective for three (3) years, commencing with an effective date of June 27, 2006 through June 27, 2009.  The Notice of Debarment did not contain any factual finding or cite any jurisdictional basis for the issuance of the Notice of Debarment .  (Attached hereto as Exhibit F is the Notice of Debarment dated June 27, 2006).

### COUNT I: PRELIMINARY INJUNCTION AGAINST THE DEBARMENT

33.    Canales and M Squared hereby incorporate by reference the allegations made in paragraphs 1 through 34 above, and reallege them as though fully set forth herein.

34.    If an injunction is not issued, Canales and M Squared will suffer irreparable harm, as its existing government contracts will be canceled or will not be renewed.

35.    The parties with whom Canales and M Squared have contracts will not suffer substantial harm if the injunction is issued.  None of the governmental agencies with which Plaintiffs have existing contracts have complained of Plaintiffs' performance, and all have praised or indicated their satisfaction with Plaintiffs' performance.  They will benefit from such

an injunction, which will save them the time and costs of finding a new contractor and the disruptions of services as a result.

36.     The public interest will be furthered by the injunction as Canales and M Squared currently have four (4) contracts with the Federal Government, paid for with public funds, and, therefore, there is a strong public interest in having an orderly, efficient, and expeditious government procurement process and to not waste government resources.  The public interest will suffer from an unlawful and improper disbarment initiated to avoid embarrassment to the Treasury OIG officials and to cover up the false statements made in two official reports to the Congress by these Defendants.

37.     There is a substantial likelihood of success on the merits.

38.     Plaintiffs never applied for or obtained any contracts with Treasury.  Treasury therefore lacks the jurisdiction to debar Plaintiffs from participating in government procurement requirements.

39.     The contracting officers of the agencies with which Plaintiffs did contract made an affirmative determination that Canales and M Squared were responsible prior to the award of each government contract to Plaintiffs.  None of these agencies or contracting officers have ever initiated debarment proceedings against Plaintiffs and all have indicated their satisfaction with Plaintiffs' performance of their contractual obligations.

40.     Each Government agency that Plaintiffs contracted with were aware of Canales' prior misdemeanor plea and conviction for making a false writing as Canales was required to and did disclose the misdemeanor conviction on the contract applications.

41.     All of the contracting officers representing the agencies with which Plaintiffs have contracts found Canales and M Squared to be presently responsible when they granted M

Squared contracts in 2004 and as they continued to do business with Canales and M Squared through the present date.

42. Treasury's notice of debarment was arbitrary and capricious, issued for improper purposes to attempt to conceal misconduct by the Defendants, and if not enjoined or immediately declared improper, null and void, it will result in irreparable harm to Canales and M Squared and their employees by causing the immediate termination of four (4) contracts with the Federal Government (two with the Department of Veteran Affairs and two with the Department of Energy), which will effectively destroy M Squared. These contracts are as follows:

a. M Squared has a subcontract with HPTi for the Department of Veterans Affairs, which will be terminated on July 31, 2006 if the debarment is allowed to stand;

b. M Squared has a prime contract with the Department of Veterans Affairs that is funded through September 30, but the Department will transition the contract to another contractor by early August if the debarment is allowed to stand;

c. M Squared has a prime contract with the Department of Energy that is funded through September 30, but the Department will transition the contract to another contractor by early August if the debarment is allowed to stand;

d. M Squared has another prime contract with the Department of Energy I-Manage that is funded through November 15, but the Department will transition the contract to another contractor by September if the debarment is allowed to stand;

WHEREFORE, Plaintiffs Canales and M Squared request that a temporary restraining order, preliminary injunction, and permanent injunction be issued with respect to the effectiveness and enforcement of the June 27, 2006 Treasury's debarment notice so that M Squared's government contracts with the Departments of Veteran Affairs and Energy are not terminated or transitioned and for such further relief as this Court deems proper.

## COUNT II: DECLARE DEBARMENT ORDER VOID AND UNENFORCEABLE

43. Canales and M Squared hereby incorporate by reference the allegations made in paragraphs 1 through 43 above, and reallege them as though fully set forth herein.

44.     Debarment is not in the public interest, as there is no issue of Canales' present or past responsibility as a government contractor and none of the agencies with which Plaintiffs contract have had any problems or issues with Canales or M Squared, and all have been aware of Canales' conviction for violation of 18 U.S.C. § 1018, a misdemeanor, unrelated to any business activities or performance of any government contracts held by Plaintiffs.

45.     The Government never charged Canales for violation of a bribery or gratuities statute or for any violation of any activity or responsibility concerned with United State Government procurement requirements.

46.     At the time of Canales' conviction for violation of 18 U.S.C. § 1018, a misdemeanor for a false writing, she was not a government contractor.

47.     Canales' misdemeanor conviction for making a false writing had no connection whatsoever to the United Stated government procurement process.

48.     The Federal Acquisition Regulations, which set forth the causes for debarment, do not provide for the debarment of a government contractor for actions taken unrelated to the performance of government contracts.

49.     The Federal Acquisition Regulations, which set forth the causes for debarment, do not provide for the debarment of a government contractor by an agency that has never done business with that contractor and to which the contractor has never applied to do business.

50.     Since 2004, agencies of the Federal Government with which Plaintiffs did contract have successfully done business with Canales and M Squared without complaint and without any allegation of harm to the government's proprietary interests.

51.     Canales has always disclosed her prior misdemeanor conviction to the Federal Agencies from which she has applied fro and procured contracts.

52.     The fact that no less than four (4) government agencies continue to do business with Canales since her misdemeanor plea and conviction and the fact that Plaintiffs were never contractors to Treasury renders Treasury's decision to debar Canales and M Squared factually and legally insupportable and without jurisdiction.

53.     Treasury's publication to Congress on two (2) occasions that Canales was debarred for life when debarment proceedings had <u>not</u> been initiated at the time of the publication of those false statements to Congress and the fact that the Federal Acquisition Regulations do not provide for debarment for life reveals the true improper purpose of Treasury's debarment decision, to wit:  to attempt to conceal and obfuscate the unethical and fraudulent conduct of the Defendants in the discharge of their official duties by making false reports to the United States Congress to support their budgetary requests and protect their flawed reputations.

