IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARIA CANALES, <br><br> and <br><br> M SQUARED STRATEGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HENRY M. PAULSON, <br> SECRETARY OF THE UNITED STATES <br> DEPARTMENT OF TREASURY <br><br> THOMAS A SHARPE, JR., <br><br> and <br><br> DENNIS S. SCHINDEL, <br><br> Defendants. | Civil Action No: 1:06CV01330 (GK) |

## MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COMES NOW Plaintiffs MARIA CANALES, hereinafter "Canales," and M SQUARED STRATEGIES, INC., hereinafter "M Squared," by and through their undersigned counsel, and moves this Honorable Court for a Temporary Restraining Order and Preliminary Injunction. In support hereof, Plaintiffs rely on the Statement of Points and Authorities in Support of Plaintiffs Motion for Temporary Restraining Order and Preliminary Injunction.

1

DATED: July 28, 2006.                             Respectfully submitted,

                                                  _____
                                                  By: One of their attorneys
                                                  Steven D. Cundra, D.C. Bar No. 374074
                                                  Amy Epstein Gluck, D.C. Bar No. 453525
                                                  Nicholas M. Beizer, D.C. Bar No. 485894
                                                  **HALL, ESTILL, HARDWICK, GABLE,**
                                                  **GOLDEN & NELSON, P.C.**
                                                  1120 20th Street, N.W.
                                                  Suite 700, North Building
                                                  Washington, D.C. 20036
                                                  (202) 973-1200
                                                  (202) 973-1212 (fax)

                                                  William W. Nickerson, D.C. Bar No. 386581
                                                  Attorney at Law
                                                  1725 I Street, N.W.
                                                  Suite 300
                                                  Washington, D.C. 20006
                                                  (202) 349-3877
                                                  (202) 349-32915 (Fax)
                                                  *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of July, 2006, a copy of the foregoing documents were served via electronic mail, to:

JOHN C. TRUONG
Assistant United States Attorney
555 4th Street, N.W.
Room E-4206
Washington, D.C. 20530

Attorney for Defendants


                                                  _____
                                                  John A. Stackhouse

65273.1:230133:00420

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA CANALES, <br><br> and <br><br> M SQUARED STRATEGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HENRY M. PAULSON, <br> SECRETARY OF THE UNITED STATES <br> DEPARTMENT OF TREASURY <br><br> THOMAS A SHARPE, JR., <br><br> and <br><br> DENNIS S. SCHINDEL, <br><br> Defendants. | Civil Action No: 1:06CV01330 (GK) |

### STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

COMES NOW Plaintiffs MARIA CANALES, hereinafter "Canales," and M SQUARED STRATEGIES, INC., hereinafter "M Squared," by and through their undersigned counsel and moves, pursuant to Fed. R. Civ. P. 65 and LCvR 65.1, for an Order temporarily restraining and thereafter enjoining and restraining Defendant Henry M. Paulson, Secretary of the United States Department of the Treasury, hereinafter the "Secretary," his subordinates within the Department of the Treasury, and all other persons acting in concert with the Secretary, from enforcing its June 27, 2006 debarment notice. In support thereof, Plaintiffs state as follows:

## I. **BACKGROUND FACTS**

Canales was employed by the United States Department of the Treasury, hereinafter "Treasury," between June 1999 and October 2002 and worked in various capacities and positions, which culminated in the position of Acting Chief Information Officer and Acting Deputy Assistant Secretary. (Affidavit of Maria Canales ("Canales Aff.") at ¶ 2) (a copy of the Affidavit of Maria Canales is attached hereto as Exhibit 1). On June 6, 2002, the Office of Inspector General ("OIG") of Treasury interviewed Canales about gifts she received from an individual who acted as a consultant, John M. Neal ("Neal"). (Canales Aff. at ¶ 3). During the interview, Canales stated that Neal gave her a vase of indeterminate value, which she stated she would return if the OIG deemed such action appropriate. Canales further stated that she declined to receive several small loose emeralds offered to her by Neal. (Canales Aff. at ¶ 4). Immediately following the interview, OIG personnel assisted Canales with incorporating her statements into an affidavit that she then executed (the "Affidavit"). (Canales Aff. at ¶ 5).

Late in October 2002, Canales voluntarily resigned as an employee of Treasury to open her own business to provide consulting services to both public and private clients. (Canales Aff. at ¶ 6). Her resignation was in no way related to the OIG interview. (Canales Aff. at ¶ 7). In January 2003, Canales started M Squared Strategies, Inc. ("M Squared"), a technology consulting services company. (Canales Aff. at ¶ 8). In 2003, M Squared had contracts in the private sector with CACI, Entrust, AMS, Tripwire, Cap Gemini, Ngrain, and Sapeint. (Canales Aff. at ¶ 9).

