**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MARIA CANALES and M SQUARED STRATEGIES, INC., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No: 1:06CV01330 (GK) |
| HENRY M. PAULSON, SECRETARY OF THE UNITED STATES DEPARTMENT OF TREASURY, *et al.,* | ) ) ) ) | |
| Defendants. | ) ) ) | |

**MOTION FOR RECONSIDERATION OF MEMORANDUM AND ORDER DENYING
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

COME NOW Plaintiffs MARIA CANALES, hereinafter "Canales," and M SQUARED

STRATEGIES, INC., hereinafter "M Squared," by and through their undersigned counsel, and

move, pursuant to Fed. R. Civ. P. 54(b), for this Court to Reconsider its Memorandum and Order

of July 28, 2006 denying, without a hearing, Plaintiffs' Motion for a Temporary Restraining

Order and a Preliminary Injunction, hereinafter "Plaintiffs' Motion for TRO/PI," preventing the

defendants from enforcing its June 27, 2006 Debarment Notice.  In support thereof, Plaintiffs

state as follows:

**I.  RELIEF REQUESTED**

Justice requires the reconsideration of the Court's July 28, 2006 Memorandum Opinion

and Order denying, without benefit of a hearing, Plaintiff's Motion for a Temporary Restraining

Order and a Preliminary Injunction to enjoin the enforcement of the United States Department of

the Treasury's unlawful June 27, 2006 Debarment Notice (hereinafter, "Debarment Notice").

- 1 -

Specifically, first, justice requires that this Court reconsider its opinion of the harm that Plaintiffs will suffer if enforcement of the Debarment Notice is not enjoined. If enforcement of the Debarment Notice is not enjoined, the business and existence of M Squared itself and Canales's business reputation will suffer irreparable damage. M Squared does business *only* with government agencies. It no longer does business in the private sector. With the loss of its contract with HPTi for the Department of Veterans Affairs, which was terminated on July 31, 2006 as a result of the unlawful Treasury Debarment Notice, and the impending loss of its contracts with the Department of Veterans Affairs and the Department of Energy, who have informed Canales that they will transition these contracts to other contractors by mid-August, M Squared will be effectively destroyed.

Second, justice requires a re-examination by this Court of Plaintiffs' likelihood of success on the merits. While a conviction for making false statements may be the basis of a debarment, as the Court's Order noted on p. 5, the debarment in this case cannot be sustained on that ground for the following reasons:

1.      The Treasury debarment official lacked jurisdiction to issue a Debarment Notice as:

a.      The false statement underlying Canales's misdemeanor conviction, which is what the Debarment Notice states debarment is based on, was made by Canales when she was an employee of the Department of Treasury and *not* a government contractor,[1] and years before she ever applied for the award of government contracts;

b.      Neither M Squared nor Canales ever had *any* contracts with *any* government agency, nor had they ever applied for any, (i) at the time the false statement was made by Canales, or (ii) at the time of her plea and conviction for violating 18 U.S.C. § 1018;

---

[1]      If the Government were permitted to enforce the debarment, a dangerous and sweeping precedent would be established; a precedent that allows the debarment of present responsible government contractors for any and all misdemeanors and peccadilloes that occurred *prior to* the individual becoming a government contractor.

      c.     Neither M Squared nor Canales ever had *any* contracts with Treasury *at any time, past or present,* nor had they ever applied for any, at the time the Debarment Notice was issued.

