# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARIA CANALES                  )
                                       )

and                                )

M SQUARED STRATEGIES, INC.,    )
                                       )

     Plaintiffs,                 )

v.                                  )     Civil Action No: 1:06CV01330

HENRY M. PAULSON,          )
SECRETARY OF THE UNITED STATES  )
DEPARTMENT OF TREASURY,    )

THOMAS A SHARPE, JR.,      )

and                                )

DENNIS S. SCHINDEL,        )

     Defendants.              )

## AFFIDAVIT OF MARIA CANALES

    I, Maria ("Mayi") Canales, do hereby aver, under penalty of perjury, that the following is true and correct:

    1.     My name is Maria ("Mayi") Canales.  I am over 18 years of age, and I have personal knowledge of the matters contained herein.

    2.     I was employed by the United States Treasury Department ("Treasury") between June 1999 and October 2002 and worked in various capacities and positions, which culminated in the position of Acting Chief Information Officer and Acting Deputy Assistant Secretary.

    3.     On June 6, 2002, the Office of Inspector General ("OIG") of Treasury interviewed me about gifts I received from an independent consultant, John M. Neal ("Neal").

EXHIBIT
1

4.    During the interview, I explained that I received from Neal a vase of indeterminate value that I would return if OIG deemed such action appropriate. Additionally, I stated that I declined to accept several small loose emeralds that were also offered to me by Neal.

5.    Immediately after the interview OIG personnel incorporated my statements into an affidavit, which I then executed.

6.    Late in October 2002, I voluntarily resigned as an employee of Treasury to open my own business to provide consulting services to both public and private clients.

7.    My resignation from Treasury was in no way related to the OIG interview.

8.    In January 2003, I started M Squared Strategies, Inc. ("M Squared"), a technology consulting services company. I am the sole shareholder of M Squared, owning 100% of the company's interests, and I am the Chief Executive Officer of the company.

9.    In its first year in business, 2003, M Squared had contracts in the private sector with CACI, Entrust, Cap Gemini, AMS, Tripwire, Ngrain, and Sapeint.

10.    On April 13, 2004, the United States filed a one-count Information against me, charging me with the misdemeanor of Making a False Writing in violation of 18 U.S.C. § 1018 in connection with the affidavit I signed immediately following my interview with OIG.

11.    On April 19, 2004, I pleaded guilty in the United Stated District Court for the District of Columbia to the misdemeanor offense referred to in paragraph 11 herein.

12.    In April 2004, M Squared began obtaining government contracts with various United States Government agencies.

13.    Since April 2004, M Squared has had successful contracts with the Department of Veterans Affairs (the "DVA"), the Department of Energy (the "DOE"), and the Small Business Administration.

14.    I do not have, never had, nor have I ever applied for any government contracts with Treasury.

15.    On June 27, 2006, the Debarring Official at Treasury issued a Notice of Debarment prohibiting M Squared and me from participating in all United States Government procurement. The debarment is stated to be effective for three (3) years, commencing with an effective date of June 27, 2006. The Notice of Debarment did not contain any factual findings or cite any jurisdictional basis for the issuance of the Notice of Debarment.

16.    If a restraining order and subsequent injunction are not issued to enjoin the Government from enforcing the debarment of M Squared and me, M Squared and I will suffer irreparable harm, as my current contracts with the DVA and the DOE will be canceled or transitioned to other contractors due to the debarment, effectively destroying my reputation and M Squared's business.

17.    I have a subcontract with HPTi in the DVA for three and a half people, which will be terminated on July 31, 2006 if the Government is permitted to enforce the debarment.

18.    I have a prime contract with the DVA for seven and a half people. This contract is funded through September 30, 2006, but I have to inform the DVA by mid-August if the debarment has been resolved or enjoined. If the debarment has not been resolved or enjoined, the DVA will then transition the work from this contract to another contractor.

19.    I have a prime contract with the DOE IOA&T for three people. This contract is funded through September 30, 2006, but I have to inform the DOE by mid-August if the debarment has been resolved or enjoined. If the debarment has not been resolved or enjoined, the DOE will then transition the work from this contract to another contractor.

20.    I have a prime contract with the DOE I-Manage department for two people.  This contract is funded through November 15, 2006, but I must inform the DOE by September if the debarment has been resolved or enjoined.  If the debarment has not been resolved or enjoined, the DOE will then transition the work from this contract to another contractor.

21.    If an injunction is not issued, M Squared and I will suffer irreparable harm as the cancellation or non-renewal of all of my contracts will force me to terminate the employees of M Squared and close the offices.

22.    The government agencies with whom I have contracts will not suffer substantial harm if a restraining order and, later, an injunction is issued.  Rather, those agencies will benefit from such an order and injunction because it will save them the time and expense of finding a new contractor.

I attest to the truth of these statements and will so testify if called upon.


Date: 7-28-2006                              _Maria Canales_____
                                             Maria ("Mayi") Canales


Sworn to and Subscribed
Before me this 28th
Day of July , 2006.

_Katie M. Taylor_____
Notary Public

Katie M. Taylor
Notary Public, District of Columbia
My Commission Expires 08-31-2006

