IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
MARIA CANALES and M SQUARED )
STRATEGIES, INC., )
)
Plaintiffs, )
)
v. )  Civil Action No: 1:06CV01330 (GK)
)
HENRY M. PAULSON, )
SECRETARY OF THE UNITED STATES )
DEPARTMENT OF TREASURY *et al*., )
)
Defendants. )
_____)

**PLAINTIFF M SQUARED STRATEGIES, INC.'S APPLICATION
FOR TEMPORARY RESTRAINING ORDER AND SUPPLEMENT
TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**[1]

COMES NOW Plaintiff M SQUARED STRATEGIES, INC. ("M Squared"), by and through its undersigned counsel, and submits, pursuant to Fed. R. Civ. P. 65(b) and LCvR 65.1(a), this Application for Temporary Restraining Order (this "Application") for this Court to issue an order temporarily restraining the Defendants and any other agency or individual acting on behalf of the United States Government (the "Government") from enforcing the debarment notice issued by the United States Department of the Treasury ("Treasury") to M Squared until this Court rules on Plaintiffs' pending Application for Preliminary Injunction. In support thereof, M Squared incorporates and supplements the Application for PI and states as follows:[2]

---

[1] On August 9, 2006, M Squared and Plaintiff Maria Canales ("Canales" or "Ms. Canales") filed Plaintiffs' Application for Preliminary Injunction (the Application for PI") [Dkt. No. 7].

[2] On July 28, 2006, M Squared and Canales filed with this Court a Motion for Temporary Restraining Order and Preliminary Injunction (the "Original Motion"), which was denied on that same date. To avoid any misapprehension that this is a request for reconsideration of the Original Motion, M Squared submits this Application in order to preserve the status quo until the Court can rule on the pending Application for PI and the jurisdiction of this Court to grant

- 1 -

## I.     INTRODUCTION

This Application is based on Treasury's June 27, 2006 debarment of M Squared. The debarment of M Squared is void *ab initio*, because it is based solely on an imputation theory, *i.e.*, that the actions of M Squared's principal should be imputed to M Squared. However, such a theory for debarment of a contractor is expressly prohibited by the applicable FAR regulation, 9.406-5 ("Scope of debarment"). Should the Government be permitted to enforce the patently invalid debarment of M Squared, M Squared will suffer irreparable harm to its business by the loss of all of its contracts and employees; it will be destroyed and will cease to exist.

## II.     BACKGROUND FACTS[3]

In April 2004, Ms. Canales plead guilty to the misdemeanor of making a false statement in violation of 18 U.S.C. §1810. (*See* the Application for PI at pp. 2-3). The false statement to which Ms. Canales plead guilty was made in June 2002 while she was an employee at Treasury. (*See id.* at pp. 2-3). Ms. Canales left Treasury in October 2002, started M Squared in 2003 and initially contracted solely with the private sector companies. (*See id.* at p. 3). It was not until 2004; almost two years after Ms. Canales made her false statement, that M Squared obtained its first Government contract. (*See id.* at p. 4). Over one year later, in November 2005, Treasury, through a letter from Defendant Sharpe to Ms. Canales, advised Ms. Canales that it was initiating

---

effective relief to M Squared. *See, e.g.*, *Hospital Resource Personnel, Inc. v. United States*, 860 F. Supp. 1554, 1556 (S.D. Ga. 1994) (granting temporary restraining order to preserve status quo until hearing on preliminary or permanent injunction). Additionally, M Squared has a different position from that which Ms. Canales and M Squared jointly maintained in the Original Motion. In M Squared's view, its separate position argued herein compels the issuance of a Temporary Restraining Order, and because of the exigency of the circumstances for M Squared specifically, it submits this Application apart from the Original Motion, which was filed jointly with Ms. Canales.

[3]     As the Court is familiar with the background facts based on previous filings submitted by M Squared, this section contains only a brief recitation of the pertinent facts.

debarment proceedings against Ms. Canales and that those debarment proceedings may apply to Ms. Canales' place of employment.  (*See id.* at p. 7).