WHEREFORE, Plaintiffs Canales and M Squared hereby request that the Treasury's June 27, 2006 determination that both Canales and M Squared be debarred from participating in the U.S. Government procurement process and all business with the Federal Government for three (3) years be declared null, void, and unenforceable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully prays that the Court:

1.      Issue a temporary restraining order and preliminary and permanent injunctions against enforcement of Treasury's June 27, 2006 debarment notice;

2.      Terminate Treasury's June 27, 2006 debarment *ab initio*;

3.      Award Canales and M Squared its reasonable attorney's fees and costs expended herein; and

4.      Grant such other and further relief as this Honorable Court deems just.

DATED:  July 27, 2006.

Respectfully submitted,

By:  One of their attorneys
Steven D. Cundra, D.C. Bar No. 374074
Amy Epstein Gluck, D.C. Bar No. 453525
**HALL, ESTILL, HARDWICK, GABLE,
GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
(202) 973-1212 (fax)

William W. Nickerson, D.C. Bar No. 386581
Attorney at Law
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
(202) 349-3877
(202) 349-32915 (Fax)

***Attorneys for Plaintiffs***

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - x
                            :
In the Matter of:          :
                            :
UNITED STATES OF AMERICA    :
                            :
         vs.                :  Docket No. 04-0135M-01(CR)
                            :
                            :  Washington, D.C.
MARIA CANALES              :  April 19, 2004
                            :
- - - - - - - - - - - - - - x
```

TRANSCRIPT OF HEARING ON ARRAIGNMENT
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Government:

HOWARD SKLAMBERG, Esq.
Assistant United States Attorney

On behalf of the Defendant:

WILLIAM W. NICKERSON, Esq.

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M9915A/dac

P R O C E E D I N G S

1

2          THE CLERK:  Case Number 04-135M, the United States of

3   America versus Maria Canales.  Dan Foster representing the

4   Government, Howard Sklamberg representing the Defendant.  This

5   matter is scheduled for a PR.

6          MR. SKLAMBERG:  It's the other way around.

7          MR. NICKERSON:  A little off, a little change.

8          MR. SKLAMBERG:  Actually, I'm Howard Sklamberg

9   representing the Government.  This is William Nickerson

10   representing the Defendant.

11          THE CLERK:  Okay, okay, William Nickerson.

12          MR. SKLAMBERG:  Dan Foster is a paralegal in my

13   office.

14          THE CLERK:  Okay, thank you.

15          MR. WIEGAND:  This is Barry Wiegand and with the

16   Court's permission, I'm leaving at least briefly, with the

17   Court's permission, Your Honor.

18          THE MAGISTRATE JUDGE:  You may be excused --

19          MR. WIEGAND:  Thank you, Your Honor.

20          THE MAGISTRATE JUDGE:  -- since I see Mr. Sklamberg

21   is ready to proceed.  Now are the parties ready to proceed

22   with the Rule 11 inquiry?

23          MR. SKLAMBERG:  Yes, Your Honor.

24          THE MAGISTRATE JUDGE:  Mr. Nickerson, are you ready?

25          MR. NICKERSON:  I'm ready, Your Honor.

1      THE MAGISTRATE JUDGE:  Very well.  Ms. Canales --

2      THE DEFENDANT:  Yes.

3      THE MAGISTRATE JUDGE:  -- would you stand, please?

4  Good afternoon.  The Court has been informed that you wish to

5  plead guilty to the information filed by the United States

6  Attorney.  Is that correct?

7      THE DEFENDANT:  Yes.

8      THE MAGISTRATE JUDGE:  Before your plea can be

9  accepted, there are a number of questions that I am required

10  to ask you.  Your answers to the questions will be given under

11  oath.

12      (The Defendant is sworn by the clerk.)

13      THE MAGISTRATE JUDGE:  Now Ms. Canales, are you now

14  under the influence of any alcohol, drugs or medication?

15      THE DEFENDANT:  No.

16      THE MAGISTRATE JUDGE:  Do either of you know of any

17  reason Ms. Canales might be unable to understand or

18  participate in this proceeding?  Mr. Nickerson?

19      MR. NICKERSON:  Not at all, Your Honor.

20      THE MAGISTRATE JUDGE:  Mr. Sklamberg?

21      MR. SKLAMBERG:  No, Your Honor.

22      THE MAGISTRATE JUDGE:  Ms. Canales, have you had

23  enough time to discuss this case with your lawyer?

24      THE DEFENDANT:  Yes, Your Honor.

25      THE MAGISTRATE JUDGE:  Are you satisfied with his

1 services?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE MAGISTRATE JUDGE:  Do you understand, Ms.

4 Canales, that under the Constitution and laws of the United

5 States, that you are entitled to a trial by jury on the charge

6 pending against you?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE MAGISTRATE JUDGE:  Do you understand that if

9 there were a trial, that you would be presumed innocent and

10 that in order for you to be convicted, it would be the burden

11 of the Government to prove you guilty beyond a reasonable

12 doubt?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE MAGISTRATE JUDGE:  Do you know that in its effort

15 to prove you guilty, the Government would be required to

16 produce witnesses to testify in open court in your presence?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE MAGISTRATE JUDGE:  Do you know that your lawyer

19 would be permitted to cross examine the Government witnesses?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE MAGISTRATE JUDGE:  Do you know that evidence

22 could be offered on your behalf?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE MAGISTRATE JUDGE:  Do you know that you would

25 have the right to testify at your trial?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE MAGISTRATE JUDGE:  Do you understand that you

3 would also have the right not to testify?

4          THE DEFENDANT:  Yes, Your Honor.

5          THE MAGISTRATE JUDGE:  Do you understand that if you

6 chose not to testify, that no inference of guilt could be

7 drawn against you for that reason?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE MAGISTRATE JUDGE:  Do you know, Ms. Canales, that

10 if your plea of guilty is accepted, you will waive all of

11 those rights?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE MAGISTRATE JUDGE:  Do you understand that there

14 will be no trial if you plead guilty?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE MAGISTRATE JUDGE:  And do you know that by

17 pleading guilty, you will give up your right to appeal your

18 conviction to a higher court?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE MAGISTRATE JUDGE:  Having discussed these rights