On April 13, 2004, a one-count Information was filed against Canales charging her with the misdemeanor of Making a False Writing in violation of 18 U.S.C. § 1018 in connection with the Affidavit. (Canales Aff. at ¶ 10). On April 19, 2004, Canales pleaded guilty in the United

Stated District Court for the District of Columbia to the misdemeanor offense. (Canales Aff. at ¶ 11). At the Arraignment Hearing, counsel for Canales made clear in the record that her misstatement in the Affidavit was not related to the acceptance of any gratuity or bribe. Counsel's statement, with the acquiescence of the Assistant United States Attorney, was accepted by the Magistrate Judge (Transcript of Arraignment Hearing at p. 13 (a copy of the Transcript is attached hereto at Exhibit 2). Further, the Assistant United States Attorney read into the record, at the July 13, 2004 Sentencing Hearing, that Canales' plea had nothing to due with any bribery, gratuity or corruption offenses (Transcript of Sentencing Hearing at p. 5 (a copy of the Transcript is attached hereto at Exhibit 3).

In April 2004, Canales transitioned from private sector contracts to contracting with various United States Government agencies. (Canales Aff. at ¶ 12). Since 2004, Canales and M Squared have had contracts with the Department of Veterans Affairs (the "DVA"), the Department of Energy (the "DOE"), and the Small Business Administration. (Canales Aff. at ¶ 13). Canales does not have, never had, and has never applied for any government contracts with Treasury. (Canales Aff. at ¶ 14).

On April 30, 2004, the Dennis S. Schindel, Acting Inspector General of the Department of Treasury, hereinafter referred to as "Schindel," published the Department of the Treasury Office of the Inspector General's Semiannual Report To The Congress for the period October 1, 2003 - March 31, 2004. (a copy of report is attached hereto as Exhibit 4). The Semiannual Report falsely stated that, "[Canales] as part of or in exchange for a $5.8 million contract for cyber-security related software and consulting services, Treasury's former Acting CIO directed the contractor to place a $1.5 million subcontract with a company owned by a friend of the CIO. In return, the CIO, received various gratuities including jewelry and use of a time-share rental

property located in the Bahamas. **The former CIO agreed to ... be debarred from doing business with the federal government for life.**" (emphasis added).

On October 29, 2004, Schindel published the Department of the Treasury Office of the Inspector General's Semiannual Report To The Congress for the period April 1, 2004-September 30, 2004, in which he again reiterated his previous **false statements** about Canales, the disposition of her case, and her debarment. Schindel stated that Canales "directed a consulting firm under contract with [Treasury] to secure a $1.5 million subcontract with a company owned by the CIO's friend, as a part of (or in exchange for), a $5.8 million contract that Treasury awarded to the consulting firm. The investigation revealed the acting CIO accepted various gratuities including jewelry and the use of a time-share rental property. **The former acting CIO ... has been debarred for life from doing business with the federal government.**" (emphasis added). (A copy of report is attached hereto as Exhibit 5).

On November 29, 2005, <u>more than one (1) year after</u> Treasury's OIG had twice falsely notified Congress of Canales' alleged "lifetime debarment" in two semi-annual official reports to the Congress, the defendants wrongfully and intentionally attempted to cover up their false statements by hurriedly issuing a notice that Treasury was "initiating proceedings" to debar Canales.

On June 27, 2006, Defendant Sharpe issued a Notice of Debarment prohibiting Canales and M Squared from participating in all United States Government procurement "throughout the executive branch of the Government." (Canales Aff. at ¶ 15). The debarment is stated to be effective for three (3) years, commencing with an effective date of June 27, 2006 through June 27, 2009. *Id.* The Notice of Debarment did not contain any factual findings or cite any

jurisdictional basis for the issuance of the Notice of Debarment. *Id.* (A copy of the Debarment Notice is attached hereto as Exhibit 6).

The effect of the debarment will cause Canales and M Squared to suffer irreparable harm. (Canales Aff. at ¶ 16). Canales and M Squared will lose their contracts with the DOE and the DVA if the Government is permitted to enforce the debarment. (Canales Aff. at ¶¶ 16-22). Not only will Plaintiff Canales' reputation and M Squared's business be destroyed, but employees of M Squared will lose their jobs if the Government is permitted to enforce the debarment. (Canales Aff. at ¶ 21). Additionally, the government agencies with whom Canales has contracts will not suffer any harm (much less, substantial harm) if a restraining order is issued to restrain the Government from enforcing the debarment. (Canales Aff. at ¶ 22). Rather, those agencies will benefit from such an order because it will save them the time and expense of finding a new contractor. *Id.*

## II. LEGAL ARGUMENT

### Standard For Granting Temporary Restraining Orders

In determining whether a temporary restraining order should be granted, courts weigh four factors: (1) plaintiff's likelihood of success on the merits of the civil suit, (2) that in the absence of an injunction, plaintiff would suffer irreparable harm for which there is no adequate legal remedy, (3) that the injunction would not substantially harm other parties, and (4) that the injunction would not significantly harm the public interest. *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1989) (citing *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir. 1987); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).