      2.     The alleged basis for the debarment was insufficient as a matter of law as:

      a.     It bore *no nexus whatsoever* to *anything* that Canales or M Squared did as a government contractor:

      b.     Canales was *not a government contractor* at the time she made the false statement or at the time she plead to a misdemeanor offense and was convicted, but was merely an employee and a former employee of Treasury, respectively, at those times; and,

      c.     The Department of Justice admitted *twice,* both in Canales's arraignment hearing in April 2004 and then at her sentencing hearing in July 2004, the false statement underlying the misdemeanor conviction had *nothing to do* with the violation of any bribery or gratuities statute or her duties regarding government contracts but were made merely to avoid an embarrassing personal situation; and, finally,

      3.     The debarment was issued for an improper and impermissible purpose as:

      a.     It was not issued to protect the government from dealing with irresponsible or inscrutable contractors, as is the policy behind debarments set forth in the FAR at 48 C.F.R. § 9.402;

      b.     Rather, Treasury initiated debarment proceedings against Canales in November 2005, *only after* Treasury's OIG had *twice falsely* notified Congress in 2004 of Canales's alleged "lifetime debarment" in two semi-annual official reports to the Congress, more than one year prior to the *initiation* of Treasury's debarment proceeding, in an obvious effort to retrospectively try to legitimize these false statements; and,

      c.     The debarment was punitive and presented a clear vendetta against the plaintiffs, as it lacked any jurisdictional basis or factual findings.

      Finally, justice requires that this Court reconsider the July 28, 2006 Order's statement that denial of Plaintiffs' Motion for TRO/PI will not interfere with government contracting in any meaningful way. It will cost two federal agencies time and money to transition Canales's contracts to other contractors. Moreover, for the reasons stated *supra,* the Government has a compelling interest in ensuring that when debarments issue, they issue to debar unscrupulous contractors for criminal or dishonest conduct relating to government contracts or procurement

and not to punish an agency's former employee. Accordingly, Plaintiffs respectively request that this Court reconsider its Memorandum Opinion and Order denying Plaintiffs' Motion for TRO/PI. Enforcement of this Debarment should be enjoined and set aside as without jurisdiction, contrary to law, and lacking any proper purpose or legal or factual foundation.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 54(b) addresses interlocutory orders, *i.e.*, orders that adjudicate fewer than all claims in a case. *APCC Srvcs., Inc. v. AT&T Corp.*, 281 F. Supp. 2d 41, 44 (D.D.C. 2003); *Campbell v. United States Dept. of Justice*, 231 F. Supp. 2d 1, 6 n.8 (D.D.C. 2002). Such orders are "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties" unless the court has directed the entry of final judgment as to the particular claims addressed by the order. *APCC Srvcs.*, 281 F. Supp. 2d at 44. Reconsideration of an interlocutory order is available under the standard, "as justice requires," which differs from the standards applied to final judgments under Rules 59(e)and 60(b), where the Court must find "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.*; *Campbell*, 231 F. Supp. 2d at 7.

## III. BACKGROUND FACTS

Canales was employed by the United States Department of the Treasury, hereinafter "Treasury," between June 1999 and October 2002 and worked in various capacities and positions, which culminated in the position of Acting Chief Information Officer and Acting Deputy Assistant Secretary. (Affidavit of Maria Canales ("Canales Aff.") at ¶ 2) (A copy of the Affidavit of Maria Canales is attached hereto as Exhibit 1). On June 6, 2002, the Office of Inspector General, hereinafter "OIG," of Treasury interviewed Canales about gifts she received

- 4 -

from an individual who acted as a consultant, John M. Neal, hereinafter "Neal." (Canales Aff. at ¶ 3). During the interview, Canales answered questions about her relationship with Neal, which was a long-standing personal one, and any gifts he had given her. (Compl. at ¶ 10). Canales stated that Neal gave her a vase of indeterminate value, which she stated she would return if the OIG deemed such action appropriate. Canales further stated that she declined to receive several small loose emeralds offered to her by Neal. (Canales Aff. at ¶ 4). Immediately following the interview, OIG personnel assisted Canales, who was unrepresented by counsel, with incorporating her statements into an affidavit that she then executed, hereinafter, the "Affidavit." (Canales Aff. at ¶ 5; Compl. at ¶ 11). Canales later pleaded guilty to a misdemeanor offense for falsely stating that she did not receive emeralds from Neal, which were valued at approximately $800. (Compl. at ¶ 15). This is the false statement - - made by Canales in June 2002 while she was a Treasury employee - - that forms the basis of Canales' misdemeanor conviction.