65275.1:230133:00420

- 4 -

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - - x
                                 :
In the Matter of:               :
                                 :
UNITED STATES OF AMERICA        :
                                 :
          vs.                   :  Docket No. 04-0135M-01(CR)
                                 :
MARIA CANALES                   :  Washington, D.C.
                                 :  April 19, 2004
- - - - - - - - - - - - - - - - x
```

TRANSCRIPT OF HEARING ON ARRAIGNMENT
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Government:

HOWARD SKLAMBERG, Esq.
Assistant United States Attorney

On behalf of the Defendant:

WILLIAM W. NICKERSON, Esq.

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M9915A/dac

# P R O C E E D I N G S

THE CLERK:  Case Number 04-135M, the United States of America versus Maria Canales.  Dan Foster representing the Government, Howard Sklamberg representing the Defendant.  This matter is scheduled for a PR.

MR. SKLAMBERG:  It's the other way around.

MR. NICKERSON:  A little off, a little change.

MR. SKLAMBERG:  Actually, I'm Howard Sklamberg representing the Government.  This is William Nickerson representing the Defendant.

THE CLERK:  Okay, okay, William Nickerson.

MR. SKLAMBERG:  Dan Foster is a paralegal in my office.

THE CLERK:  Okay, thank you.

MR. WIEGAND:  This is Barry Wiegand and with the Court's permission, I'm leaving at least briefly, with the Court's permission, Your Honor.

THE MAGISTRATE JUDGE:  You may be excused --

MR. WIEGAND:  Thank you, Your Honor.

THE MAGISTRATE JUDGE:  -- since I see Mr. Sklamberg is ready to proceed.  Now are the parties ready to proceed with the Rule 11 inquiry?

MR. SKLAMBERG:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  Mr. Nickerson, are you ready?

MR. NICKERSON:  I'm ready, Your Honor.

1          THE MAGISTRATE JUDGE:  Very well.  Ms. Canales --

2          THE DEFENDANT:  Yes.

3          THE MAGISTRATE JUDGE:  -- would you stand, please?

4   Good afternoon.  The Court has been informed that you wish to

5   plead guilty to the information filed by the United States

6   Attorney.  Is that correct?

7          THE DEFENDANT:  Yes.

8          THE MAGISTRATE JUDGE:  Before your plea can be

9   accepted, there are a number of questions that I am required

10  to ask you.  Your answers to the questions will be given under

11  oath.

12         (The Defendant is sworn by the clerk.)

13         THE MAGISTRATE JUDGE:  Now Ms. Canales, are you now

14  under the influence of any alcohol, drugs or medication?

15         THE DEFENDANT:  No.

16         THE MAGISTRATE JUDGE:  Do either of you know of any

17  reason Ms. Canales might be unable to understand or

18  participate in this proceeding?  Mr. Nickerson?

19         MR. NICKERSON:  Not at all, Your Honor.

20         THE MAGISTRATE JUDGE:  Mr. Sklamberg?

21         MR. SKLAMBERG:  No, Your Honor.

22         THE MAGISTRATE JUDGE:  Ms. Canales, have you had

23  enough time to discuss this case with your lawyer?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE MAGISTRATE JUDGE:  Are you satisfied with his

4

1 services?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE MAGISTRATE JUDGE:  Do you understand, Ms.

4 Canales, that under the Constitution and laws of the United

5 States, that you are entitled to a trial by jury on the charge

6 pending against you?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE MAGISTRATE JUDGE:  Do you understand that if

9 there were a trial, that you would be presumed innocent and

10 that in order for you to be convicted, it would be the burden

11 of the Government to prove you guilty beyond a reasonable

12 doubt?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE MAGISTRATE JUDGE:  Do you know that in its effort

15 to prove you guilty, the Government would be required to

16 produce witnesses to testify in open court in your presence?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE MAGISTRATE JUDGE:  Do you know that your lawyer

19 would be permitted to cross examine the Government witnesses?

20              THE DEFENDANT:  Yes, Your Honor.

21             THE MAGISTRATE JUDGE:  Do you know that evidence

22 could be offered on your behalf?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE MAGISTRATE JUDGE:  Do you know that you would

25 have the right to testify at your trial?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE MAGISTRATE JUDGE:  Do you understand that you

3 would also have the right not to testify?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE MAGISTRATE JUDGE:  Do you understand that if you

6 chose not to testify, that no inference of guilt could be

7 drawn against you for that reason?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE MAGISTRATE JUDGE:  Do you know, Ms. Canales, that

10 if your plea of guilty is accepted, you will waive all of

11 those rights?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE MAGISTRATE JUDGE:  Do you understand that there

14 will be no trial if you plead guilty?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE MAGISTRATE JUDGE:  And do you know that by

17 pleading guilty, you will give up your right to appeal your

18 conviction to a higher court?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE MAGISTRATE JUDGE:  Having discussed these rights

21 with you, do you still wish to plead guilty?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE MAGISTRATE JUDGE:  Ms. Canales, do you have a

24 copy of the information, the charging document filed by the

25 United States Attorney?

1            THE DEFENDANT:  Yes, Your Honor.

2            THE MAGISTRATE JUDGE:  Is that a copy that you just

3 put on the table in front of you?

4            THE DEFENDANT:  Yes.

5            THE MAGISTRATE JUDGE:  Do you need more time to

6 review the information with Mr. Nickerson?

7            THE DEFENDANT:  No, Your Honor.

8            THE MAGISTRATE JUDGE:  Do you understand the charge

9 alleged in the information?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE MAGISTRATE JUDGE:  Do you know what the maximum

12 penalty is for that charge?

13           THE DEFENDANT:  Yes.

14           THE MAGISTRATE JUDGE:  What is your understanding of

15 the maximum penalty?

16           THE DEFENDANT:  It's one year and a hundred thousand

17 or --

18           THE MAGISTRATE JUDGE:  Has anyone promised you what

19 sentence --

20           THE DEFENDANT:  No, I don't know what the -- I'm

21 sorry, Your Honor, I guess I don't know.

22           THE MAGISTRATE JUDGE:  Why don't you have a seat and

23 discuss the penalty with Mr. Nickerson, please?  I will also

24 ask you to review the document that has the caption Plea

25 Agreement, which you should also have on the table in front of

1   you.

2           Very well, do you now recall the maximum period of

3   incarceration and the maximum fine for which the United States

4   Code provides?

5           THE DEFENDANT:  One year and 10,000.

6           MR. SKLAMBERG:  Your Honor, it's actually one year

7   and a hundred thousand is the statutory maximum.

8           THE MAGISTRATE JUDGE:  Let me direct your attention,

9   Ms. Canales, to Paragraph 4 of the written plea agreement.

10  And if you'd like to have a seat and review that paragraph

11  with Mr. Nickerson again, you may certainly do so.

12          THE DEFENDANT:  I guess I have it right.

13          MR. NICKERSON:  She knows it, Your Honor.

14          THE MAGISTRATE JUDGE:  Do you now know that the

15  maximum fine that is authorized is a fine of $100,000.00?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE MAGISTRATE JUDGE:  Has anyone promised you what