On June 27, 2006, four years after Ms. Canales made her false statement, Treasury sent a debarment notice to Canales (the "Canales Debarment Notice") and to M Squared (the "M Squared Debarment Notice").  (*See id.*).  In the M Squared Debarment Notice, Defendant Sharpe referred M Squared to the Canales Debarment Notice as the sole "supporting evidence and grounds for [M Squared's] debarment."  (*See id.*)

As a result of its debarment, M Squared has already suffered irreparable harm to its business.  For example, M Squared had a sub-contract with RS Information Systems, Inc. (the "RSIS sub-contract"), which has now been cancelled solely as a result of M Squared's debarment.  (*See* Supplemental Declaration of Maria Canales ("Canales Supp. Decl.") at ¶ 3; a copy of Canales Supp. Decl. is attached hereto as Exhibit 1).  Because the RSIS sub-contract has now been terminated, M Squared is unable to perform work under a task order (issued under the RSIS sub-contract). (*See id.* at ¶¶ 4).  Moreover, M Squared had a subcontract with HPTi in the United States Department of Veterans Affairs (the "DVA") for three and a half people, which was terminated on July 31, 2006, solely as a result of the debarment of M Squared.  (*See* the Application for PI at p. 8).

Unless the Government is restrained from enforcing the debarment of M Squared during the pendency of this Court's consideration of the Application for PI filed on August 9, 2006, M Squared will continue to suffer irreparable harm to its business, as follows:

    A.    M Squared currently has a prime contract with the DVA for nine people.  (*Id.*) This contract is funded through September 30, 2006, but M Squared has to inform the DVA by mid-August if the debarment has been resolved or enjoined.  (*Id.*)  Because the debarment

against M Squared has not been resolved or enjoined to date, unless a Temporary Restraining Order is issued pending the resolution of the Application for PI, the DVA will transition the work from this contract to another contractor. (*Id.*)

      B.     M Squared currently has a prime contract with the United States Department of Energy (the "DOE") IOA&T for two people. (*Id.*) This contract is funded through September 30, 2006 and the DOE informed M Squared on Friday, August 18, 2006 that, if the debarment against M Squared is lifted, or the Government is enjoined from enforcing the debarment against M Squared, the DOE will exercise its option to retain M Squared under the DOE IOA&T contract for another year. (Canales Supp. Decl. at ¶ 6). M Squared must inform the DOE by September 1 or 2, 2006 if the debarment is to be lifted or otherwise enjoined. (*Id.* at ¶ 7). Unless a Temporary Restraining Order is issued pending the resolution of the Application for PI or the Court resolves the Application for PI prior to September 1 or 2, 2006, the DOE will transition the work from this contract to another contractor. (*Id.*)

      C.     M Squared currently has a prime contract with the DOE I-Manage for two people. (*See* the Application for PI at p. 8) This contract is funded through November 15, 2006, but M Squared has to inform the DOE by September if the debarment has been resolved or enjoined. (*Id.*) Because the debarment against M Squared has not been resolved or enjoined to date, unless a Temporary Restraining Order is issued pending the resolution of the Application for PI, the DVA will transition the work from this contract to another contractor in September 2006. (*Id.*)

If M Squared loses these contracts, M Squared will be destroyed and go out of business. (*Id.* at p. 9, Canales Supp. Decl. at ¶ 7-8). The Government agencies with which M Squared has contracts will not suffer any harm (much less, substantial harm) if the Government is restrained from enforcing the debarment against M Squared. (*See* the Application for PI at p. 9). Rather,

those agencies will benefit from such an order because it will save them the time, expense, and loss of resources from the work disruption that will ensue in finding a new contractor to perform the same work that M Squared is currently performing satisfactorily. (*Id.*)

### III.  STANDARD OF REVIEW

In deciding whether to grant a temporary restraining order, the Court must consider four factors: (1) whether Plaintiffs will suffer irreparable injury in the absence of an injunction; (2) whether there is a substantial likelihood of success that the Plaintiffs will succeed on the merits of their claims; (3) whether an injunction would be in the public interest, or at least not be adverse to public interest; and (4) the harm to Defendants. *See Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1989); *Washington Metro Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir 1977); *Milk Indus. Found. v. Glickman*, 949 F. Supp. 882 888 (D.D.C. 1996).

M Squared ultimately need not prevail on each of these factors. *See Holiday Tours,* 559 F.2d at 843-45. Indeed, "[i]f the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995). Thus, this court may grant injunctive relief where Plaintiffs can show a "high probability of success and some injury, or vice versa." *Cuomo v. United States Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).