21 with you, do you still wish to plead guilty?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE MAGISTRATE JUDGE:  Ms. Canales, do you have a

24 copy of the information, the charging document filed by the

25 United States Attorney?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE MAGISTRATE JUDGE:  Is that a copy that you just

3  put on the table in front of you?

4          THE DEFENDANT:  Yes.

5          THE MAGISTRATE JUDGE:  Do you need more time to

6  review the information with Mr. Nickerson?

7          THE DEFENDANT:  No, Your Honor.

8          THE MAGISTRATE JUDGE:  Do you understand the charge

9  alleged in the information?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE MAGISTRATE JUDGE:  Do you know what the maximum

12  penalty is for that charge?

13          THE DEFENDANT:  Yes.

14          THE MAGISTRATE JUDGE:  What is your understanding of

15  the maximum penalty?

16          THE DEFENDANT:  It's one year and a hundred thousand

17  or --

18          THE MAGISTRATE JUDGE:  Has anyone promised you what

19  sentence --

20          THE DEFENDANT:  No, I don't know what the -- I'm

21  sorry, Your Honor, I guess I don't know.

22          THE MAGISTRATE JUDGE:  Why don't you have a seat and

23  discuss the penalty with Mr. Nickerson, please?  I will also

24  ask you to review the document that has the caption Plea

25  Agreement, which you should also have on the table in front of

1  you.

2          Very well, do you now recall the maximum period of

3  incarceration and the maximum fine for which the United States

4  Code provides?

5          THE DEFENDANT:  One year and 10,000.

6          MR. SKLAMBERG:  Your Honor, it's actually one year

7  and a hundred thousand is the statutory maximum.

8          THE MAGISTRATE JUDGE:  Let me direct your attention,

9  Ms. Canales, to Paragraph 4 of the written plea agreement.

10 And if you'd like to have a seat and review that paragraph

11 with Mr. Nickerson again, you may certainly do so.

12         THE DEFENDANT:  I guess I have it right.

13         MR. NICKERSON:  She knows it, Your Honor.

14         THE MAGISTRATE JUDGE:  Do you now know that the

15 maximum fine that is authorized is a fine of $100,000.00?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE MAGISTRATE JUDGE:  Has anyone promised you what

18 sentence will actually be imposed?

19         THE DEFENDANT:  No, Your Honor.

20         THE MAGISTRATE JUDGE:  Have you discussed with your

21 lawyer how the federal sentencing guidelines might apply to

22 your case?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE MAGISTRATE JUDGE:  Do you know that your lawyer's

25 guidance regarding the applicable guideline provisions is his

estimate and not a finding by the Court, that that is the
guideline application that will govern your sentencing?

> THE DEFENDANT: Yes, Your Honor.

> THE MAGISTRATE JUDGE: Do you know that even if your
sentence is more severe than you now expect that it will be,
you are still bound by your plea and that you will not be
permitted to withdraw your plea for that reason?

> THE DEFENDANT: Yes, Your Honor.

> THE MAGISTRATE JUDGE: Do you know that parole has
been abolished, so that if you are sentenced to a period of
incarceration, you will not be released early on parole?

> THE DEFENDANT: Yes, Your Honor.

> THE MAGISTRATE JUDGE: Do you need to discuss that
with Mr. Nickerson?

> THE DEFENDANT: No.

> THE MAGISTRATE JUDGE: Now I referred a moment ago to
a document captioned Plea Agreement. Do you still have your
copy of the plea agreement on the table?

> THE DEFENDANT: Yes, Your Honor.

> THE MAGISTRATE JUDGE: I'm going to ask the marshal
to give you the one that I have so that I can ask you to look
at the signature on the line marked, "Maria Canales." Is that
your signature?

> THE DEFENDANT: Yes, Your Honor.

> THE MAGISTRATE JUDGE: Very well, you may hand it

1  back to the marshal.  Did you review this agreement with Mr.

2  Nickerson before you signed it?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE MAGISTRATE JUDGE:  Does the letter -- excuse me,

5  does the agreement accurately state your understanding of the

6  agreement between you and the Government?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE MAGISTRATE JUDGE:  Has anyone promised you

9  anything, other than what is stated in this plea agreement, in

10 return for your plea?

11          THE DEFENDANT:  No, Your Honor.

12          THE MAGISTRATE JUDGE:  Has anyone threatened you or

13 forced you to lead you to the decision to plead guilty?

14          THE DEFENDANT:  No, Your Honor.

15          THE MAGISTRATE JUDGE:  Very well, you may have a

16 seat.

17          THE DEFENDANT:  Thank you.

18          THE MAGISTRATE JUDGE:  Mr. Sklamberg, I'll hear the

19 proffer on the record of what the Government's evidence would

20 have shown, had this matter gone to trial.

21          MR. SKLAMBERG:  Very well, Your Honor.  From December

22 of 2001 until April 2002, Ms. Canales was the U.S. Treasury

23 Department's Deputy Chief Information Officer, which is a

24 Senior Executive Service position.  In April 2002, she became

25 the Acting Chief Information Officer and Acting Deputy

1 Assistant Secretary.  During her tenure at the Treasury
2 Department, Ms. Canales' office was in the District of
3 Columbia.  She was a public officer, as that term is used in
4 18 USC, Section 1018, which is the section she is pleading
5 guilty to.
6        Consultant representing information technology
7 companies that were seeking contracts with the Treasury
8 Department.  Ms. Canales and Consultant had known each other
9 since she began working at the Treasury Department.  Over the
10 years, Consultant has given Ms. Canales a number of gifts of
11 value, including jewelry.
12        In October of 2001, the Treasury Department allocated
13 approximately $5.7 million for a contract for cyber security
14 related software and consultant services.  The Department
15 directed that this contract be filled expeditiously.
16 Consultant represented an information technology company,
17 which I'll refer to as "the company," which provided the type
18 of services the Treasury Department was seeking.
19        In March 2002, the company received a $1.5 million
20 subcontract that was part of the available $5.7 million for
21 software and consultant services.  Ms. Canales signed the sole
22 source justification for this contract and subcontract.  Ms.
23 Canales informed Consultant of the amount of funds available
24 for the subcontract and sent Consultant a statement of work.