1. **<u>Plaintiffs' are Likely to Succeed on the Merits.</u>**

Judicial review of Treasury's decision is available pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, *et seq*. The APA provides that the reviewing court shall hold unlawful an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As set forth below, Treasury's decision to debar the Plaintiffs is arbitrary, capricious, an abuse of discretion, and not in accordance with law.

   A. <u>The Treasury Debarring Official had no Jurisdiction</u>

Neither Canales nor M Squared have <u>ever</u> had any government contracts with Treasury nor have they ever applied for any. Plaintiffs currently have numerous successful contracts with both the Department of Energy and Department of Veteran Affairs. A Debarring Official at Treasury is now attempting to prohibit Plaintiffs from conducting any procurement activities within the entire United States Government even though neither Canales nor M Squared have ever had or applied for a government contract with Treasury. It is not appropriate for a Debarring Official at an agency to debar a government contractor with no ties to that federal agency.

In fact, the contracting officers of the agencies with which Plaintiffs did contract made an affirmative determination that Canales and M Squared were responsible prior to the award of each government contract to Plaintiffs. None of these agencies or contracting officers has ever initiated debarment proceedings against Plaintiffs and all have indicated their satisfaction with Plaintiffs' performance of their contractual obligations.

Moreover, each government agency that Plaintiffs have contracted with were aware of Canales' prior misdemeanor plea and conviction for making a false writing as Canales was

required to and did disclose the misdemeanor conviction on the contract applications. All of the contracting officers representing the agencies with which Plaintiffs have contracts found Canales and M Squared to be presently responsible when they granted M Squared contracts in 2004 and as they continued to do business with Canales and M Squared through the present date.

B. There are Numerous Mitigating Factors to be Considered.

There are numerous factors that diminish the force and effect of a conviction. *Roemer v. Hoffman*, 419 F. Supp. 130 (D.D.C. 1976). These factors include: (1) character before the offense; (2) the circumstances surrounding the offense; (3) length of time since the crime; and (4) character after the offense. *Roemer*, 419 F. Supp. at 132. Applying these factors to the instant case, Canales had an absolutely spotless record before the misdemeanor offense. Moreover, she held numerous prominent positions at Treasury and received various service awards. The circumstances surrounding the offense demonstrate that Canales was only hoping to avoid personal embarrassment and her actions were not in furtherance of a predicate crime. It has been almost four years since the offense. Canales has had an impeccable record since the offense. In fact, as stated, the Government currently does extensive business with Canales.

Additional support for this proposition can be found in *Silverman v United States Dep't of Defense*, 817 F. Supp. 846 (S.D. Ca. 1993). In *Silverman*, a contractor's motion for summary judgment challenging the Department of Defense's, hereinafter "DOD," decision to debar him from receiving government procurements for three years was granted where the debarment was based on the contractor's 1991 misdemeanor guilty plea in an action based an on error in the filing of 1986 DOD form. *Silverman*, 817 F. Supp. at 849-50. The court found that the debarment was arbitrary and capricious given that: (1) the contractor's guilty plea was based on a desire to avoid indictment and rebuild business, not on belief in guilt; (2) DOD failed to consider

the contractor's reasons for guilty plea; (3) debarment is discretionary action; and (4) the seriousness of the underlying conduct must be considered -- the DOD continued to do business with the contractor under more than 500 contacts until 1991, although it knew of error in 1987. *Silverman*, 817 F. Supp. at 849. *See also*, Peter *Kiewit Sons' Co. v. U. S. Army Corps of Engineers*, 534 F. Supp. 1139, 1154 (D.D.C. 1982) (holding that denial of contractors liberty interest would constitute punishment absent a showing of threat to the interest of the government) (citations omitted). Again, Canales' plea was based on an effort to avoid the details of an embarrassing personal situation and the seriousness of making a misdemeanor is very slight. Additionally, the government has done business with Canales for almost two years. The Government never charged Canales for violation of a bribery or gratuities statute or for any violation of any activity or responsibility concerned with Government procurement requirements.