Late in October 2002, Canales voluntarily resigned as an employee of Treasury to open her own business to provide technology consulting services. (Canales Aff. at ¶ 6). Her resignation was in no way related to the OIG interview. (Canales Aff. at ¶ 7). In January 2003, Canales started M Squared, a technology consulting services company. (Canales Aff. at ¶ 8). In 2003, M Squared had contracts in the private sector *only*, with CACI, Entrust, AMS, Tripwire, Cap Gemini, Ngrain, and Sapeint. (Canales Aff. at ¶ 9).

On April 13, 2004, a one-count Information was filed against Canales charging her with the misdemeanor of Making a False Writing in violation of 18 U.S.C. § 1018 in connection with the Affidavit. (Canales Aff. at ¶ 10). On April 19, 2004, Canales pleaded guilty in the United Stated District Court for the District of Columbia to the misdemeanor offense. (Canales Aff. at ¶ 11). At the Arraignment Hearing, counsel for Canales made clear in the record that her

misstatement in the Affidavit was not related to the acceptance of any gratuity or bribe.

Counsel's statement, with the acquiescence of the Assistant United States Attorney, was

accepted by the Magistrate Judge. (*See* Transcript of Arraignment Hearing at p. 13, a copy of

which is attached hereto at Exhibit 2). Further, the Assistant United States Attorney read into the

record, at the July 13, 2004 Sentencing Hearing, that Canales's plea had nothing to due with any

bribery, gratuity or corruption in office offenses. (*See* Transcript of Sentencing Hearing at p. 5, a

copy of which is attached hereto at Exhibit 3). Indeed, Canales was not charged or convicted of

obstruction of an administrative investigation, 18 U.S.C. § 1505, witness tampering, 18 U.S.C. §

1512, or accepting unlawful gratuities, 18 U.S.C. § 201 or of violating any other bribery or

gratuity statute or anything to do with the awarding, conduct or administration of any

government contract. These were the charges that the OIG originally investigated when they

interviewed Canales in June 2002, but such charges were found to be groundless and

unsupported by any facts. (Compl. at ¶ 20).

   In April 2004, Canales transitioned from private sector contracts to contracting solely

with various United States Government agencies. (Canales Aff. at ¶ 12). She no longer

contracted with the private sector. (Canales's Supplemental Affidavit, hereinafter "Canales

Supp. Aff.," at ¶ 2, a copy of which is attached hereto at Exhibit 4). Since 2004, Canales and M

Squared have had contracts with the Department of Veterans Affairs (the "DVA"), the

Department of Energy (the "DOE"), and the Small Business Administration. (Canales Aff. at ¶

13). All of the federal agencies with which Canales contracted from 2004 to the present knew of

her prior misdemeanor conviction for making a false writing while she was a Treasury employee,

as she is required to disclose any convictions in the "Representations and Certifications" section

on all applications for government contracts. None of these agencies ever determined that her

misdemeanor conviction should form a basis for not awarding a contract to her or her company,

M Squared, let alone should form the basis for her potential debarment.  None of these

contracting agencies ever had or currently have any issue with Canales's present responsibility or

performance as a government contractor.  (Compl. at ¶ 24; Canales Supp. Aff. at ¶ 3).  Canales

does not have, never had, and has never applied for any government contracts with Treasury.

(Canales Aff. at ¶ 14).

On April 30, 2004, Defendant Dennis S. Schindel, Acting Inspector General of the

Department of Treasury, hereinafter "Schindel," published the Department of the Treasury

Office of the Inspector General's Semiannual Report To The Congress for the period October 1,

2003 - March 31, 2004.  (A copy of this report is attached hereto as Exhibit 5).  The Semiannual

Report *falsely stated* that, "[Canales] as part of or in exchange for a $5.8 million contract for

cyber-security related software and consulting services, Treasury's former Acting CIO directed

the contractor to place a $1.5 million subcontract with a company owned by a friend of the CIO.