18  sentence will actually be imposed?

19          THE DEFENDANT:  No, Your Honor.

20          THE MAGISTRATE JUDGE:  Have you discussed with your

21  lawyer how the federal sentencing guidelines might apply to

22  your case?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE MAGISTRATE JUDGE:  Do you know that your lawyer's

25  guidance regarding the applicable guideline provisions is his

estimate and not a finding by the Court, that that is the

guideline application that will govern your sentencing?

THE DEFENDANT:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  Do you know that even if your

sentence is more severe than you now expect that it will be,

you are still bound by your plea and that you will not be

permitted to withdraw your plea for that reason?

THE DEFENDANT:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  Do you know that parole has

been abolished, so that if you are sentenced to a period of

incarceration, you will not be released early on parole?

THE DEFENDANT:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  Do you need to discuss that

with Mr. Nickerson?

THE DEFENDANT:  No.

THE MAGISTRATE JUDGE:  Now I referred a moment ago to

a document captioned Plea Agreement.  Do you still have your

copy of the plea agreement on the table?

THE DEFENDANT:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  I'm going to ask the marshal

to give you the one that I have so that I can ask you to look

at the signature on the line marked, "Maria Canales."  Is that

your signature?

THE DEFENDANT:  Yes, Your Honor.

THE MAGISTRATE JUDGE:  Very well, you may hand it

1 back to the marshal.  Did you review this agreement with Mr.

2 Nickerson before you signed it?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE MAGISTRATE JUDGE:  Does the letter -- excuse me,

5 does the agreement accurately state your understanding of the

6 agreement between you and the Government?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE MAGISTRATE JUDGE:  Has anyone promised you

9 anything, other than what is stated in this plea agreement, in

10 return for your plea?

11          THE DEFENDANT:  No, Your Honor.

12          THE MAGISTRATE JUDGE:  Has anyone threatened you or

13 forced you to lead you to the decision to plead guilty?

14          THE DEFENDANT:  No, Your Honor.

15          THE MAGISTRATE JUDGE:  Very well, you may have a

16 seat.

17          THE DEFENDANT:  Thank you.

18          THE MAGISTRATE JUDGE:  Mr. Sklamberg, I'll hear the

19 proffer on the record of what the Government's evidence would

20 have shown, had this matter gone to trial.

21          MR. SKLAMBERG:  Very well, Your Honor.  From December

22 of 2001 until April 2002, Ms. Canales was the U.S. Treasury

23 Department's Deputy Chief Information Officer, which is a

24 Senior Executive Service position.  In April 2002, she became

25 the Acting Chief Information Officer and Acting Deputy

Assistant Secretary.  During her tenure at the Treasury

Department, Ms. Canales' office was in the District of

Columbia.  She was a public officer, as that term is used in

18 USC, Section 1018, which is the section she is pleading

guilty to.

Consultant representing information technology

companies that were seeking contracts with the Treasury

Department.  Ms. Canales and Consultant had known each other

since she began working at the Treasury Department.  Over the

years, Consultant has given Ms. Canales a number of gifts of

value, including jewelry.

In October of 2001, the Treasury Department allocated

approximately $5.7 million for a contract for cyber security

related software and consultant services.  The Department

directed that this contract be filled expeditiously.

Consultant represented an information technology company,

which I'll refer to as "the company," which provided the type

of services the Treasury Department was seeking.

In March 2002, the company received a $1.5 million

subcontract that was part of the available $5.7 million for

software and consultant services.  Ms. Canales signed the sole

source justification for this contract and subcontract.  Ms.

Canales informed Consultant of the amount of funds available

for the subcontract and sent Consultant a statement of work.

In late February, early March 2002, while the

subcontract was under consideration, Ms. Canales, her husband,
the consultant and his girlfriend vacationed together in
Malta, using a timeshare that belonged to Consultant's
girlfriend.

In March 2002, the Treasury Department's Office of
Inspector General, OIG, initiated an investigation into
whether there was a connection between Ms. Canales' role in
the approval of the subcontract and any gifts that Ms. Canales
received from the consultant.  The investigation considered
whether any criminal law had been violated and/or whether
administrative action was appropriate.

As part of the investigation, OIG interviewed Ms.
Canales.  On June 6th, 2002, following an interview with OIG
agents in her Washington, D.C. office, Ms. Canales drafted and
signed a sworn written statement which purported to be, quote,
". . . true, accurate and complete, to the best of . . .,"
her, ". . . knowledge and belief," end quote, but in which Ms.
Canales also stated, A, that other than a vase, Ms. Canales
had not received any gifts of value from Consultant, when in
truth and in fact, as Ms. Canales well knew, she had received
gifts of value from Consultant; B, that she declined a gift of
emeralds from Consultant.  In truth and in fact, as Ms.
Canales well knew, she accepted emerald chips from Consultant.
These chips were worth approximately $802,000.00; C, that she
did not, quote, ". . . have knowledge of the method used to

1 award . . .," end quote, the subcontract.  In truth and in

2 fact, as Ms. Canales well knew, she was aware that the

3 subcontract was a sole source -- she signed the sole source

4 justification for the contract.

5        Ms. Canales' role in awarding the subcontract and the

6 nature of any gifts that she received from the consultant were

7 material to the OIG's investigation.  Ms. Canales' false

8 writings identified above were at all times material to the

9 OIG's investigation.

10        Immediately following Ms. Canales' interview with the

11 OIG, she called Consultant, she informed Consultant of the

12 misstatements that she had made to the OIG.  She requested

13 that if OIG interviewed Consultant, that Consultant should lie

14 about the extent of Ms. Canales' involvement in awarding the

15 subcontract.  Ms. Canales also asked Consultant to state

16 falsely that he had not given her emerald chips and that the

17 only gift of value that he had given her was a vase.

18        On June 12th, 2002, OIG agents interviewed

19 Consultant.  Pursuant to Ms. Canales' request, Consultant

20 falsely stated, A, that the only gifts of value that had been

21 given to Ms. Canales was a vase; B, that he had offered

22 emerald chips to Ms. Canales, but she refused them; C, that he

23 and Ms. Canales did not talk about this amount of the

24 subcontract; and D, that Ms. Canales did not send him a

25 statement of work for the subcontract.

13

1         And this conduct, the Government submits, constitutes

2  a violation of 18 USC, Section 1018, which is making a false

3  writing.

4         THE MAGISTRATE JUDGE:  Thank you, Mr. Sklamberg.  Ms.

5  Canales, has Mr. Sklamberg accurately stated your actions and

6  your conduct with respect to the matter alleged in the

7  information?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE MAGISTRATE JUDGE:  Is there anything that Mr.

10  Sklamberg said that you wish to correct or explain?