### IV.  ARGUMENT

M Squared meets all four factors for determining whether a temporary restraining order should be granted. Indeed, the debarment of M Squared is void as a matter of law and this Court should restrain the Defendants and the Government from enforcing the unlawful debarment of M Squared until this Court rules on the Application for PI.

**A.    BECAUSE THE DEBARMENT OF M SQUARED IS VOID AS A MATTER OF LAW, THERE IS A SUBSTANTIAL LIKELIHOOD OF SUCCESS THAT M SQUARED WILL SUCCEED ON THE MERITS OF ITS CLAIMS**.

The Administrative Procedure Act (the "APA") establishes relatively high standards for a Court to reject an agency's decision to debar; the decision to debar must be "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law" in order for a court to reject the decision. *See* 5 U.S.C. § 706(2)(A). The debarment of M Squared easily meets this standard as there is simply no rational basis or any evidence to support such a debarment. *See Caiola v. Carroll*, 851 F.2d 395, 398 (D.C. Cir. 1988) (explaining that the court's role is to review the whole administrative record to determine whether there was a rational basis for the agency's action). Consequently, there is a substantial likelihood of success that M Squared will succeed on the merits of its claim that the debarment of M Squared is invalid, as its debarment is "arbitrary, capricious, an abuse of discretion and not in accordance with law."

The *sole* ground cited by Defendant Sharpe as support for Treasury's debarment of M Squared is the debarment of Ms. Canales. (*See* the M Squared Debarment Notice, which is attached as Exhibit F to Canales Decl., which is attached as Exhibit 2 to the Application for PI). According to Defendant Sharpe in the Canales Debarment Notice, because Ms. Canales is currently a "principal" in M Squared, as defined by FAR 52.209-5(a)(2), and because Ms. Canales plead guilty to the misdemeanor of making a false written statement in violation of 18 U.S.C. § 1018, M Squared is automatically debarred from contracting with the Government. (*See id.*) As a matter of law, the debarment of M Squared is therefore contrary to the FAR regulations and void on its face.

Debarment of M Squared on such an imputation theory is clearly improper. FAR 9.406-5(a) (Scope of debarment), provides that:

> [t]he fraudulent, criminal, or other seriously improper conduct of any officer, director, shareholder, partner, employee, or other individual associated with a contractor may be imputed to the contractor when the *conduct occurred in connection with the individual's performance of duties for or on behalf of the contractor*, or with the contractor's knowledge, approval, or acquiescence.

(emphasis added). Accordingly, a present contractor may not be debarred based on past misconduct of a principal that occurred outside of the principal's employment with the contractor.

It is undisputed that the conduct underlying Canales' misdemeanor conviction did not occur in connection with Canales' performance of duties for or on behalf of M Squared. The conduct occurred when Ms. Canales was an employee of Treasury, not M Squared. (*See* the Application for PI at pp. 2-3). Indeed, M Squared was not even in business, and had never obtained or performed any contracts with the Government, at the time Canales made the false written statement in June 2002. (*See id.* at p. 3). Accordingly, the debarment of M Squared by imputation is clearly contrary to law and must be void.[4]

Moreover, there is nothing in the FAR provision cited by Defendant Sharpe in the Canales Debarment Notice that provides any basis for Treasury to debar M Squared as a result of Ms. Canales' debarment. Rather, the section of FAR cited by Defendant Sharpe in the Canales Debarment Notice, 52.209-5(a)(2), merely provides the definition of "principal" for the purposes

---

[4] Even "past misdeeds" by an agent of the contractor while employed by the contractor at the time of the "misdeeds" is not grounds by itself for debarment if the contractor is "presently responsible." *See Robinson v. Cheney*, 876 F.2d 152, 159-160 (D.C. Cir. 1989) (stating that "the Government must be able to fulfill its statutory duty of dealing only with responsible contractors…," but that a contractor with an agent who has performed "past misdeeds" may still be able to show that it is presently responsible because "the ultimate inquiry as to 'present responsibility' relates directly to the contractor itself, *not the agent or former agent personally responsible for its past misdeeds*") (emphasis added). In this case, however, the "past misdeeds" did *not* occur while Ms. Canales was employed by M Squared.

of certifications in solicitations where a contract value is expected to exceed a particular dollar amount.[5]  There is simply no mention of debarment or cause for debarment in FAR 52.209-5(a)(2), and Treasury has no basis in law for debarring M Squared.