25        In late February, early March 2002, while the

1 subcontract was under consideration, Ms. Canales, her husband,

2 the consultant and his girlfriend vacationed together in

3 Malta, using a timeshare that belonged to Consultant's

4 girlfriend.

5        In March 2002, the Treasury Department's Office of

6 Inspector General, OIG, initiated an investigation into

7 whether there was a connection between Ms. Canales' role in

8 the approval of the subcontract and any gifts that Ms. Canales

9 received from the consultant.  The investigation considered

10 whether any criminal law had been violated and/or whether

11 administrative action was appropriate.

12        As part of the investigation, OIG interviewed Ms.

13 Canales.  On June 6th, 2002, following an interview with OIG

14 agents in her Washington, D.C. office, Ms. Canales drafted and

15 signed a sworn written statement which purported to be, quote,

16 ". . . true, accurate and complete, to the best of . . .,"

17 her, ". . . knowledge and belief," end quote, but in which Ms.

18 Canales also stated, A, that other than a vase, Ms. Canales

19 had not received any gifts of value from Consultant, when in

20 truth and in fact, as Ms. Canales well knew, she had received

21 gifts of value from Consultant; B, that she declined a gift of

22 emeralds from Consultant.  In truth and in fact, as Ms.

23 Canales well knew, she accepted emerald chips from Consultant.

24 These chips were worth approximately $802,000.00; C, that she

25 did not, quote, ". . . have knowledge of the method used to

1  award . . .," end quote, the subcontract.  In truth and in
2  fact, as Ms. Canales well knew, she was aware that the
3  subcontract was a sole source -- she signed the sole source
4  justification for the contract.

5      Ms. Canales' role in awarding the subcontract and the
6  nature of any gifts that she received from the consultant were
7  material to the OIG's investigation.  Ms. Canales' false
8  writings identified above were at all times material to the
9  OIG's investigation.

10     Immediately following Ms. Canales' interview with the
11 OIG, she called Consultant, she informed Consultant of the
12 misstatements that she had made to the OIG.  She requested
13 that if OIG interviewed Consultant, that Consultant should lie
14 about the extent of Ms. Canales' involvement in awarding the
15 subcontract.  Ms. Canales also asked Consultant to state
16 falsely that he had not given her emerald chips and that the
17 only gift of value that he had given her was a vase.

18     On June 12th, 2002, OIG agents interviewed
19 Consultant.  Pursuant to Ms. Canales' request, Consultant
20 falsely stated, A, that the only gifts of value that had been
21 given to Ms. Canales was a vase; B, that he had offered
22 emerald chips to Ms. Canales, but she refused them; C, that he
23 and Ms. Canales did not talk about this amount of the
24 subcontract; and D, that Ms. Canales did not send him a
25 statement of work for the subcontract.

1          And this conduct, the Government submits, constitutes

2   a violation of 18 USC, Section 1018, which is making a false

3   writing.

4          THE MAGISTRATE JUDGE:  Thank you, Mr. Sklamberg.  Ms.

5   Canales, has Mr. Sklamberg accurately stated your actions and

6   your conduct with respect to the matter alleged in the

7   information?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE MAGISTRATE JUDGE:  Is there anything that Mr.

10  Sklamberg said that you wish to correct or explain?

11         MR. NICKERSON:  Yes, Your Honor, I have one matter.

12  It has to do with the overall plea.  I'd like just to have it

13  noted that there is no connection proffered by the United

14  States Attorney's office that connects any procurement to

15  those gifts.  The consultant was a friend of Ms. Canales for a

16  period in excess of four years before the contract.

17         THE MAGISTRATE JUDGE:  Mr. Sklamberg?

18         MR. SKLAMBERG:  This is a plea to Section 1018 and

19  we're not alleging a violation of the bribery or gratuity

20  statute, so that statement I think does not detract from the

21  factual proffer.

22         THE MAGISTRATE JUDGE:  Does that mean that the

23  Government remains satisfied that with the explanation offered

24  by Ms. Canales' counsel, there remains a factual basis in

25  support of the plea?

1          MR. SKLAMBERG:  As long as the Defendant says on the

2  record that all of the words and the factual basis of the plea

3  are correct and true, that does meet all the elements of the

4  offense and the Government is satisfied.

5          MR. NICKERSON:  They are.

6          THE MAGISTRATE JUDGE:  Ms. Canales, the marshal will

7  hand you the written factual basis for plea and I will again

8  ask you to look at the signature line so that you can tell me

9  whether that is your signature.

10          THE DEFENDANT:  Okay.  Yes, Your Honor.

11          THE MAGISTRATE JUDGE:  Did you review that written

12  proffer with Mr. Nickerson before you signed it?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE CLERK:  Ms. Canales, in Criminal Action Number --

15  I'm sorry, Miscellaneous Number 04-135, in which you are

16  charged in violation of 18 USC 1018, how do you plead?

17          THE DEFENDANT:  Guilty.

18          THE CLERK:  Thank you.

19          THE MAGISTRATE JUDGE:  It is the finding of the Court

20  that Ms. Canales' plea of guilty is a knowing and voluntary

21  waiver of her rights, supported by an independent basis in

22  fact which contains each of the essential elements of the

23  offense.  The plea will therefore be accepted.  You may have a

24  seat.

25          THE DEFENDANT:  Thank you, Your Honor.

1        THE MAGISTRATE JUDGE:  Counsel, have the two of you

2   conferred regarding a date for sentencing?  I would suggest a

3   date in late to mid-July.

4        MR. SKLAMBERG:  I was anticipating that's when Your

5   Honor's criminal calendar began and that's fine with us.

6        MR. NICKERSON:  Right.

7        THE MAGISTRATE JUDGE:  We can schedule the sentencing

8   for any afternoon at 1:30.

9        MR. SKLAMBERG:  What day of the week works best for

10  the Court's calendar, makes it less congested if --

11       THE MAGISTRATE JUDGE:  I would suggest Tuesday,

12  Wednesday or Thursday then, since Monday and Friday tend to be

13  busier.

14       MR. SKLAMBERG:  Can I throw out Tuesday, July 13th?

15       THE MAGISTRATE JUDGE:  That's fine.  Mr. Nickerson?

16       MR. NICKERSON:  Fine, fine, Your Honor.

17       THE MAGISTRATE JUDGE:  That will be at 1:30 in this