Moreover, the regulations associated with debarment list numerous mitigating factors that should be considered when determining whether debarment is the appropriate sanction. 48 C.F.R. §9.406-1. Many of the mitigating factors relate to remedial measures a contractor puts in place after the offense. Notably, Canales was not an active government contractor at the time of the offense. In fact, Canales was an employee of Treasury. If the Government were permitted to enforce the debarment, a dangerous and sweeping precedent would be established; a precedent that indicates that any illegal conduct prior to being a contractor is grounds for debarment.

C. Canales' Debarment Was an Illegal "Punishment."

Courts have made it absolutely clear that debarment should not be used as a tool for punishment. *Robinson v. Cheney*, 876 F.2d 152, 160 (D.C. Cir. 1989). In this case, it is clear that the debarment by Treasury is a vindictive act against Canales, designed to ruin her

reputation. As mentioned, Canales was Acting Chief Information Officer and Acting Deputy Assistant Secretary. While holding this very high position within Treasury, she signed the Affidavit. The Affidavit contained misstatements about certain actions Canales undertook while in her position at Treasury. Canales executed the Affidavit to avoid a potentially embarrassing personal situation. Canales later recanted one of the statements in the Affidavit and pleaded guilty to a misdemeanor, which was unrelated to any violation of a bribery or gratuities statute or for any violation of any activity or responsibility concerned with Government procurement requirements.

Thereafter, Treasury officials vigorously pursued her. In fact, Treasury went so far as to file two false reports to Congress indicating that Canales had been debarred for life, even though, incredibly, debarment proceedings had yet to be initiated. Then, in 2005, Treasury issued a Notice of Debarment that did not contain any factual findings or cite any jurisdictional basis for the issuance of the Notice of Debarment. In light of this clear vendetta against Canales, the debarment can easily be construed as punitive in nature.

## 2. Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm.

If an injunction is not issued, Canales and M Squared will suffer irreparable harm, as its existing government contracts will be canceled or will not be renewed. Additionally, Canales' reputation will be irreparably destroyed and M Squared will cease to exist. Treasury's notice of debarment was arbitrary and capricious, issued for improper purposes to attempt to conceal misconduct by the Defendants, and if not enjoined or immediately declared improper and null and void, it will result in irreparable harm to Canales and M Squared and their employees by causing the termination of four contracts with the Government (two with the Department of Veteran Affairs and two with the Department of Energy). This will effectively destroy M

Squared. The first of these contracts is scheduled to terminate on July 31, 2006. These contracts are as follows:

    a. M Squared has a subcontract with HPTi for the Department of Veterans Affairs, which will be terminated on July 31, 2006 if the Government is permitted to enforce the debarment;

    b. M Squared has a prime contract with the Department of Veterans Affairs that is funded through September 30, but the Department will transition the contract to another contractor by mid-August if the Government is permitted to enforce the debarment;

    c. M Squared has a prime contract with the Department of Energy that is funded through September 30, but the Department will transition the contract to another contractor by mid-August if the Government is permitted to enforce the debarment; and

    d. M Squared has another prime contract with the Department of Energy I-Manage that is funded through November 15, but the Department will transition the contract to another contractor by September if the Government is permitted to enforce the debarment.

### 3. An Injunction Would Not Substantially Harm Other Parties.

The parties with whom Canales and M Squared have contracts will not suffer substantial harm if the injunction is issued. None of the governmental agencies with which Plaintiffs have existing contracts have complained of Plaintiffs' performance, and all have praised or indicated their satisfaction with Plaintiffs' performance. In fact, they will benefit from such an injunction, because such an injunction will save them the time and cost of finding a new contractor and the disruptions of services that would result.

### 4. An Injunction Would not Substantially Harm the Public Interest.

The public interest would actually be furthered by the injunction as Canales and M Squared currently have four contracts with the Government, paid for with public funds, and, therefore, there is a strong public interest in having an orderly, efficient, and expeditious government procurement process and to not waste government resources. The public interest will suffer from an unlawful and improper debarment initiated to avoid embarrassment to

Treasury officials and to cover up the false statements made in two official reports to the Congress by these Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that the Court:

1.  Issue a temporary restraining order and preliminary injunction against enforcement of Treasury's June 27, 2006 debarment notice;

2.  Award Canales and M Squared its reasonable attorney's fees and costs expended herein; and

3.  Grant such other and further relief as this Honorable Court deems just.

DATED: July 28, 2006.                                Respectfully submitted,

_____
By: One of their attorneys
Steven D. Cundra, D.C. Bar No. 374074
Amy Epstein Gluck, D.C. Bar No. 453525
Nicholas M. Beizer, D.C. Bar No. 485894
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
(202) 973-1212 (fax)

William W. Nickerson, D.C. Bar No. 386581
Attorney at Law
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
(202) 349-3877
(202) 349-32915 (Fax)
*Attorneys for Plaintiffs*

65274.1:230133:00420