In return, the CIO, received various gratuities including jewelry and use of a time-share rental

property located in the Bahamas.  *The former CIO agreed to ... be debarred from doing business*

*with the federal government for life.*" (Compl. at ¶ 26) (emphasis added).  At the time of this

publication by Treasury, Canales was not even a government contractor and, therefore, could not

have been debarred "for life."  Further, Canales's conviction, as Treasury well knew, had

absolutely *nothing* to do with her receipt of any gratuities or making any bribes.

Then, on October 29, 2004, Schindel published the Department of the Treasury Office of

the Inspector General's Semiannual Report To The Congress for the period April 1, 2004-

September 30, 2004, in which he again reiterated his previous false statements about Canales, the

disposition of her case, and her debarment.  (Compl. at ¶ 27).  Schindel stated that Canales

"directed a consulting firm under contract with [Treasury] to secure a $1.5 million subcontract with a company owned by the CIO's friend, as a part of (or in exchange for), a $5.8 million contract that Treasury awarded to the consulting firm.  The investigation revealed the acting CIO accepted various gratuities including jewelry and the use of a time-share rental property.  *The former acting CIO ... has been debarred for life from doing business with the federal government.*"  (*Id.*) (emphasis added).  (A copy of this report is attached hereto as Exhibit 6).  The statements regarding Canales in the April 30, 2004 and October 29, 2004 Semiannual Reports To The Congress were false at the time they were made, and the OIG knew they were false, as *Treasury had no pending debarment proceedings, or, for that matter, had ever initiated debarment proceedings against Canales as of the dates of these publications*.  (*See* Initiation of Debarment Proceedings, November 29, 2005, attached hereto as  Exhibit 7).  Moreover, as of the dates of those publications, there was no conviction of Canales with regard to any Federal Government procurements, *no information or indictment* filed by the U.S. Government based on the OIG investigation yielding that Canales accepted any gratuities, and no debarment of Canales from doing business with the Federal Government for any length of time, let alone "for life."  In fact, the Government affirmatively stated at Canales's arraignment and sentencing that it was not seeking convictions for violations of any of the gratuity or bribery statutes.  (*See* Exhibits 2 and 3 herein).

On November 29, 2005, more than one year after Schindel, acting on behalf of Treasury, had twice falsely notified Congress of Canales' alleged "lifetime debarment" for crimes she was never even accused of in two semi-annual official reports to the Congress, the defendants wrongfully and intentionally attempted to cover up their false statements by hurriedly issuing a notice that Treasury was "initiating proceedings" to debar Canales.  (Compl. at ¶ 29).  After

denying her request for a Due Process Hearing, on June 27, 2006, Defendant Sharpe issued the

Notice of Debarment prohibiting Canales and M Squared from participating in all Government

procurement "throughout the executive branch of the Government." (Canales Aff. at ¶ 15). The

debarment is stated to be effective for three years, commencing with an effective date of June 27,

2006 through June 27, 2009. (*Id.*). The Notice of Debarment did not contain any factual

findings or cite any jurisdictional basis for the issuance of the Notice of Debarment. (*Id.*) (A

copy of the Debarment Notice is attached hereto as Exhibit 6).