11         MR. NICKERSON:  Yes, Your Honor, I have one matter.

12  It has to do with the overall plea.  I'd like just to have it

13  noted that there is no connection proffered by the United

14  States Attorney's office that connects any procurement to

15  those gifts.  The consultant was a friend of Ms. Canales for a

16  period in excess of four years before the contract.

17         THE MAGISTRATE JUDGE:  Mr. Sklamberg?

18         MR. SKLAMBERG:  This is a plea to Section 1018 and

19  we're not alleging a violation of the bribery or gratuity

20  statute, so that statement I think does not detract from the

21  factual proffer.

22         THE MAGISTRATE JUDGE:  Does that mean that the

23  Government remains satisfied that with the explanation offered

24  by Ms. Canales' counsel, there remains a factual basis in

25  support of the plea?

1          MR. SKLAMBERG:  As long as the Defendant says on the

2     record that all of the words and the factual basis of the plea

3     are correct and true, that does meet all the elements of the

4     offense and the Government is satisfied.

5          MR. NICKERSON:  They are.

6          THE MAGISTRATE JUDGE:  Ms. Canales, the marshal will

7     hand you the written factual basis for plea and I will again

8     ask you to look at the signature line so that you can tell me

9     whether that is your signature.

10          THE DEFENDANT:  Okay.  Yes, Your Honor.

11          THE MAGISTRATE JUDGE:  Did you review that written

12     proffer with Mr. Nickerson before you signed it?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE CLERK:  Ms. Canales, in Criminal Action Number --

15     I'm sorry, Miscellaneous Number 04-135, in which you are

16     charged in violation of 18 USC 1018, how do you plead?

17          THE DEFENDANT:  Guilty.

18          THE CLERK:  Thank you.

19          THE MAGISTRATE JUDGE:  It is the finding of the Court

20     that Ms. Canales' plea of guilty is a knowing and voluntary

21     waiver of her rights, supported by an independent basis in

22     fact which contains each of the essential elements of the

23     offense.  The plea will therefore be accepted.  You may have a

24     seat.

25          THE DEFENDANT:  Thank you, Your Honor.

1         THE MAGISTRATE JUDGE:  Counsel, have the two of you

2  conferred regarding a date for sentencing?  I would suggest a

3  date in late to mid-July.

4         MR. SKLAMBERG:  I was anticipating that's when Your

5  Honor's criminal calendar began and that's fine with us.

6         MR. NICKERSON:  Right.

7         THE MAGISTRATE JUDGE:  We can schedule the sentencing

8  for any afternoon at 1:30.

9         MR. SKLAMBERG:  What day of the week works best for

10 the Court's calendar, makes it less congested if --

11        THE MAGISTRATE JUDGE:  I would suggest Tuesday,

12 Wednesday or Thursday then, since Monday and Friday tend to be

13 busier.

14        MR. SKLAMBERG:  Can I throw out Tuesday, July 13th?

15        THE MAGISTRATE JUDGE:  That's fine.  Mr. Nickerson?

16        MR. NICKERSON:  Fine, fine, Your Honor.

17        THE MAGISTRATE JUDGE:  That will be at 1:30 in this

18 courtroom.  Mr. Sklamberg, does the United States wish to be

19 heard with regard to Ms. Canales' conditions of release?

20        MR. SKLAMBERG:  We have no objection to personal

21 release, Your Honor.  We'd just ask the Court to sign the

22 booking order with one change.  It turns out Ms. Canales will

23 be booked tomorrow, rather than today, so if the Court could

24 just change that date on the booking order.

25        THE MAGISTRATE JUDGE:  Have you shown the proposed

1 booking order to Mr. Nickerson?

2          MR. SKLAMBERG:  I have.

3          MR. NICKERSON:  Yes.

4          THE MAGISTRATE JUDGE:  And is Ms. Canales to meet the
5 agents here in the courthouse for routine processing?

6          MR. SKLAMBERG:  They're going to meet in front of
7 MPD, I believe, tomorrow.

8          MR. NICKERSON:  Right.

9          THE MAGISTRATE JUDGE:  Very well.  Mr. Nickerson --
10          MR. NICKERSON:  Yes.

11          THE MAGISTRATE JUDGE:  -- do you wish to be heard
12 regarding Ms. Canales' conditions of release?

13          MR. NICKERSON:  Not at all, Your Honor.

14          THE MAGISTRATE JUDGE:  Very well.  Now Ms. Canales,
15 the Court will release you on your personal promise to return
16 to court for your sentencing, which has been scheduled for
17 Tuesday, July 13th, at 1:30 in this courtroom, with the
18 following conditions.  First, you must continue to reside at
19 your current address and you are not to travel without first
20 seeking and obtaining leave of the court to do so.

21          When you leave court today, you must report to the
22 Probation Office and you will be given a probation referral
23 slip to take with you there.

24          THE DEFENDANT:  Yes, Your Honor.

25          THE MAGISTRATE JUDGE:  You must comply with the

1   booking order which I have signed, which requires that

2   tomorrow -- I don't believe you gave us the time, Mr.

3   Sklamberg.

4              MR. NICKERSON:  It's noon, Your Honor.

5              MR. SKLAMBERG:  Noon.

6              THE MAGISTRATE JUDGE:  Thank you.  The order, of

7   course, requires that at noon tomorrow, you meet the agents at

8   the Department of Treasury for what is known as routine

9   processing.

10             Your final condition is that you return to court for

11  your sentencing.  You are advised that your willful failure to

12  do so would be a separate offense for which you could face an

13  additional period of incarceration or a fine or both.  Do you

14  understand?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE MAGISTRATE JUDGE:  Very well.  You may have a

17  seat until your release order is prepared.

18             THE DEFENDANT:  Thank you.

19             (The Defendant is sworn to her conditions of

20  release.)

21             THE MAGISTRATE JUDGE:  Now Counsel, is there anything

22  further in this matter this afternoon, Mr. Nickerson?

23             MR. NICKERSON:  Not at all, Your Honor.

24             THE MAGISTRATE JUDGE:  Mr. Sklamberg?

25             MR. SKLAMBERG:  No, Your Honor.

18

1          THE MAGISTRATE JUDGE:  Very well, thank you.  You may

2   all be excused.  Thank you.

3          MR. NICKERSON:  Thank you, Your Honor.

4          THE DEFENDANT:  Thank you, Your Honor.

5          (Whereupon, the proceeding concluded.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

19

UNITED STATES OF AMERICA    )
                            )    Docket No. 04-0135M-01
DISTRICT OF COLUMBIA        )


        I, PAUL R. CUTLER, do hereby certify that a
recording of the foregoing proceedings in the above matter was
duplicated from an original recording by the Office of the
Clerk, United States District Court for the District of
Columbia, and that said duplicate recording of the proceedings
was transcribed under my direction to typewritten form.


                              PAUL R. CUTLER

                    -  -  -


        I, DORIS A. CUTLER, do hereby certify that the
foregoing transcript was typed by me and that said transcript
is a true record of the recorded proceedings to the best of my
ability.


                              DORIS A. CUTLER

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - x
                              :
In the Matter of:            :
                              :
UNITED STATES OF AMERICA     :
                              :
        vs.                  :  Docket No. 04-0135M-01(CR)
                              :
MARIA CANALES                :  Washington, D.C.
                              :  July 13, 2004
- - - - - - - - - - - - - - - x
```