In fact, M Squared has properly completed its certifications required by FAR 52.209-5(a)(2) by disclosing Ms. Canales' misdemeanor conviction, and, notwithstanding such disclosure, the DVA and the DOE, among other Government agencies, have awarded M Squared contracts that M Squared is currently fulfilling.  (*See* the Application for PI at p. 8).

Since there is no basis in law for debarring M Squared, the only explanations that M Squared can find for its debarment are that Treasury wants to penalize M Squared for its affiliation with Ms. Canales, or that Treasury wants to retroactively "repair" or cover-up Treasury's OIG's false statements, which it twice published to Congress in semi-annual reports, stating that, among other untruths, Ms. Canales had been debarred for life for procurement fraud in connection with a $5.8 Million contract.  Such explanations, however, are clearly contrary to the underlying principles of debarment.  "The serious nature of debarment and suspension requires that these sanctions be imposed only in the public interest for the Government's protection and *not for the purposes of punishment*."  FAR 9.402(b) (emphasis added).  It goes without saying that disclosing official misdeeds by government officials is not a permissible basis for debarment.

Indeed, such actions by Treasury must be what Congress wanted the courts to protect against when it passed the APA, because, to debar M Squared based on Treasury's vendetta against Ms. Canales (which, in and of itself, is wrongful) is, at a minimum, a capricious act and

---

[5]     FAR 52.209-5(a)(2) provides, "'Principals,' for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (*e.g.,* general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions).

contrary to law. Thus, even under the heightened standards expressed in the APA regarding judicial review of an agency's decision to debar a contractor, Treasury's decision to debar M Squared must be rejected and enjoined.

> **B. M SQUARED WILL SUFFER IRREPARABLE HARM IF THE DEFENDANTS AND THE GOVERNMENT ARE PERMITTED TO ENFORCE THE UNLAWFUL DEBARMENT OF M SQUARED BEFORE THE COURT RULES ON THE APPLICATION FOR PI.**

To demonstrate irreparable harm, a plaintiff must show that the harm it faces is imminent and certain, rather than remote and speculative. *Trudeau v. Fed. Trade Comm'n*, 384 F. Supp. 2d 281, 297 (D.D.C. 2005); *see also Wisconsin Gas Co. v. FERC,* 244 U.S. App. D.C. 349, 758 F.2d 669, 674 (D.C. Cir. 1985) ("the injury must be both certain and great; it must be actual and not theoretical"). Purely financial harm that can be recovered after a full trial on the merits is not "irreparable" – the harm must be one for which there is no other adequate remedy at law. *Id.* Economic harm rises to the level of irreparable harm where it threatens the "very existence of [plaintiffs'] business." *Patriot Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 963 F. Supp. 1, 5 (D.D.C. 1997).

In the instant case, there is no speculation involved and the damages suffered by M Squared are anything but remote – they are occurring presently. M Squared will lose its only remaining contracts if the Defendants and the Government are not restrained from enforcing the debarment against M Squared. (*See* the Application for PI at p. 8). If the Defendants and the Government are not so restrained, because M Squared has no other business than its current government contracts, M Squared will be forced to terminate all of its employees, close its offices, and cease to exist. (*Id.* at p. 9).

In *Patriot*, this Court found that unless it granted an injunction, the plaintiffs would be barred from the reverse mortgage market. *Patriot*, 963 F. Supp. at 5. Notably, in *Patriot*, this

Court determined that the plaintiffs would suffer irreparable harm even though the plaintiffs could find business in other markets within the mortgage industry. *See id.* This Court still found that, because the plaintiffs would be barred from one particular market in an entire industry, they would suffer irreparable harm. *See id.* Similarly, without its current contracts and if its wrongful debarment is enforced, M Squared will be destroyed. (*See* the Application for PI at p. 9). M Squared simply has no business other than its government contracts. (*Id.*)

      **C.**    **TO RESTRAIN THE DEFENDANTS AND THE GOVERNMENT FROM ENFORCING THE UNLAWFUL DEBARMENT OF M SQUARED UNTIL THE COURT RULES ON THE APPLICATION FOR PI IS IN THE PUBLIC INTEREST**.