18  courtroom.  Mr. Sklamberg, does the United States wish to be

19  heard with regard to Ms. Canales' conditions of release?

20       MR. SKLAMBERG:  We have no objection to personal

21  release, Your Honor.  We'd just ask the Court to sign the

22  booking order with one change.  It turns out Ms. Canales will

23  be booked tomorrow, rather than today, so if the Court could

24  just change that date on the booking order.

25       THE MAGISTRATE JUDGE:  Have you shown the proposed

booking order to Mr. Nickerson?

MR. SKLAMBERG:  I have.

MR. NICKERSON:  Yes.

THE MAGISTRATE JUDGE:  And is Ms. Canales to meet the agents here in the courthouse for routine processing?

MR. SKLAMBERG:  They're going to meet in front of MPD, I believe, tomorrow.

MR. NICKERSON:  Right.

THE MAGISTRATE JUDGE:  Very well.  Mr. Nickerson --

MR. NICKERSON:  Yes.

THE MAGISTRATE JUDGE:  -- do you wish to be heard regarding Ms. Canales' conditions of release?

MR. NICKERSON:  Not at all, Your Honor.

THE MAGISTRATE JUDGE:  Very well.  Now Ms. Canales, the Court will release you on your personal promise to return to court for your sentencing, which has been scheduled for Tuesday, July 13th, at 1:30 in this courtroom, with the following conditions.  First, you must continue to reside at your current address and you are not to travel without first seeking and obtaining leave of the court to do so.

When you leave court today, you must report to the Probation Office and you will be given a probation referral slip to take with you there.

THE DEFENDANT:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  You must comply with the

1  booking order which I have signed, which requires that

2  tomorrow -- I don't believe you gave us the time, Mr.

3  Sklamberg.

4           MR. NICKERSON:  It's noon, Your Honor.

5           MR. SKLAMBERG:  Noon.

6           THE MAGISTRATE JUDGE:  Thank you.  The order, of

7  course, requires that at noon tomorrow, you meet the agents at

8  the Department of Treasury for what is known as routine

9  processing.

10          Your final condition is that you return to court for

11 your sentencing.  You are advised that your willful failure to

12 do so would be a separate offense for which you could face an

13 additional period of incarceration or a fine or both.  Do you

14 understand?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE MAGISTRATE JUDGE:  Very well.  You may have a

17 seat until your release order is prepared.

18          THE DEFENDANT:  Thank you.

19          (The Defendant is sworn to her conditions of

20 release.)

21          THE MAGISTRATE JUDGE:  Now Counsel, is there anything

22 further in this matter this afternoon, Mr. Nickerson?

23          MR. NICKERSON:  Not at all, Your Honor.

24          THE MAGISTRATE JUDGE:  Mr. Sklamberg?

25          MR. SKLAMBERG:  No, Your Honor.

18

1          THE MAGISTRATE JUDGE:   Very well, thank you.   You may

2 all be excused.   Thank you.

3          MR. NICKERSON:   Thank you, Your Honor.

4          THE DEFENDANT:   Thank you, Your Honor.

5          (Whereupon, the proceeding concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES OF AMERICA        )
                                )        Docket No. 04-0135M-01
DISTRICT OF COLUMBIA            )


        I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.


                                      PAUL R. CUTLER

- - -


        I, DORIS A. CUTLER, do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.


                                        DORIS A. CUTLER

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
                               :
In the Matter of:              :
                               :
UNITED STATES OF AMERICA       :
                               :
            vs.                :   Docket No. 04-0135M-01(CR)
                               :
MARIA CANALES                  :   Washington, D.C.
                               :   July 13, 2004
- - - - - - - - - - - - - - - x

TRANSCRIPT OF HEARING ON SENTENCING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Government:

HOWARD SKLAMBERG, Esq.
Assistant United States Attorney

On behalf of the Defendant:

WILLIAM W. NICKERSON, Esq.

ALSO PRESENT:

LAVERNE EBRON, Probation Officer

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M9915B/dac

1  during the course of the plea colloquy through the factual

2  proffer to the circumstances which would warrant the two point

3  adjustment.  But nonetheless, I think it is prudent to hear

4  you on the record with respect to whether this is also your

5  view of events.  Mr. Sklamberg.

6          MR. SKLAMBERG:  Happily, Your Honor, I agree with

7  you.  The factual bases for all of the -- for the adjustment

8  in this case were agreed upon by the parties, so to the extent

9  there are any *Blakely* issues, we waived.  That's the

10 Government's position.

11         The parties furthermore agree on how the guidelines

12 apply in this case.  The only *Blakely* wrinkle, and it really

13 isn't one, is that per the Department of Justice's procedure

14 in this case is we will ask you impose a sentence under the

15 guidelines and then an alternative sentence which I would

16 suggest be the same thing.

17         THE MAGISTRATE JUDGE:  But we haven't quite reached

18 that issue yet.  My question is only with respect to any issue

19 that has emerged by reason of the decision that would affect

20 the guideline calculations.  And your answer to that question,

21 as the Court imagined, having rereviewed all of the relevant

22 materials, is that the answer is no.

23         MR. SKLAMBERG:  That's correct, the answer is no.

24         THE MAGISTRATE JUDGE:  Very well.  Mr. Nickerson?

25         MR. NICKERSON:  I concur, Your Honor, with the

4

Government.

THE MAGISTRATE JUDGE:  Now have the two of you
discussed the request that you just made, Mr. Sklamberg, you
and Mr. Nickerson?

MR. NICKERSON:  Yes, we have.

MR. SKLAMBERG:  We have.

THE MAGISTRATE JUDGE:  Have you also discussed that
with Ms. Ebron?

MR. SKLAMBERG:  We have not.

THE MAGISTRATE JUDGE:  May I ask you to informally
confer now, please, Mr. Nickerson, Mr. Sklamberg and Ms.
Ebron?  I'm happy to pass the case if you need additional time
to do so, but if you believe that you might concur --

MR. NICKERSON:  No, I believe --

THE MAGISTRATE JUDGE:  -- in a moment or two, then
we'll continue.

MR. SKLAMBERG:  We've consulted, Your Honor.

THE MAGISTRATE JUDGE:  And are the three of you in
agreement with respect to the procedure that you have
proposed?  Mr. Sklamberg, Ms. Ebron --

MS. EBRON:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  -- and Mr. Nickerson?