The debarment will cause Canales and M Squared to suffer irreparable harm. (Canales

Aff. at ¶ 17). Canales and M Squared have a prime contract with the DVA for seven and a half

people, a prime contract with the DOE IOA&T for three people, a prime contract with the DOE

I-Manage department for two people and no other contracts. (Canales Aff. at ¶ 19). Canales and

M Squared will lose their DVA and DOE IOA&T contracts within days if Treasury is permitted

to enforce the unlawful debarment. (Canales Aff. at ¶¶ 17-22). If the Government is not

enjoined from enforcing the debarment, within a matter of days (by no later than mid-August),

DVA and DOE will then transition the work from these contracts to other contractors. (*Id.*;

Canales Supp. Aff. at ¶¶ 4-5). The sole remaining contract, the DOE I-Manage contract, will be

terminated within a matter of weeks (by no later than September) if the Government is not

enjoined from enforcing the debarment. (Canales Aff. at ¶ 21; Canales Supp. Aff. at ¶¶ 4-5).

Once Canales loses these contracts, M Squared will be destroyed and go out of business.

(Canales Supp. Aff. at ¶ 6).

Not only will Plaintiff Canales's reputation and M Squared's business be destroyed if the

Government is permitted to enforce the debarment, but all employees of M Squared will lose

their jobs as well. (Canales Aff. at ¶ 22). However, the government agencies with whom

Canales has contracts through M Squared will not suffer any harm (much less, substantial harm) if the Government is restrained and enjoined from enforcing the debarment. (Canales Aff. at ¶ 23). Rather, those agencies will benefit from such an order because it will save them the time, expenses, and losses from work disruption that will ensue in finding a new contractor to perform the same work that Plaintiffs are satisfactory performing now. (*Id.*).

## IV. ARGUMENT

### A. Upon Reconsideration, This Court Should Determine That, Absent an Injunction, Plaintiffs Will Suffer Irreparable Harm.

To demonstrate irreparable harm if an injunction does not issue, a plaintiff must show that the harm it faces is imminent and certain, rather than remote and speculative. *Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005); *see also Wisconsin Gas Co. v. FERC*, 244 U.S. App. D.C. 349, 758 F.2d 669, 674 (D.C. Cir. 1985) ("the injury must be both certain and great; it must be actual and not theoretical"). Purely financial harm that can be recovered after a full trial on the merits is not "irreparable" -- the harm must be one for which there is no other adequate remedy at law. *Id.*

In Plaintiffs' Motion for TRO/PI, Plaintiffs demonstrated the clear and certain imminent harm they face if the Government is not enjoined from enforcing the debarment. If an injunction is not issued, Canales and M Squared will suffer irreparable harm as their existing government contracts will be canceled or will not be renewed, and M Squared will be ruined and destroyed as a business entity. (Canales Supp. Aff. at ¶¶ 2-6). Additionally, Canales's reputation will be irreparably destroyed and M Squared will cease to exist. (Canales Supp. Aff. at ¶¶ 4 and 6). There is no speculation involved - - Plaintiffs will lose their contracts if the debarment is not enjoined, and, without these contracts, M Squared would have no other business or employees and would cease to exist. (Plaintiffs' Motion for TRO/PI at pp. 5 and 9).

As this Court noted, economic loss alone does not equate with irreparable harm. However, economic harm rises to the level of irreparable harm where it threatens the "very existence of [plaintiffs'] business," as is the present case. *Patriot Inc.v. U.S. Dep't of Hous. & Urban Dev.*, 963 F. Supp. 1, 5 (D.D.C. 1997). In Plaintiffs' Motion for TRO/PI and Canales's affidavit, Plaintiffs demonstrated that M Squared's business would be destroyed if an injunction did not issue. The three government contracts that Plaintiffs will lose and one it lost on July 31, 2006 are the sum total of Canales's business. (Canales Supp. Aff. at ¶ 7). Therefore, justice requires reconsideration as Plaintiffs have demonstrated the irreparable harm that would ensue from the Court's failure to grant immediate injunctive relief.