TRANSCRIPT OF HEARING ON SENTENCING
BEFORE THE HONORABLE DEBORAH A. ROBINSON
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

On behalf of the Government:

HOWARD SKLAMBERG, Esq.
Assistant United States Attorney

On behalf of the Defendant:

WILLIAM W. NICKERSON, Esq.

ALSO PRESENT:

LAVERNE EBRON, Probation Officer

Proceedings recorded by the Court, transcript produced by
Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C.  20005, 202-347-5395, www.pro-typists.com
M9915B/dac

2

<u>P R O C E E D I N G S</u>

1

THE CLERK:  Your Honor, United States versus Maria

2

Canales, Case Number 04-135M.  Government counsel is Howard

3

Sklamberg; Defense counsel is William Nickerson.  The

4

probation officer is Laverne Ebron.  This is here for a

5

sentencing.

6

THE MAGISTRATE JUDGE:  Now good afternoon.

7

(Chorus of, "Good afternoon, Your Honor.")

8

THE MAGISTRATE JUDGE:  Are all of you ready to

9

proceed?  Mr. Sklamberg?

10

MR. SKLAMBERG:  Yes, Your Honor.

11

THE MAGISTRATE JUDGE:  Ms. Ebron, Mr. Nickerson?

12

MR. NICKERSON:  I'm ready, Your Honor.

13

THE MAGISTRATE JUDGE:  Very well.  I have reviewed

14

very carefully the presentence report, as well as the parties'

15

objections.  I have also reviewed the agreement, the plea

16

agreement between the parties and the factual proffer.

17

I will first ask counsel to address whether there is

18

an issue that counsel believe the Court must resolve, in view

19

of the recent Supreme Court decision in *Blakely*.  It appears

20

to the Court that answer is no --

21

MR. NICKERSON:  No.

22

THE MAGISTRATE JUDGE:  -- since in the agreement, the

23

parties contemplated a two point upward adjustment for

24

obstruction of justice and Ms. Canales specifically admitted

25

during the course of the plea colloquy through the factual

proffer to the circumstances which would warrant the two point

adjustment.  But nonetheless, I think it is prudent to hear

you on the record with respect to whether this is also your

view of events.  Mr. Sklamberg.

MR. SKLAMBERG:  Happily, Your Honor, I agree with

you.  The factual bases for all of the -- for the adjustment

in this case were agreed upon by the parties, so to the extent

there are any *Blakely* issues, we waived.  That's the

Government's position.

The parties furthermore agree on how the guidelines

apply in this case.  The only *Blakely* wrinkle, and it really

isn't one, is that per the Department of Justice's procedure

in this case is we will ask you impose a sentence under the

guidelines and then an alternative sentence which I would

suggest be the same thing.

THE MAGISTRATE JUDGE:  But we haven't quite reached

that issue yet.  My question is only with respect to any issue

that has emerged by reason of the decision that would affect

the guideline calculations.  And your answer to that question,

as the Court imagined, having rereviewed all of the relevant

materials, is that the answer is no.

MR. SKLAMBERG:  That's correct, the answer is no.

THE MAGISTRATE JUDGE:  Very well.  Mr. Nickerson?

MR. NICKERSON:  I concur, Your Honor, with the

4

1  Government.

2          THE MAGISTRATE JUDGE:  Now have the two of you

3  discussed the request that you just made, Mr. Sklamberg, you

4  and Mr. Nickerson?

5          MR. NICKERSON:  Yes, we have.

6          MR. SKLAMBERG:  We have.

7          THE MAGISTRATE JUDGE:  Have you also discussed that

8  with Ms. Ebron?

9          MR. SKLAMBERG:  We have not.

10          THE MAGISTRATE JUDGE:  May I ask you to informally

11  confer now, please, Mr. Nickerson, Mr. Sklamberg and Ms.

12  Ebron?  I'm happy to pass the case if you need additional time

13  to do so, but if you believe that you might concur --

14          MR. NICKERSON:  No, I believe --

15          THE MAGISTRATE JUDGE:  -- in a moment or two, then

16  we'll continue.

17          MR. SKLAMBERG:  We've consulted, Your Honor.

18          THE MAGISTRATE JUDGE:  And are the three of you in

19  agreement with respect to the procedure that you have

20  proposed?  Mr. Sklamberg, Ms. Ebron --

21          MS. EBRON:  Yes, Your Honor.

22          THE MAGISTRATE JUDGE:  -- and Mr. Nickerson?

23          MR. NICKERSON:  Yes, Your Honor.

24          THE MAGISTRATE JUDGE:  Very well.  Now the final

25  issue where there appears to be some dispute is with respect

1  to the two point -- the subtraction of two points for

2  acceptance of responsibility.  My understanding is that

3  counsel concur that that is an adjustment that the Court

4  should make, but that the Probation Office maintains that the

5  adjustment is not appropriate.  Are you satisfied that all of

6  you have set forth your contentions adequately in writing and

7  that we need not address that issue now?

8           MR. SKLAMBERG:  Yes, Your Honor.

9           THE MAGISTRATE JUDGE:  Mr. Nickerson?

10          MR. NICKERSON:  Yes, we have, Your Honor.

11          THE MAGISTRATE JUDGE:  And Ms. Ebron?

12          MS. EBRON:  Yes, Your Honor.

13          THE MAGISTRATE JUDGE:  Very well, thank you.  Now

14 I'll ask you to please proceed with the balance of your

15 allocution, beginning with you, Mr. Sklamberg.  Mr. Nickerson,

16 I will hear from you, and Ms. Canales, you may also address

17 the Court directly if you wish to be heard.