Not only will it cost two federal agencies time and resources to transition M Squared's contracts to other contractors, but for the reasons stated above, the Government has a compelling interest in ensuring that when debarments issue, they issue to debar unscrupulous contractors for criminal or dishonest conduct relating to government contracts or procurement and not to punish an agency's former employee. *See* FAR 9.402(b); *Robinson*, 876 F.2d at 160. Thus, the public interest is served by issuing a restraining order against the Defendants and the Government to restrain them from enforcing the debarment against M Squared until the court decides the Application for PI.

      **D.**    **THERE IS NO HARM TO THE DEFENDANTS OR TO THE GOVERNMENT IF THEY ARE RESTRAINED FROM ENFORCING THE DEBARMENT OF M SQUARED UNTIL THE COURT RULES ON THE APPLICATION FOR PI, AND SUCH A TEMPORARY RESTRAINT IS IN THE PUBLIC INTEREST**.

There is no harm to the Defendants or the Government if an injunction is issued, because the Government agencies currently contracting with M Squared will avoid a disruption in services with which they have no desire to change. Indeed, these agencies will be harmed if a Temporary Restraining Order is not issued, as those agencies will have to expend additional time

and resources in order to address needs that are currently being met by M Squared.  Moreover, the Government agencies currently contracting with M Squared (unlike Treasury, with which M Squared has never contracted) have done so with the knowledge of Canales' misdemeanor conviction and nevertheless decided that they would not be harmed by awarding government contracts to M Squared and that M Squared is currently a responsible contractor.  (*See* the Application for PI at pp. 4-5).

Based on the forgoing, this Court should restrain the Defendants and the Government from enforcing the debarment of M Squared until the court rules on the Application for PI.  *See, e.g.*, *Hospital Resource Personnel, Inc. v. United States*, 860 F. Supp. 1554, 1556 (S.D. Ga. 1994) (granting temporary restraining order to preserve status quo until hearing on preliminary or permanent injunction).  Treasury issued its debarment of M Squared improperly, without a valid legal basis, thereby making it arbitrary, capricious, contrary to law, and void *ab initio*.  As such, there is a substantial likelihood that M Squared will succeed on the merits of the litigation. It is also clear that M Squared will suffer irreparable injury if no restraining order is issued, as it will go out of business and cease to exist.

M Squared also meets the final two prongs of the test to determine whether a restraining order should be issued because it is in the public interest to ensure that debarment is not used to penalize contractors (particularly where there is clearly misconduct by Government officials, *e.g.*, making false reports to Congress regarding a principal in M Squared) and the Government will not suffer any harm if the injunctive relief is granted.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that this Court:

1. Grant M Squared Strategies, Inc's Application for Temporary Restraining Order restraining the Defendants and the Government from enforcing Treasury's June 27, 2006

debarment notice to M Squared Strategies, Inc. until the court rules on the August 9, 2006 Application for PI.;

    2.    Restrain the Government from enforcing the debarment of M Squared Strategies, Inc. until the court rules on the August 9, 2006 Application for PI.;

    3.    Award M Squared Strategies, Inc. its reasonable attorney's fees and costs expended herein;

    4.    Grant such other and further relief as this Honorable Court deems just and proper.

DATED: August 21, 2006.              Respectfully submitted,

/s/ Steven D. Cundra
By: One of their attorneys
Steven D. Cundra, D.C. Bar No. 374074
Amy Epstein Gluck, D.C. Bar No. 453525
Nicholas M. Beizer, D.C. Bar No. 485894
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
(202) 973-1212 (fax)
Attorneys for M Squared Strategies, Inc.

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 21st day of August, 2006, a copy of the foregoing document was served, via the Court's CM/ECF system, upon:

        JOHN C. TRUONG
        Assistant United States Attorney
        555 4th Street, N.W.
        Room E-4206
        Washington, D.C.  20530
        e-mail: John.Truong@usdoj.gov
        Attorney for Defendants

        /s/ Steven D. Cundra
        Steven D. Cundra

65873.1:230133:00420