MR. NICKERSON:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  Very well.  Now the final
issue where there appears to be some dispute is with respect

1   to the two point -- the subtraction of two points for

2   acceptance of responsibility.  My understanding is that

3   counsel concur that that is an adjustment that the Court

4   should make, but that the Probation Office maintains that the

5   adjustment is not appropriate.  Are you satisfied that all of

6   you have set forth your contentions adequately in writing and

7   that we need not address that issue now?

8           MR. SKLAMBERG:  Yes, Your Honor.

9           THE MAGISTRATE JUDGE:  Mr. Nickerson?

10          MR. NICKERSON:  Yes, we have, Your Honor.

11          THE MAGISTRATE JUDGE:  And Ms. Ebron?

12          MS. EBRON:  Yes, Your Honor.

13          THE MAGISTRATE JUDGE:  Very well, thank you.  Now

14  I'll ask you to please proceed with the balance of your

15  allocution, beginning with you, Mr. Sklamberg.  Mr. Nickerson,

16  I will hear from you, and Ms. Canales, you may also address

17  the Court directly if you wish to be heard.

18          THE DEFENDANT:  Thank you.

19          MR. SKLAMBERG:  Your Honor, I'll be brief.  As the

20  Court knows from reviewing the actual proffer which the

21  parties agreed upon, this case stems from an investigation by

22  the Inspector General's Office into activities by Ms. Canales.

23  There ended up being no allegation that Ms. Canales broke any

24  of the bribery or gratuity laws or corruption offenses.

25          In the course of the investigation, however, Ms.

1 Canales made a false written statement to the Inspector

2 General and then asked a friend of hers to also make a false

3 statement to the Inspector General.  That false statement

4 forms the basis, the false written statement, forms the basis

5 to the misdemeanor to which Ms. Canales pled.

6        In light of her acceptance of responsibility, the

7 Government does not oppose a probationary sentence in this

8 case.  Whether the offense level ends up being eight or six,

9 it still ends up zero to six months, regardless of -- we

10 contend the offense level should be six, but we would ask

11 regardless of it, we do not oppose probation in this case and

12 we would ask for community service as a condition of

13 probation.

14        THE MAGISTRATE JUDGE:  What is the contention of the

15 United States with respect to a fine as a further condition?

16        MR. SKLAMBERG:  We believe that, as the presentence

17 report indicates, Ms. Canales has the wherewithal to pay a

18 fine.  The plea agreement is that the Government would agree,

19 we'd ask for a penalty at the low end of the guidelines range,

20 so we would ask for a fine consistent with that.

21        THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

22 Sklamberg.  Now Mr. Nickerson?

23        MR. NICKERSON:  Yes, Your Honor.

24        THE MAGISTRATE JUDGE:  Good afternoon.

25        MR. NICKERSON:  Good afternoon.  The offense that my

client, Ms. Canales, has pled to is truly an aberration in her

long and I would say somewhat stellar professional and

personal career.

I would think that a -- I concur with the general

statements of the Government.  I would, however, think that an

unsupervised probation, without any kind of significant fine

would be more fitting.  There's no underlying crime behind the

misstatement, it's just a misstatement, it was stupid, and she

has -- Ms. Canales has something she would like to say to the

Court, if that's all right.

THE MAGISTRATE JUDGE:  Certainly.  Thank you --

MR. NICKERSON:  Thank you, Your Honor.

THE MAGISTRATE JUDGE:  -- Mr. Nickerson.  Ms.

Canales, good afternoon.

THE DEFENDANT:  Thank you, Your Honor.  I wrote down

my statement because I'm really nervous and I didn't want to

forget what I wanted to say, so if it's okay, could I read?

THE MAGISTRATE JUDGE:  That is fine, you're welcome

to read it.

THE DEFENDANT:  Okay.  Your Honor, I am both

extremely sorry and ashamed to be before you today.  I have no

excuse for the illegal and foolish conduct that brings me here

today.  I would like you to know that, however, while I cannot

take back the false statements I made to the agents, I can

assure you that I have learned a great deal about myself and

1 appeal this sentence, which include the right to the

2 appointment of counsel to represent you on appeal, should you

3 be unable to retain counsel.

4          Now is there anything further in this matter this

5 afternoon?  Mr. Nickerson?

6          MR. NICKERSON:  One thing, Your Honor.  As the Court

7 knows, Ms. Canales derives her support from consulting and in

8 order to accomplish these tasks, she often has to travel.  The

9 Court was kind in its pretrial hearing to grant her the

10 ability to travel without necessarily informing the Probation

11 Office.  I see no risk of her doing anything that would impact

12 on that decision.  That's a stipulation that we would ask for,

13 Your Honor.

14          THE MAGISTRATE JUDGE:  Thank you, Mr. Nickerson.  Mr.

15 Sklamberg?

16          MR. SKLAMBERG:  I have no objection.

17          THE MAGISTRATE JUDGE:  Do you wish to address the

18 request, Ms. Ebron?

19          MS. EBRON:  Your Honor, regarding travel, we would

20 not have any I guess objections to Ms. Canales traveling

21 within the United States of America.  However, I guess if

22 there was an instance where she would need to travel outside

23 the U.S., that we would approach the Court with a memo to

24 address that.

25          THE MAGISTRATE JUDGE:  Thank you very much, Ms.

1 Ebron.

2            MS. EBRON:  Thank you, Your Honor.

3            THE MAGISTRATE JUDGE:  Ms. Ebron, may I assume that

4 is the standard Probation Office --

5            MS. EBRON:  That's correct.

6            THE MAGISTRATE JUDGE:  -- expectation?  Very well, I

7 will ask that you advise the Court, Ms. Ebron, should you

8 determine that it is necessary for Ms. Canales to travel

9 outside of the United States during her period of supervision,

10 so that the Court can approve, by signing the signature line

11 on a memorandum that you prepare, that such travel would be

12 authorized.

13            MS. EBRON:  That would be great, Your Honor.

14            THE MAGISTRATE JUDGE:  Thank you very much.  Anything

15 further, Mr. Nickerson?

16            MR. NICKERSON:  No, Your Honor, thank you.

17            THE MAGISTRATE JUDGE:  Mr. Sklamberg?

18            MR. SKLAMBERG:  No, Your Honor.

19            THE MAGISTRATE JUDGE:  Very well, thank you.  Ms.