In *Patriot*, this Court found that unless an injunction was granted, the plaintiffs would be barred from the reverse mortgage market. *Patriot*, 963 F. Supp. at 5. Notably, in *Patriot*, this Court determined that the plaintiffs would suffer irreparable harm even though it could certainly do business in other markets within the mortgage industry - - the Court still found that because the plaintiffs would be barred from one particular market in an entire industry, they would suffer irreparable harm. Justice requires that this Court apply that same standard in the instant matter. Canales no longer contracts in the private sector, but only has government contracts. Without the contracts with the DOE and the DVA, Canales and M Squared will be destroyed. Plaintiffs have no current contracts in the private sector to fall back on in case of this occurrence.

Treasury's notice of debarment was arbitrary and capricious, issued for improper purposes to attempt to conceal misconduct by the Defendants, and if not enjoined from enforcement or immediately declared improper and null and void, it will result in irreparable harm to Canales and M Squared and their employees by causing the termination of their three remaining contracts with the Government, as described in Plaintiffs' Motion for TRO/PI.

**B.      Upon Reconsideration, This Court Should Determine That Justice Requires That Plaintiffs Are Likely to Succeed On The Merits As The Debarring Official Had No Jurisdiction or Good Faith Basis To Debar Plaintiffs, and His Debarment Was Clearly Arbitrary, Capricious, and Not In Accordance With Law.**

In Plaintiffs' Motion for TRO/PI, Plaintiffs demonstrated the likelihood of their success on the merits.  As this Court stated in its Order, "a court may set aside such action only in cases where debarment was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'"  (Order, July 28, 2006, at p. 4).  First, Treasury had no jurisdiction to debar Canales from government contracting.  Second, there was no nexus between Canales's performance as a contractor and the debarment.  Third, the debarment is clearly without foundation and initiated and issued for an improper purpose, which is evidenced by Treasury's publication of two false reports and the lapse of 1-1 ½  years from these reports before Treasury even commenced a "debarment proceeding."  The debarment was a clear farce undertaken by Treasury solely to punish, to the greatest extent they were able, a former Treasury employee who Treasury failed to get indicted on more serious charges.  Plaintiffs' present a substantial likelihood of success on the merits, as such an unprecedented vindictive action should not be allowed to stand.  For these reasons, which are further articulated in Plaintiffs' Motion for TRO/PI and Complaint, Plaintiffs have a substantial likelihood of success on the merits, and this Court should enjoin enforcement of the debarment.

1.      <u>Treasury Had No Jurisdiction To Debar Canales.</u>

Defendants lacked jurisdiction or a rational basis to issue a Debarment Notice to Canales and M Squared.  The false statement underlying Canales's misdemeanor conviction, stating that she did not accept emeralds from a friend when she really did, which is what the Debarment Notice states the debarment is based on, was made by Canales when she was an employee of the

Department of Treasury (years before she ever applied to be awarded any government contracts) and *not* a government contractor.  There is nothing in the FAR or case law that even contemplates - much less allows - a government agency to debar a present government contractor for any convictions she was the subject of *prior to* her becoming a government contractor.  Further, and vitally absent from the Court's reasoning and the Notice of Debarment Proceedings and the Notice of Debarment is that neither M Squared nor Canales ever had *any* contracts with *any* government agency, nor had they ever applied for any, at the time Canales made the false statement underlying her misdemeanor conviction *and* at the time of her plea and conviction.

Moreover, neither M Squared nor Canales ever even had *any* contracts with Treasury *at any time, past or present,* nor had they ever applied for any, at the time the Debarment Notice was issued.  Plaintiffs have not uncovered any case in any jurisdiction where a government agency debars a contractor with which it does not do any business.  Therefore, Treasury has no basis whatsoever, other than for punitive reasons (*infra*), for debarring a contractor with whom it has *never* contracted.  If the debarment is not enjoined, a dangerous and sweeping precedent would be established; a precedent that allows the debarment of presently responsible government contractors for any and all misdemeanors and peccadilloes that occurred *prior to* the individual becoming a government contractor by any agency for any reason regardless of whether or not that agency does business with the contractor.