18          THE DEFENDANT:  Thank you.

19          MR. SKLAMBERG:  Your Honor, I'll be brief.  As the

20 Court knows from reviewing the actual proffer which the

21 parties agreed upon, this case stems from an investigation by

22 the Inspector General's Office into activities by Ms. Canales.

23  There ended up being no allegation that Ms. Canales broke any

24 of the bribery or gratuity laws or corruption offenses.

25          In the course of the investigation, however, Ms.

1  Canales made a false written statement to the Inspector

2  General and then asked a friend of hers to also make a false

3  statement to the Inspector General.  That false statement

4  forms the basis, the false written statement, forms the basis

5  to the misdemeanor to which Ms. Canales pled.

6          In light of her acceptance of responsibility, the

7  Government does not oppose a probationary sentence in this

8  case.  Whether the offense level ends up being eight or six,

9  it still ends up zero to six months, regardless of -- we

10 contend the offense level should be six, but we would ask

11 regardless of it, we do not oppose probation in this case and

12 we would ask for community service as a condition of

13 probation.

14         THE MAGISTRATE JUDGE:  What is the contention of the

15 United States with respect to a fine as a further condition?

16         MR. SKLAMBERG:  We believe that, as the presentence

17 report indicates, Ms. Canales has the wherewithal to pay a

18 fine.  The plea agreement is that the Government would agree,

19 we'd ask for a penalty at the low end of the guidelines range,

20 so we would ask for a fine consistent with that.

21         THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

22 Sklamberg.  Now Mr. Nickerson?

23         MR. NICKERSON:  Yes, Your Honor.

24         THE MAGISTRATE JUDGE:  Good afternoon.

25         MR. NICKERSON:  Good afternoon.  The offense that my

7

client, Ms. Canales, has pled to is truly an aberration in her

long and I would say somewhat stellar professional and

personal career.

I would think that a -- I concur with the general

statements of the Government.  I would, however, think that an

unsupervised probation, without any kind of significant fine

would be more fitting.  There's no underlying crime behind the

misstatement, it's just a misstatement, it was stupid, and she

has -- Ms. Canales has something she would like to say to the

10 Court, if that's all right.

11          THE MAGISTRATE JUDGE:  Certainly.  Thank you --

12          MR. NICKERSON:  Thank you, Your Honor.

13          THE MAGISTRATE JUDGE:  -- Mr. Nickerson.  Ms.

14 Canales, good afternoon.

15          THE DEFENDANT:  Thank you, Your Honor.  I wrote down

16 my statement because I'm really nervous and I didn't want to

17 forget what I wanted to say, so if it's okay, could I read?

18          THE MAGISTRATE JUDGE:  That is fine, you're welcome

19 to read it.

20          THE DEFENDANT:  Okay.  Your Honor, I am both

21 extremely sorry and ashamed to be before you today.  I have no

22 excuse for the illegal and foolish conduct that brings me here

23 today.  I would like you to know that, however, while I cannot

24 take back the false statements I made to the agents, I can

25 assure you that I have learned a great deal about myself and

1 will never commit this or any other offense again.

2          I regret my decision to misstate the facts

3 surrounding the gifts I received.  However, I panicked and I

4 made a terrible mistake, which I cannot change, but only learn

5 from it.

6          This aberration has embarrassed myself, my office and

7 my family.  I would, however, like you to know that my

8 friendships never influenced me in my professional judgment at

9 the Treasury Department and there was never any quid pro quo.

10  This is the first time that I have found myself in this

11 position and I can assure the Court that it will be my last.

12          I would like the Court to take my previously

13 unblemished record into consideration in any sentence that I

14 receive and again promise that this offense will never be

15 repeated by me.  Your Honor, I thank you for your indulgence.

16          THE MAGISTRATE JUDGE:  Thank you, Ms. Canales, you

17 may have a seat.

18          THE DEFENDANT:  Thank you.

19          THE MAGISTRATE JUDGE:  Now the Court will proceed as

20 follows.  First, with respect to the adjustment for acceptance

21 of responsibility, the Court, for the reasons offered by

22 counsel, as well as for Ms. Canales' own acceptance of

23 responsibility here in court during this proceeding and at the

24 time she entered the plea, will allow the two-point adjustment

25 for acceptance of responsibility.

MR. NICKERSON:  Thank you, Your Honor.

THE MAGISTRATE JUDGE:  In all other respects, the findings of the Probation Office are adopted as the findings of the Court.  That means, of course, that the total offense level is six, the criminal history category is one, resulting in a guideline range of zero to six months.  The Court will impose a sentence within the guidelines, noting that neither counsel has offered reasons for departure therefrom, and the Court knows of no reason which would warrant departure.

The Court will also impose a sentence without regard to the guideline provisions, with the concurrence of both the Probation Office and counsel for the Government and Ms. Canales' counsel.

Now Ms. Canales, would you stand?  It is the judgment of the Court that you be sentenced to a period of probation of one year.  While on probation, you must comply with the standard conditions of probation and the following special conditions.

First, the Court will order payment of a fine within the guideline range in the amount of $2,500.00.  The Court will order that you complete 25 hours of community service within the first six months of probation.  The Court will also order that you pay the mandatory special assessment of $25.00.  If that payment has not already been made, I will allow a period of ten days from today's date for the special

1  assessment to be paid.

2          MR. NICKERSON:  It has been already paid, Your Honor.

3          THE MAGISTRATE JUDGE:  Very well, thank you, Mr.

4  Nickerson.  At the request of the Probation Office, the Court

5  will waive the mandatory drug testing requirement --

6          MR. NICKERSON:  Thank you.

7          THE MAGISTRATE JUDGE:  -- finding for the reasons

8  offered by the Probation Office that there is no evidence of

9  any history of substance abuse.  The Court will impose the

10  same sentence, with the same conditions as the alternative

11  sentence.

12          MR. NICKERSON:  Thank you.

13          THE MAGISTRATE JUDGE:  Finally, with respect to the

14  -- you may have a set, Ms. Canales.