20 Ebron, anything further on behalf of the Probation Office?

21            MS. EBRON:  No, Your Honor.

22            THE MAGISTRATE JUDGE:  Very well, thank you.  You may

23 all be excused and we will take a very brief recess.

24            (Whereupon, the proceeding concluded.)

UNITED STATES OF AMERICA )

DISTRICT OF COLUMBIA )    Docket No. 04-0135M-01
)

I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.


PAUL R. CUTLER

- - -


I, DORIS A. CUTLER, do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.


DORIS A. CUTLER

# EXHIBIT C











# Semiannual Report To The Congress



October 1, 2003 – March 31, 2004

# Office of Inspector General

DEPARTMENT OF THE TREASURY



*Significant Investigations*

### Senior Computer Specialist Pleads Guilty to Child Pornography Charge



As reported in the previous period, an OIG investigation established that a former FMS Senior Computer Specialist used his government computer to collect child pornography. Forensic analysis revealed the presence of over 1,100 images of child pornography on the computer. The Senior Computer Specialist was terminated and pled guilty to one count of Possession of Child Pornography (18 USC 2252 A) and will be sentenced later this year. The subject faces 15 years imprisonment.

### Former Acting Treasury CIO Debarred for Life for Making False Statements

A complaint filed with Treasury OIG alleged, as part of or in exchange for a $5.8 million contract for cyber-security related software and consulting services, Treasury's former Acting CIO directed the contractor to place a $1.5 million subcontract with a company owned by a friend of the CIO. Our investigation revealed that, in return, the CIO received various gratuities including jewelry and use of a time-share rental property located in the Bahamas. The former CIO agreed to plead guilty to making False Statements in Official Certificates or Writings (18 USC 1018) and to be debarred from doing business with the federal government for life.



### Mint Account Technician Pleads Guilty to Submitting False Travel Documentation

In October 2002, the Treasury OIG responded to a complaint alleging that a former Mint Account Technician stole money by creating and submitting fraudulent travel vouchers to the bureau. Our investigation showed that the subject opened 5 bank accounts, using various fictitious names, then created, altered, and submitted 57 sets of travel documentation which resulted in unauthorized Electronic Fund Transfer payments totaling $153,000 to personal bank accounts. The Account Technician has since pled guilty to making False Statements (18 USC 1001) and is scheduled to be sentenced on June 14, 2004. We will be issuing a Management Implication Report to the Mint about internal control weaknesses that enabled the fraudulent travel vouchers to be paid so that management can take corrective action.

# EXHIBIT D











# Semiannual Report To The Congress



April 1, 2004 – September 30, 2004

# Office of Inspector General

Department of the Treasury



*Significant Investigations*

## Senior Computer Specialist Pleads Guilty to Child Pornography Charge

Following our last report (March 2004, p. 15), the USAO-DC announced in July 2004 that Dennis Beheiter, a former FMS Senior Computer Specialist, was sentenced for the one count of possession of child pornography (18 U.S.C. § 2252) to which he previously pled guilty. The United States District Court imposed 27 months imprisonment and 3 years probation. Our investigation established that Beheiter used his government computer to download and collect child pornography. Forensic analysis revealed over 1,100 images of child pornography had been stored on his personal computer. He was terminated as an FMS employee losing 26 years vested towards federal retirement.

## Former Acting Treasury CIO Sentenced for Making False Statement and Debarred for Life

In our March 2004 report (p. 15), we reported Treasury's former acting Chief Information Officer (CIO), Maya Canales, directed a consulting firm under contract with the Department to secure a $1.5 million subcontract with a company owned by the CIO's friend, as part of (or in exchange for), a $5.8 million contract that Treasury awarded to the consulting firm. The investigation revealed the acting CIO accepted various gratuities including jewelry and the use of a time-share rental property.

The former acting CIO pled guilty to making false statements in official certificates or writings (18 U.S.C. § 1018) and has been debarred for life from doing business with the federal government. In July 2004, the former acting CIO was sentenced in United States District Court to 1 year probation, fined $2,500, and ordered to perform 25 hours of community service.

## U.S. Mint Account Technician Sentenced for Submitting False Travel Vouchers

As we reported previously (March 2004, p. 15), former Mint Account Technician, Shani Black, embezzled government funds by creating and submitting fraudulent travel vouchers. The investigation revealed that Black opened 5 bank accounts using various fictitious names. Further, she created, altered, and submitted 57 travel vouchers resulting in the unauthorized payment of $153,000 by means of Electronic Fund Transfers to the aforementioned bank accounts.

As a result of the investigation, Black pled guilty to making false statements (18 U.S.C. § 1001). In August 2004, she was sentenced to 12 months home detention/electronic monitoring, 5 years probation, and ordered to pay restitution of $153,471. We issued a Management Implication Report to the Mint in connection with our investigation to assist the bureau with addressing control weaknesses so as to prevent future submissions of false or fraudulent travel vouchers.

# EXHIBIT E



# DEPARTMENT OF THE TREASURY
## WASHINGTON, D.C. 20220

November 29, 2005

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Maria (Mayi) Canales
7007 Clinton Ct
Annapolis, MD 21403

This is to advise you that we are initiating proceedings to debar you from participating in United States Government procurement activities. This notice is given pursuant to Federal Acquisition Regulation (FAR) 9-406-3 et seq. The FAR is published in Title 48, Code of Federal Regulations, Chapter 1.

Causes for debarment include: "[A] conviction ... for (1) Commission of fraud or a criminal offense in connection with – (i) obtaining, (ii) attempting to obtain; or (iii) performing a public contract or subcontract." [FAR 9.406-2(a)(1)] You were convicted of violating U.S.C. §1018, making a false writing in connection with an on-going procurement. As a result, I conclude that this conviction meets the minimum requirements of this section to constitute a cause for debarment.