    2.    <u>There Is No Nexus Between The Conviction and Canales's Performance As a Government Contractor.</u>

When reviewing a debarment, the court's role is "to review the whole administrative record to determine whether there was a rational basis for the agency's action." *Silverman v United States Dep't of Defense*, 817 F. Supp. 846, 848 (S.D. Ca. 1993).  Unless there is substantial evidence to support an agency's findings, a decision must be rejected as irrational.

*Id.* In the instant matter, the alleged basis for the debarment was wholly irrational and

insufficient as a matter of law because it bore *no nexus whatsoever* to *anything* that Canales or M

Squared did as a government contractor. Canales was *not a government contractor* at the time

she made the false statement or at the time she plead to a misdemeanor offense and was

convicted, but was merely an employee and a former employee of Treasury, respectively, at

those times. Again, as the Department of Justice admitted *twice*, both in Canales's arraignment

hearing in April 2004 and then at her sentencing hearing in July 2004, the false statement

underlying the misdemeanor conviction had *nothing to do* with the violation of any bribery or

gratuities statute or her duties regarding government contracts, but were made merely to avoid an

embarrassing personal situation. It is undisputed that Canales' misdemeanor conviction did not

relate to her performance as a government contractor or to procurement at all. Debarment on this

basis is improper. Section 9.406-5(a) states:

> The fraudulent, criminal, or other seriously improper conduct of any officer,
> director, shareholder, partner, employee, or other individual associated with a
> contractor may be imputed to the contractor when the conduct *occurred in
> connection with the individual's performance of duties for or on behalf of the
> contractor*, or with the contractor's knowledge, approval, or acquiescence.

*Id.* (emphasis added); *Silverman*, 817 F. Supp. at 848-49 (stating that "the ultimate inquiry" in a

debarment must be directed to the "present responsibility" of the contractor). It is the debarring

agency's responsibility to ensure that all findings of responsibility are based on the presence of a

realistic and articulable threat of harm to the government's proprietary interest. *Silverman*, 817

F. Supp. at 849; *Robinson v. Cheney,* 876 F.2d 152, 159-160 (D.C. Cir. 1989).

In the instant case, Canales's conviction did not occur in connection with her

performance as a contractor and was not on her behalf as a contractor. To reiterate, the basis for

the debarment - - Canales's misdemeanor conviction for statements made when she was an

- 14 -

employee at Treasury - - is wholly unrelated to her performance as a government contractor.  As fully set forth in Plaintiff's Motion for TRO/PI, Plaintiffs disclosed Canales's misdemeanor convictions to all of the government agencies with which she contracted.  Thus, Defendant will not be able to show a realistic and articulable threat of harm - - there is simply no nexus since other agencies have deemed Canales's performance as a government contractor to be more than satisfactory and therefore continue to award contracts to her.  Canales's misdemeanor conviction is based on an offense that had nothing to do with procurement or performance as a government contractor.  Defendants will not be able to meet their burden at trial of demonstrating a rational basis for their debarment, and, therefore, Plaintiffs have demonstrated that they have a substantial likelihood of success on the merits.

      3.       <u>Treasury Initiated Debarment Proceedings and the Debarment Notice Solely to Punish Canales and Was Therefore Issued For an Improper and Impermissible Purpose.</u>

Plaintiffs' Motion for TRO/PI and Complaint demonstrate misconduct, the *intentional* publication of false statements, and deliberate actions taken by Treasury to do everything they could to ruin Canales and her reputation in the contracting community.  Such punishment does not comport with the policies underlying debarment.  However, Treasury's was actions were blatantly and purely penal in nature, and simply cannot be viewed as otherwise because the false statement allegedly forming the basis for the Debarment Notice occurred before Canales became a government contractor and because Treasury had no contracts with Plaintiffs and therefore could not opine at all on their business honesty or integrity as a government contractor.