15          THE DEFENDANT:  Thank you, Your Honor.

16          THE MAGISTRATE JUDGE:  With respect to the request

17  that supervision be unsupervised, the Court will deny the

18  specific request and leave the issue of appropriate

19  supervision to the discretion of the Probation Office.

20          MR. NICKERSON:  Your Honor --

21          THE MAGISTRATE JUDGE:  Now you are advised, Ms.

22  Canales, that you do have a right to appeal the sentence that

23  I have just imposed.  You are allowed a period of only ten

24  days from today's date to file a notice of appeal.  Mr.

25  Nickerson will advise you further regarding your rights to

1 appeal this sentence, which include the right to the

2 appointment of counsel to represent you on appeal, should you

3 be unable to retain counsel.

4        Now is there anything further in this matter this

5 afternoon?  Mr. Nickerson?

6        MR. NICKERSON:  One thing, Your Honor.  As the Court

7 knows, Ms. Canales derives her support from consulting and in

8 order to accomplish these tasks, she often has to travel.  The

9 Court was kind in its pretrial hearing to grant her the

10 ability to travel without necessarily informing the Probation

11 Office.  I see no risk of her doing anything that would impact

12 on that decision.  That's a stipulation that we would ask for,

13 Your Honor.

14        THE MAGISTRATE JUDGE:  Thank you, Mr. Nickerson.  Mr.

15 Sklamberg?

16        MR. SKLAMBERG:  I have no objection.

17        THE MAGISTRATE JUDGE:  Do you wish to address the

18 request, Ms. Ebron?

19        MS. EBRON:  Your Honor, regarding travel, we would

20 not have any I guess objections to Ms. Canales traveling

21 within the United States of America.  However, I guess if

22 there was an instance where she would need to travel outside

23 the U.S., that we would approach the Court with a memo to

24 address that.

25        THE MAGISTRATE JUDGE:  Thank you very much, Ms.

1 Ebron.

2        MS. EBRON:  Thank you, Your Honor.

3        THE MAGISTRATE JUDGE:  Ms. Ebron, may I assume that

4 is the standard Probation Office --

5        MS. EBRON:  That's correct.

6        THE MAGISTRATE JUDGE:  -- expectation?  Very well, I

7 will ask that you advise the Court, Ms. Ebron, should you

8 determine that it is necessary for Ms. Canales to travel

9 outside of the United States during her period of supervision,

10 so that the Court can approve, by signing the signature line

11 on a memorandum that you prepare, that such travel would be

12 authorized.

13        MS. EBRON:  That would be great, Your Honor.

14        THE MAGISTRATE JUDGE:  Thank you very much.  Anything

15 further, Mr. Nickerson?

16        MR. NICKERSON:  No, Your Honor, thank you.

17        THE MAGISTRATE JUDGE:  Mr. Sklamberg?

18        MR. SKLAMBERG:  No, Your Honor.

19        THE MAGISTRATE JUDGE:  Very well, thank you.  Ms.

20 Ebron, anything further on behalf of the Probation Office?

21        MS. EBRON:  No, Your Honor.

22        THE MAGISTRATE JUDGE:  Very well, thank you.  You may

23 all be excused and we will take a very brief recess.

24        (Whereupon, the proceeding concluded.)

13

```
UNITED STATES OF AMERICA      )
                              )      Docket No. 04-0135M-01
DISTRICT OF COLUMBIA          )
```

        I, PAUL R. CUTLER, do hereby certify that a recording of the foregoing proceedings in the above matter was duplicated from an original recording by the Office of the Clerk, United States District Court for the District of Columbia, and that said duplicate recording of the proceedings was transcribed under my direction to typewritten form.

                                        PAUL R. CUTLER

                      - - -

        I, DORIS A. CUTLER, do hereby certify that the foregoing transcript was typed by me and that said transcript is a true record of the recorded proceedings to the best of my ability.

                                          DORIS A. CUTLER

# EXHIBIT 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARIA CANALES and M SQUARED STRATEGIES, INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) Civil Action No: 1:06CV01330 (GK) ) |
| HENRY M. PAULSON, SECRETARY OF THE UNITED STATES DEPARTMENT OF TREASURY, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

### AFFIDAVIT OF MARIA CANALES

I, Maria ("Mayi") Canales, do hereby aver, under penalty of perjury, that the following is true and correct:

1.    My name is Maria ("Mayi") Canales. I am over 18 years of age, and I have personal knowledge of the matters contained herein.

2.    In April 2004, I transitioned from working in the private sector altogether and began working solely with various United States Government agencies.

3.    None of the federal agencies that I have contracted with, including the Departments of Veteran Affairs and Energy as well as the Small Business Administration, has ever had or currently has any issue or problem with my, M Squared, or any of my employees', performance or present responsibility as a government contractor.

4.    If a restraining order and subsequent injunction are not issued to enjoin the Government from enforcing the debarment of M Squared and me, M Squared and I will suffer irreparable harm, as my current contracts with the DVA and the DOE will be canceled or

transitioned to other contractors due to the debarment, effectively destroying my reputation and M Squared.

5.     If the Government is not enjoined from enforcing the debarment, within a matter of days (by no later than mid-August), DVA and DOE will then begin to transition the work from these contracts to another contractor, and the DOE I-Manage contract, will begin to transition within a matter of weeks (by no later than September).

6.     If I lose my three remaining contracts with government, M Squared will be destroyed and go out of business.

7.     The three government contracts that I will lose and the one I lost on July 31, 2006 represent the sum total of my business.

I attest to the truth of these statements and will so testify if called upon.

Date: 8-2-06                              _Maria Elsa Canales_
                                          Maria ("Mayi") Canales

Sworn to and Subscribed
Before me this 2nd
Day of August , 2006.

_Notary Public_
65383,1:230133:00420

NOTARY PUBLIC-STATE OF FLORIDA
Margarita Dilernia Meza
Commission # DD469422
Expires:   SEP 07, 2009
Bonded Thru Atlantic Bonding Co., Inc.

# EXHIBIT 5











# Semiannual Report To The Congress



October 1, 2003 – March 31, 2004

# Office of Inspector General

DEPARTMENT OF THE TREASURY



### Senior Computer Specialist Pleads Guilty to Child Pornography Charge



As reported in the previous period, an OIG investigation established that a former FMS Senior Computer Specialist used his government computer to collect child pornography. Forensic analysis revealed the presence of over 1,100 images of child pornography on the computer. The Senior Computer Specialist was terminated and pled guilty to one count of Possession of Child Pornography (18 USC 2252 A) and will be sentenced later this year. The subject faces 15 years imprisonment.