Similarly, this conviction is a cause for debarment under FAR 9.406-2(a)(5): [a conviction for] "Commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor."

In accordance with FAR 9.406-3(c)(4), you have a period of no more than 30 days after receipt of this notice to submit, in person, in writing, or through a representative, information and argument in opposition to the proposed debarment, including any specific information that raises genuine dispute over the material facts. The determination to debar will be based on pertinent documentation available for my review, including any information that you provide. Under the provisions of FAR 9.406-3(d), the debarment decision will be made within 30 working days after receipt of any information or argument you submit.

FAR subsection 9.406-4(a) provides that if a debarment is imposed, it shall be commensurate with the seriousness of the causes for debarment and shall not exceed 3 years.

The debarment may also apply to your place of employment in the event you are employed as a "principal" as defined by the certification requirements under FAR

52.209-5(a)(2).   This FAR section states: "Principals, for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager, plant manager, head of a subsidiary, division, or business segment, and similar positions)."

Both a proposal for debarment and debarment are effective throughout the executive branch of the Government, and extend to all divisions or other organizational elements of the contractor.   Federal agencies will not solicit offers from, or award contracts to, contractors who have been proposed for debarment or debarred.   Also, federal agencies will not renew or extend existing contracts with, or consent to subcontracts with, a contractor proposed for debarment or debarred.   Lastly, contractors proposed for debarment or debarred are excluded from conducting business with the Government as representatives or agents of other contractors.   The above restrictions take effect unless the acquiring agency head or a designee determines in writing that there is a compelling reason to waive them.   Accordingly, this notice has the effect of a suspension (FAR 9.405).

If you have any questions regarding this notice to debar, you may contact the undersigned at (202) 622-1039 or forward correspondence to my attention at the following address: Office of the Procurement Executive, Department of the Treasury, 1500 Pennsylvania Avenue, N.W., Room 6109, Washington, D.C. 20220.

Thomas A. Sharpe, Jr.
Debarring Official
Director, Office of the Procurement Executive

cc:

M Squared Strategies, Inc.
ATTN: Maria (Mayi) Canales
1616 H Street NW
Suite 1010
Washington DC  20006-4903

M Squared Strategies, Inc.
ATTN: Maria (Mayi) Canales
7007 Clinton Ct.
Annapolis, MD  21403

M Squared Strategies, Inc.
ATTN: Maria (Mayi) Canales
2080 South Ocean Drive #1811
Hallandale Beach, FL  33009

1616 H Street, NW
Suite 1010
Washington, DC 20006

**M² Strategies, Inc.**

# Fax

| To: | William Nickerson | From: | Mayi Canales |
|---|---|---|---|
| Fax: | 202-349-3915 | Pages: | 3   Including Cover |
| Phone: | 202-349-3877 | Date: | December 12, 2005 |
| Re: | M Squared Strategies, Inc | CC: | |

X **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

PRIVATE – ATTORNEY CLIENT PRIVELEGE FOR WILLIAM NICKERSON ONLY

Bill,

Attached is the letter I called you about.

Thank You,
Mayi

Maria Elena (Mayi) Canales

M² Strategies, Inc.

Fax: 202-315-3399

Phone: 202-352-2544

Email: mayi@m2strat.com

*Leesburg*

*1- 800 962 9644*

*≠ 703-777-7080*

# EXHIBIT F



**DEPARTMENT OF THE TREASURY**
WASHINGTON, *D.C.* 20220

June 27,2006

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Maria (Mayi) Canales
7007 Clinton Ct
Annapolis, MD 21403

I have determined to impose debarment on you, Maria Canales, thereby prohibiting you from participating in United States Government procurement requirements. (Reference is made to our Notice of Proposed Debarment dated November 29, 2005). This debarment is effective for three years, commencing with an effective date of June 27,2006.

Your conviction of a criminal offense is a cause for debarment under FAR 9.406-2(a)(5): [a conviction for] "Commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor."

Further, causes for debarment also include: "[A] conviction ... for (1) Commission of fraud or a criminal offense in connection with – (i) obtaining, (ii) attempting to obtain; or (iii) performing a public contract or subcontract." [FAR 9.406-2(a)(1)]   You were convicted of violating U.S.C. §1018, making a false writing in connection with an on-going procurement. As a result, I conclude that this conviction meets the minimum requirements of this section to constitute a cause for debarment.

In your response to the notice of proposed debarment you (through counsel) correctly point out that the purpose of debarment is to protect the Government, not to punish. You then argue that your conduct here, which led to your guilty plea and conviction, was not so serious as to support debarment as an appropriate action. You further aver that your "spotless" record prior to this offense and business record since militate against imposition of debarment. I do not agree. Given the facts and nature of your offense debarment is the appropriate course of action.

The debarment also applies to your place of employment in the event you are employed as a "principal" as defined by the certification requirements under FAR 52.209-5(a)(2). This FAR section states: "Principals, for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager, plant manager, head of a subsidiary, division, or business segment, and similar positions)." Since you have represented in your response to the notice of proposed debarment that you are the sole stockholder and Chief Executive Officer of M Squared Strategies, Inc., a technology consulting firm, the debarment extends to that firm as well.

This debarment is effective throughout the executive branch of the Government. Federal agencies will not solicit offers from, or award contracts to, contractors who have been proposed for debarment or debarred. Also, federal agencies will not renew or extend existing contracts with, or consent to subcontracts with, a contractor proposed for debarment or debarred. Lastly, contractors proposed for debarment or debarred are excluded from conducting business with the Government as representatives or agents of other contractors.

Sincerely,

Thomas A. Sharpe, Jr.
**Debarring** Official
Director, Office of the Procurement Executive