The policy behind debarment is to promote an agency's policy of conducting business only with responsible persons and cannot be used to punish an individual (*see Silverman*, 817 F. Supp. at 848; 48 C.F.R. § 9.402(b)); rather, it serves a remedial purpose of protecting the federal

government from the business risk of dealing with an individual who lacks "business integrity or

business honesty." *Burke v. EPA*, 127 F. Supp. 2d 235, 238-39 (D.D.C. 2001). The policies that

debarment upholds state that

> (a) Agencies shall solicit offers from, award contracts to, and consent to subcontracts with responsible contractors only. Debarment and suspension are discretionary actions that, taken in accordance with this subpart, are appropriate means to effectuate this policy.

> (b) The serious nature of debarment and suspension requires that these sanctions be imposed only in the public interest for the Government's protection and not for purposes of punishment. ...

48 C.F.R § 9.402(a) and (b). None of these policies are effectuated by debarring Canales and M

Squared from doing business with the Government for the next three years. In fact, the evidence

shows that these policies will be contravened if the Government is not enjoined from enforcing

the debarment.

Clearly, Treasury did not issue the Debarment Notice to protect the Government from

dealing with irresponsible or inscrutable contractors, as is the policy for debarment set forth in

the FAR at 48 C.F.R.§ 9.402; rather, Treasury initiated debarment proceedings, lacking any

factual findings or jurisdictional basis, against Canales *after* Treasury's OIG had twice *falsely*

notified Congress of Canales' alleged "lifetime debarment" in two semi-annual official reports to

the Congress to try to legitimize those false statements. Debarments that are punitive and that

present such a clear vendetta against a contractor, as this does, are not in accordance with law

and should be set aside as arbitrary and capricious, as well as contrary to law. "A contractor may

not be delisted, blacklisted, or otherwise denied contracts 'for punishment.'" *Roemer v.*

*Hoffmann,* 419 F. Supp. 130 (D.D.C. 1976). Punitive action is precisely the point of this

debarment by Treasury; there is no other explanation for the debarment since Treasury had no

contracts with Canales, and, therefore, had no sense of her performance as a government

contractor, and had twice published false accounts about her in semi-annual reports to Congress. Therefore, because the Debarment Notice is premised on an improper and unlawful basis to punish Canales rather than to protect the Government, it is invalid *ab initio*. Consequently, Plaintiffs are likely to succeed on the merits of the underlying claim, and this Court should reconsider its July 28, 2006 Order and enjoin the Government from enforcing the Debarment Notice.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that the Court:

1.    Reconsider the Court's July 28, 2006 Order denying Plaintiff's Motion for a temporary restraining order and preliminary injunction against enforcement of Treasury's June 27, 2006 debarment notice;

2.    Grant Plaintiff's Motion for a temporary restraining order and preliminary injunction against enforcement of Treasury's June 27, 2006 debarment notice;

3.    Award Canales and M Squared its reasonable attorney's fees and costs expended herein;

4.    A hearing on this Motion;

5.    Grant such other and further relief as this Honorable Court deems just and proper.

DATED:  August 2, 2006.                    Respectfully submitted,


/s/ Steven D. Cundra_____
By:  One of their attorneys
Steven D. Cundra, D.C. Bar No. 374074
Amy Epstein Gluck, D.C. Bar No. 453525

Nicholas M. Beizer, D.C. Bar No. 485894
**HALL, ESTILL, HARDWICK, GABLE,**
**GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
(202) 973-1212 (fax)

William W. Nickerson, D.C. Bar No. 386581
Attorney at Law
1725 I Street, N.W.
Suite 300
Washington, D.C. 20006
(202) 349-3877
(202) 349-32915 (Fax)
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2nd day of August, 2006, a copy of the foregoing documents were served via electronic mail, to:

JOHN C. TRUONG
Assistant United States Attorney
555 4th Street, N.W.
Room E-4206
Washington, D.C.  20530

Attorney for Defendants

/s/ Steven D. Cundra
Steven D. Cundra

65402.1:230133:00420

- 18 -