### Former Acting Treasury CIO Debarred for Life for Making False Statements

A complaint filed with Treasury OIG alleged, as part of or in exchange for a $5.8 million contract for cyber-security related software and consulting services, Treasury's former Acting CIO directed the contractor to place a $1.5 million subcontract with a company owned by a friend of the CIO. Our investigation revealed that, in return, the CIO received various gratuities including jewelry and use of a time-share rental property located in the Bahamas. The former CIO agreed to plead guilty to making False Statements in Official Certificates or Writings (18 USC 1018) and to be debarred from doing business with the federal government for life.



### Mint Account Technician Pleads Guilty to Submitting False Travel Documentation

In October 2002, the Treasury OIG responded to a complaint alleging that a former Mint Account Technician stole money by creating and submitting fraudulent travel vouchers to the bureau. Our investigation showed that the subject opened 5 bank accounts, using various fictitious names, then created, altered, and submitted 57 sets of travel documentation which resulted in unauthorized Electronic Fund Transfer payments totaling $153,000 to personal bank accounts. The Account Technician has since pled guilty to making False Statements (18 USC 1001) and is scheduled to be sentenced on June 14, 2004. We will be issuing a Management Implication Report to the Mint about internal control weaknesses that enabled the fraudulent travel vouchers to be paid so that management can take corrective action.

# EXHIBIT 6











# Semiannual Report To The Congress



April 1, 2004 – September 30, 2004

# Office of Inspector General

Department of the Treasury



*Significant Investigations*

## Senior Computer Specialist Pleads Guilty to Child Pornography Charge

Following our last report (March 2004, p. 15), the USAO-DC announced in July 2004 that Dennis Beheiter, a former FMS Senior Computer Specialist, was sentenced for the one count of possession of child pornography (18 U.S.C. § 2252) to which he previously pled guilty. The United States District Court imposed 27 months imprisonment and 3 years probation. Our investigation established that Beheiter used his government computer to download and collect child pornography. Forensic analysis revealed over 1,100 images of child pornography had been stored on his personal computer. He was terminated as an FMS employee losing 26 years vested towards federal retirement.

## Former Acting Treasury CIO Sentenced for Making False Statement and Debarred

In our March 2004 report (p. 15), we reported Treasury's former acting Chief Information Officer (CIO), Maya Canales, directed a consulting firm under contract with the Department to secure a $1.5 million subcontract with a company owned by the CIO's friend, as part of (or in exchange for), a $5.8 million contract that Treasury awarded to the consulting firm. The investigation revealed the acting CIO accepted various gratuities including jewelry and the use of a time-share rental property.

The former acting CIO pled guilty to making false statements in official certificates or writings (18 U.S.C. § 1018) and has been debarred for life from doing business with the federal government. In July 2004, the former acting CIO was sentenced in United States District Court to 1 year probation, fined $2,500, and ordered to perform 25 hours of community service.

## U.S. Mint Account Technician Sentenced for Submitting False Travel Vouchers

As we reported previously (March 2004, p. 15), former Mint Account Technician, Shani Black, embezzled government funds by creating and submitting fraudulent travel vouchers. The investigation revealed that Black opened 5 bank accounts using various fictitious names. Further, she created, altered, and submitted 57 travel vouchers resulting in the unauthorized payment of $153,000 by means of Electronic Fund Transfers to the aforementioned bank accounts.

As a result of the investigation, Black pled guilty to making false statements (18 U.S.C. § 1001). In August 2004, she was sentenced to 12 months home detention/electronic monitoring, 5 years probation, and ordered to pay restitution of $153,471. We issued a Management Implication Report to the Mint in connection with our investigation to assist the bureau with addressing control weaknesses so as to prevent future submissions of false or fraudulent travel vouchers.

# EXHIBIT 7



# DEPARTMENT OF THE TREASURY
### WASHINGTON, *D.C.* 20220

June 27, 2006

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Maria (Mayi) Canales
7007 Clinton Ct
Annapolis, MD 21403

I have determined to impose debarment on you, Maria Canales, thereby prohibiting you from participating in United States Government procurement requirements. (Reference is made to our Notice of Proposed Debarment dated November 29, 2005). This debarment is effective for three years, commencing with an effective date of June 27, 2006.

Your conviction of a criminal offense is a cause for debarment under FAR 9.406-2(a)(5): [a conviction for] "Commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor."

Further, causes for debarment also include: "[A] conviction … for (1) Commission of fraud or a criminal offense in connection with – (i) obtaining, (ii) attempting to obtain; or (iii) performing a public contract or subcontract." [FAR 9.406-2(a)(1)]   You were convicted of violating U.S.C. §1018, making a false writing in connection with an on-going procurement. As a result, I conclude that this conviction meets the minimum requirements of this section to constitute a cause for debarment.

In your response to the notice of proposed debarment you (through counsel) correctly point out that the purpose of debarment is to protect the Government, not to punish. You then argue that your conduct here, which led to your guilty plea and conviction, was not so serious as to support debarment as an appropriate action. You **further** aver that your "spotless" record prior to this offense and business record since militate against imposition of debarment. I do not agree. Given the facts and nature of your offense debarment is the appropriate course of action.

The debarment also applies to your place of employment in the event you are employed as a "principal" as defined by the certification requirements under FAR 52.209-5(a)(2). This FAR section states: "Principals, for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager, plant manager, head of a subsidiary, division, or business segment, and similar positions)." Since you have represented in your response to the notice of proposed debarment that you are the sole stockholder and Chief Executive Officer of M Squared Strategies, Inc., a technology consulting firm, the debarment extends to that firm as well.

This debarment is effective throughout the executive branch of the Government. Federal agencies will not solicit offers from, or award contracts to, contractors who have been proposed for debarment or debarred. Also, federal agencies will not renew or extend existing contracts with, or consent to subcontracts with, a contractor proposed for debarment or debarred. Lastly, contractors proposed for debarment or debarred are excluded from conducting business with the Government as representatives or agents of other contractors.

Sincerely,

Thomas A. Sharpe, Jr.
Debarring Official
Director, Office of the Procurement Executive