### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARIA CANALES,  ET AL., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civ. No. 06-1330 (GK) |
| v. | ) | ECF |
| | ) | |
| HENRY M. PAULSON, SECRETARY, | ) | |
| DEPT. OF TREASURY, ET AL. | ) | |
| Defendants. | ) | |
| _____ | ) | |

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS'  APPLICATION FOR PRELIMINARY INJUNCTION [DKT. NO. 7] AND MOTION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 18]

Pursuant to Fed. R. Civ. 56 and 65(a)(2), Defendants hereby move for summary

judgment and oppose Plaintiffs' Application for a Preliminary Injunction and *second* Motion for

a Restraining Order.  Defendants refer the Court to the attached Memorandum of Points and

Authorities in Support thereof, Defendants' Statement of Material Facts Not in Genuine Dispute,

and the accompanying affidavits.


Dated: August 23, 2006.                    Respectfully Submitted,


                                   ___/s/___Kenneth L. Wainstein_____
                                   KENNETH L. WAINSTEIN, D.C. BAR #451058
                                   United States Attorney


                                   ___/s/___Rudolph Contreras_____
                                   RUDOLPH CONTRERAS, D.C. BAR #434122
                                   Assistant United States Attorney

1

_____/s/   John C. Truong_____
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARIA CANALES,  ET AL., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civ. No. 06-1330 (GK) |
| v. | ) | ECF |
| | ) | |
| HENRY M. PAULSON, SECRETARY, | ) | |
| DEPT. OF TREASURY, ET AL. | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS'
APPLICATION FOR PRELIMINARY INJUNCTION [DKT. NO. 7] AND MOTION FOR
A TEMPORARY RESTRAINING ORDER [DKT. NO. 18]**

**I.    Introduction.**

Plaintiffs, Maria Canales and her company, M Squared Strategies Inc., file this lawsuit

under the Administrative Procedure Act seeking to set aside the Debarring Official's decision to

debar them from participating in federal government procurement programs.  Therefore, the

narrow issue for the Court to decide in this case is whether the Debarring Official acted

arbitrarily and capriciously when he (1) debarred Ms. Canales because she pled guilty to making

a false writing in violation of 18 U.S.C. § 1018; and (2) debarred M Squared Strategies, Inc.,

because it is the alter ego of Ms. Canales (*i.e.*, Ms. Canales is the sole stockholder and Chief

Executive Officer of M Squared).

Presently before the Court is Plaintiffs' Application for Preliminary Injunction and

*second* Motion for a Temporary Restraining Order, which seek to enjoin Defendants from

enforcing the debarment notices.  However, as Judge Friedman has held in denying Plaintiffs'

*first* Motion for a Temporary Restraining Order, Plaintiffs can neither demonstrate that they will

succeed on the merits of their claim nor show irreparable harm absent an injunction.  See Canales v. Paulson, No. 06-1330, slip op. (July 28, 2006 D.D.C.).  Nothing has changed since Judge Friedman's ruling on July 28, 2006, to warrant a different result here.

Finally, since Plaintiffs cannot show that they will succeed on the merits, the Court should grant summary judgment in Defendants' favor because the Debarring Official did not act arbitrarily and capriciously when he debarred Ms. Canales and M Squared Strategies from participating in federal procurement programs.  Accordingly, the Court should dismiss the case with prejudice.

## II.    Background.

### A.    Factual Background

Plaintiff Maria Canales worked for the U.S. Department of the Treasury from June 1999 to October 2002.  See Administrative Record ("A.R.") at CAN00107; Affidavit of Ms. Maria Canales ("Canales Decl.") at ¶ 6-7.[1]  She began her career at the Treasury Department as Director of Business Practices for the Chief Information Officer.  A.R. at CAN00107.  In April 2002, Ms. Canales served as the Acting Chief Information Officer and Acting Deputy Assistant Secretary.  In March 2002, acting on an anonymous tip, the Treasury Department's Office of Inspector General ("OIG") initiated an investigation into Ms. Canales' receipt of certain gifts from a male consultant.  A.R. at CAN00107-108.  At that time, the male consultant represented several companies seeking contracts with the Treasury Department.  A.R. at CAN00108.

In October 2002, Ms. Canales resigned from the Treasury Department.  Canales Decl. at

---

[1]    Ms. Canales has submitted several affidavits since the filing of this lawsuit.  The "Canales Decl." referenced in Defendants' Memorandum was dated and submitted on July 28, 2006.  See Dkt. No. 2 (Pl. Exh. 1).

¶ 6.  In January 2003, Ms. Canales started M Squared Strategies, Inc., a technology consulting services company.  Canales Decl. at ¶ 8.  She is "the sole shareholder of M Squared, owning 100% of the company's interests, and [its] Chief Executive Officer."  Canales Decl. at ¶ 8; A.R. at CAN00107-108.  In its first year of business, M Squared had contracts in the private sector with CACI, Entrust, Cap Gemini, AMS, Tripwire, Ngrain, and Sapeint.  Canales Decl. at ¶ 9.  Moreovever, since 2003 M Squared bid for and received numerous government contracts.  A.R. at CAN00110.

As a result of the OIG's investigation, on April 19, 2004, Ms. Canales pled guilty to one-count of making a false writing in violation of 18 U.S.C. § 1018.  A.R. at CAN00108; Canales Decl. at ¶ 10-11.  The "false writing" was Ms. Canales' statement acknowledging that she only received a vase of little value from the male consultant (A.R. at CAN00108); however, in actuality, she also received emerald chips from that same person.  A.R. at CAN00108.  Soon thereafter, on April 30, 2004, the OIG issued its Semi-Annual Report ("SAR") to Congress, for the period of October 2003 through March 2004, stating that Ms. Canales had agreed to be debarred for life from government procurement programs following her guilty plea.  Declaration of Richard Delmar ("Delmar Decl.") at ¶ 6.  Again, on October 29, 2004, the OIG issued a similar SAR to Congress for the period of April 2004 through September 2004.  Delmar Decl. at ¶ 6.  Subsequently, the OIG discovered that these two SARs to Congress were inaccurate.  Delmar Decl. at ¶ 8-9.  The OIG intends to correct these inaccuracies in its next scheduled SAR.  Delmar Decl. at ¶ 9.

In the meantime, in November 2005, the Senior Procurement Executive – the Debarring Office issued a notice to Ms. Canales proposing to debar her from participating in federal

government procurement contracts.  A.R. at CAN0014-15; Declaration of Thomas Sharpe, Jr. ("Sharpe Decl. ") at ¶ 3.  The notice allowed Ms. Canales 30-days to submit any argument opposing the proposed notice to debar.  A.R. at CAN0014.  In response, through counsel, Ms. Canales sought an extension of time to submit her argument.  A.R. at CAN0001-04. Subsequently, on January 25, 2006, Ms. Canales' counsel submitted a four page letter arguing against debarment. A.R. at CAN00102-106.  Apparently, counsel did not submit any documentation in support of Ms. Canales' position.  As a result, the Debarring Official allowed Ms. Canales' counsel to file another submission, with the appropriate documentation.  A.R. at CAN0005-06.  On March 17, 2006, Ms. Canales' counsel submitted another 6-page letter setting forth both the factual and legal basis against debarment.  A.R. at CAN00107-112.  This time Ms. Canales' counsel submitted supporting documents, including copies of the relevant case law. A.R. at CAN00121-175.

After considering Ms. Canales' submissions and the OIG's Report of Investigation of Ms. Canales' conduct, on June 26, 2006, the Debarring Official issued a notice debarring Ms. Canales from participating in government contract procurement programs.  A.R. at CAN0011-12; Declaration of Thomas Sharpe ("Sharpe Decl.") at ¶4.  The Debarring Official also debarred M Squared as it is Ms. Canales' alter ego.  A.R. at CAN0013; Sharpe Decl. at ¶ 5; Canales Decl. at ¶ 8 (stating that she is the sole stockholder, owning 100% of M Squared).

###    B.    Procedural Background

A month after the debarment and a few days before one of Plaintiffs' contracts would be affected by the debarment, on July 28, 2006, Ms. Canales filed the current lawsuit under the APA seeking to set aside the debarment alleging that the Debarring Official acted arbitrarily and

capriciously.  <u>See generally</u> Complaint.[2]  Concurrent with that Complaint, Ms. Canales also filed

her *first* Motion for Temporary Restraining Order or Preliminary Injunction ("TRO/PI").  Judge

Friedman, acting as the Motions Judge, denied Plaintiffs' *firs*t TRO/PI holding that Plaintiffs

could neither demonstrate irreparable harm nor the likelihood of success on their claim.  <u>Canales</u>

<u>v. Paulson</u>, No. 06-1330, slip op. (July 28, 2006 D.D.C.) ("July 2006 Order").

Several days later, Plaintiffs moved for reconsideration of that denial.  <u>See</u> Dkt. No. 5.

Before Defendants could respond to the Motion for Reconsideration, Plaintiffs again filed their

*second* Application for Preliminary Injunction.  <u>See</u> Dkt. No. 7.  With this new application,

Plaintiffs withdrew their Motion for Reconsideration.  Plaintiffs' *second* Application for

Preliminary Injunction reiterates the arguments set forth in their *first* TRO/PI.  Again, before

Defendants could respond to the second PI application, Plaintiffs filed their *second* TRO.  *See*

Dkt. No. 18.  Ostensibly, Plaintiffs claim that the *second* TRO is filed on behalf of Plaintiff M

Squared only and that Plaintiffs are not seeking reconsideration of Judge Friedman's July 28th

Order.  <u>See</u> Second TRO/PI at p. 1 n.2 (Dkt. No. 18).  Regardless of how Plaintiffs characterize

their argument, the *second* TRO involves identical facts and legal issues to their *first* TRO/PI –

namely the Debarring Official violated the APA for debarring M Squared.[3]  There is no

---

[2]    The Complaint also named two individuals officials (Messrs. Thomas Sharpe and Dennis Schindel) as defendants; however, the Complaint does not appear to seek any relief from these two officials in their personal capacities.  The only proper or  "real" defendant in this APA action is the Treasury Department.  <u>See</u> Fed. R. Civ. P. 17(a) (stating that "[e]very action shall be prosecuted in the name of the real party in interest.").  Therefore, under Fed. R. Civ. P. 12(f), the Court should strike the individual defendants from the Complaint.  <u>See</u> Fed. R. Civ. P. 12(f) (allowing the court to strike from any pleading, *inter alia*, immaterial matters).

[3]    Although the Court allows Defendants until August 25, 2006, to respond to Plaintiffs' *second* TRO (<u>see</u> Aug. 23, 2006 Min. Order), to conserve the parties' resources and advance judicial economy, Defendants will also address Plaintiffs' *second* TRO herein.

additional factual development since Judge Friedman's July 2006 Order denying Plaintiffs' *first* TRO/PI.

**III.     Argument.**

**A.     The OIG's Reports to Congress.**

The Treasury Department's Office of the Inspector General ("OIG") reports to the Secretary of Treasury, through the Deputy Secretary.  Delmar Decl. at ¶ 3.  The OIG's activities are not supervised by another official within the Treasury Department.  Id.  The OIG is required to make Semi-Annual Reports ("SARs") to Congress – issued in April and October of each year – on its work .  Id.

In the SARs for the periods of October 1, 2003, through March 31, 2004, and April 1, 2004, through September 30, 2004, the OIG reported that Ms. Canales was debarred for life from contracting with the federal government following her guilty plea.  Delmar Decl. at ¶ 6.  These statements were inaccurate.  Delmar Decl. at ¶ 8.  The OIG discovered the errors when it was responding to inquiries made via the Freedom of Information Act and the OIG Hotline.  Delmar Decl. at ¶ 8-9 (Delmar Attachments A and B).  In fact, the OIG now admits that it had "erroneously reported that Plaintiff Canales had agreed to be, and then had been debarred for life from contracting with the U.S. Government."  Delmar Decl. at ¶ 9.  At this point, the OIG has not been able to determine the source of these errors.  Delmar Decl. at ¶ 12.[4]  Because of these errors, the OIG intends to correct the two previously incorrect statements and express its regrets for the errors in the next regularly-scheduled SAR (covering the period of April 2006 through

---

[4]     No other employee at OIG, other than Mr. Delmar, contacted the Department regarding its response to the ROI.  Delmar Decl. at ¶ 10 (Attachment C).

September 2006).  Delmar Decl. at ¶ 13.  The OIG also intends to report that Ms. Canales and M Squared have been debarred for a period of three years.  Id.

As shown below, the two SARs played no part in the Debarring Official's decision to debar Plaintiffs from participating in federal government procurement programs.  Sharpe Decl. at ¶ 4-5.  Moreover, the two SARs had no effect on Plaintiffs' ability to procure government contracts.  Specifically, Plaintiffs acknowledged that  "[s]ince 2003, M Squared has bid for and received numerous government contracts."  A.R. at CAN00110.  Plaintiffs' success in procuring government contracts took place during the time periods when the OIG made those two erroneous SARs to Congress.

In any event, to the extent that Plaintiffs seek to recover damages for defamation because of the two SARs, under the law, Plaintiffs' claim is barred by sovereign immunity.  The only basis under which Plaintiffs could seek damages is the Federal Tort Claims Act ("FTCA").  However, the FTCA specifies certain torts for which the statute expressly does not waive the government's sovereign immunity; one of the exceptions is for claims based on "libel [or] slander."  28 U.S.C. § 2680(h).  Courts consistently treat defamation claims as included within the libel and slander exception to the FTCA.  See, e.g., Gardner v. United States, 213 F.3d 735 (D.C. Cir. 2000); Moessmer v. United States, 760 F.2d 236 (8th Cir. 1985); Johnson v. Brady, 1991 U.S. Dist. LEXIS 3840 (D.D.C. 1991).  Therefore, Plaintiffs cannot recover damages under the FTCA as a result of the two SARs.[5]

In short, the two SARs are neither material nor relevant to the underlying issue in this

---

[5]    The FTCA also does not waive sovereign immunity for misrepresentation.  28 U.S.C. § 2680(h).

case. The narrow issue here is whether the Debarring Official acted arbitrarily and capriciously when he debarred Plaintiffs to warrant an injunction. As demonstrated below, he did not.

**B.** **The Debarment: Plaintiffs Have Failed To Satisfy the Standards For Issuance of Injunctive Relief.**

**(1).** **Plaintiffs Bear a Heavy Burden to Justify the Grant of Preliminary Injunctive Relief**

It is well settled that injunctive relief is an extraordinary remedy, and the party seeking it has a substantial burden of proof. American Coastal Line Joint Venture v. United States Lines, Inc., 580 F. Supp. 932, 935 (D.D.C. 1983); see Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C. Cir. 1989); Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958). To be entitled to the extraordinary remedy of injunctive relief, plaintiffs must meet this strict burden by showing that: (1) there is a substantial likelihood of their prevailing on the merits of their claims; (2) a preliminary injunction is necessary to prevent irreparable injury; (3) the threatened injury to the plaintiff outweighs the possible harm to others; and (4) the public interest favors issuance of the injunction. Sea Containers, 890 F.2d at 1208; Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977); Virginia Petroleum, 259 F.2d at 924-25. These factors "interrelate on a sliding scale and must be balanced against each other. 'If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in the other areas are rather weak.'" Serono Laboratories, Inc. v. Shalala, 158 F.3d 1313, 1318 (D.C. Cir. 1999), quoting CifiFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

"The basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir.1985).

To constitute irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical."  Id.  The burden is particularly difficult to meet in the procurement context, which is analogous to this debarment case, where the courts consistently hold that agency discretion must be given particular force.  E.g., Sea-Land Serv., Inc. v. Brown, 600 F.2d 429, 434 (3d Cir. 1979); M. Steinthal & Co. v. Seamens, 455 F.2d 1289, 1301, 1304 (D.C. Cir. 1971).

Applying this standard in this case plainly reveals that Plaintiffs are not entitled to preliminary injunctive relief.  Not only have they failed to demonstrate a substantial likelihood of success on the merits, but they have also failed to show the existence of any genuine irreparable harm or that they have no adequate remedy at law.  Consequently, for the reasons outlined below, Plaintiffs' *second* Application for Preliminary Injunction and *second* Motion for Temporary Restraining Order should be denied.

### (2).    Plaintiffs Cannot Demonstrate Likelihood of Success on the Merits.

(a)    Debarment and  the Federal Acquisition Regulations

The Federal Acquisition Regulations (FAR), permit an agency to exercise discretion, for cause, to prohibit a contractor from bidding on government contracts or subcontracts for a period generally not to exceed three years.  48 C.F.R. § 9.402(a) (noting that "debarment and suspension are discretionary actions."); 48 C.F.R. § 9.406-4 (noting that a debarment is not to exceed three years).  This sanction of "debarment" is to be imposed "only in the public interest for the Government's protection and not for purposes of punishment." 48 C.F.R. § 9.402(b).

Under the FAR, an agency may debar a contractor that has been convicted of, or is the subject of a civil judgment for, (1) fraud in connection with obtaining, attempting to obtain, or performing a government contract; (2) a violation of federal or state antitrust law; (3)

embezzlement, theft, bribery, falsification of records, making false statements, or receiving

stolen property; or (4) any other offense that indicates a lack of business integrity that directly

and seriously affects its present responsibility as a government contractor.  48 C.F.R. §

9.406-2(a).  The FAR permits an agency to impute to a contractor the "seriously improper

conduct of any officer, director, shareholder, partner, employee, or other individual associated

with [the] contractor ⋯ when the conduct occurred in connection with the individual's

performance of duties for or on behalf of the contractor, or with the contractor's knowledge,

approval, or acquiescence." 48 C.F.R. § 9.406-5(a).

    An agency proposing debarment must "afford the contractor ⋯ an opportunity to submit,

in person, in writing, or through a representative, information and argument in opposition to the

proposed debarment." 48 C.F.R. § 9.406-3(b).  Otherwise, if the debarment decision is based on

a conviction, the agency may make a decision on the basis of all information in the record,

including any information submitted by the contractor. 48 C.F.R. § 9.406-3(d).

                    (b).    Standard of Review

    Judicial review of The Debarring Official's decision to debar Plaintiffs from participating

in government procurement programs is very limited.  Under the APA, a reviewing court may

"hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law . . ."  5 U.S.C. §

706(2)(A).  This review is "highly deferential," and the Court "must presume the validity of

agency action."  Kisser v. Cisneros, 14 F.3d 615, 618 (D.C. Cir. 1994), citing American Horse

Protection Ass'n, Inc. v. Yeutter, 917 F.2d 594, 596 (D.C. Cir. 1990); see also Bowman Transp.,

Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974) (court's role in determining

10

whether governmental action is arbitrary, capricious, or an abuse of discretion is a narrow one).

The Court may make inquiry only into whether the decision maker considered "relevant factors

and whether there has been a clear error of judgment . . . [however,] the court is not empowered

to substitute its judgment for that of the agency." Citizens to Preserve Overton Park, Inc. v.

Volpe, 401 U.S. 402, 416 (1971) ; see also Kisser, 14 F.3d at 619. If the Court finds a

reasonable basis for the agency's action, the Court must affirm that action even though it might,

as an original proposition, have reached a different conclusion as to the proper administration

and application of the regulation or standard at issue. See Delta Data Sys. Corp. v. Webster, 744

F.2d 197, 204 (D.C. Cir. 1984).

(c)    Evidence Supporting The Debarring Official's Decisions

The evidence in the Administrative Record supports the Debarring Official's two bases to

debar Ms. Canales from participating in federal government contract procurement programs.

First, the Debarring Official noted that Ms. Canales was debarred because of her "conviction of a

criminal offense," which is a cause for debarment under 48 C.F.R. § 9.406-(2)(a). A.R. at

CAN0011. The second basis for debarment was Ms. Canales' violation of 18 U.S.C. § 1018,

making a false writing in connection with an ongoing procurement. A.R. at CAN0011. The

Debarring Official also debarred Plaintiff M Squared, Ms. Canales' company, because she is its

sole stockholder and Chief Executive Officer. A.R. at CAN0012-13; Canales Decl. at ¶ 8.

Plaintiffs now claim that the Debarring Official acted arbitrarily and capriciously when debarring

both Plaintiffs.

As a preliminary issue, Judge Friedman previously denied Plaintiff's *first* Motion for a

Temporary Restraining Order ("TRO"), which advanced the very same arguments asserted in

11

their *second* Application for a Preliminary Injunction and *second* Motion for Restraining Order.

See Canales v. Paulson, No. 06-1330, slip op.  (July 28, 2006 D.D.C) ("July Order").[6]   In

rejecting Plaintiff's *first* Motion for a TRO, Judge Friedman held that,

> Plaintiffs have not established a likelihood of success on the merits of their claim.
> Debarment is a discretionary power lodged exclusively within the executive
> branch.  See 48 C.F.R. § 9.02.  Judicial review of debarment actions is governed
> by the highly deferential standard embodied in the Administrative Procedure Act,
> 5 U.S.C. § 706(2)(a).  Pursuant to that standard, a court may set aside such an
> action only in cases where debarment was "arbitrary, capricious, an abuse of
> discretion, or otherwise not in accordance with law."  Robinson v. Cheney, 876
> F.2d 152, 155 (D.C. Cir. 1989) (quoting Citizens to Preserve Overton Park v.
> Volpe, 401 U.S. 413-16 (1971)).
>
> The Government argues that because Maria Canales pled guilty to making a false
> writing in violation of 18 U.S.C. § 1018, her debarment, and that of Plaintiff M
> Squared Strategies, a corporation she controls, was lawful.  In support of that
> argument, the Government points to 48 C.F.R. § 9.406-2, which states that a
> contractor may be debarred for a "conviction of or civil judgment for," inter alia,
> "making false statements."  See 48 C.F.R. § 9.406-2(a)(3).  Canales' plea appears
> to constitute a legitimate basis for her debarment pursuant to that provision.  On
> the deferential standard of review that the Court is bound to apply here, given the
> governing regulations, the Court cannot find on the evidence before it that the
> Government's action was arbitrary, capricious, an abuse of discretion, or not in
> accordance with law.

July Order at 4-5.  Nothing has changed since Judge Friedman's ruling on July 28, 2006, to

warrant a different result.

In fact, Judge Friedman's ruling is now further bolstered by the Administrative Record in

this case.[7]  The Administrative Record shows that The Debarring Official's decision imposing

the debarment on Ms. Canales and her own company, M Squared, was based on Ms. Canales'

---

[6]      Judge Friedman was the motions judge when Plaintiffs filed their motion for a
TRO on July 28, 2006, and therefore, it fell upon Judge Friedman to decide the motion.

[7]      The Administrative Record was filed on August 15, 2006.  See Dkt. No. 11.

guilty plea, the Report of Investigation, and the information submitted by her attorney.  Sharpe

Decl. at ¶ 4.  Specifically, on November 29, 2005, the Debarring Official issued a notice to Ms.

Canales proposing to debar her from participating in federal procurement activities pursuant to

the Federal Acquisition Regulations.  Sharpe Decl. at ¶ 3; A.R. at CAN0014-15.

In that same notice, the Debarring Official informed Ms. Canales that she had 30 days to

submit "information or argument in opposition to the proposed debarment."  A.R. at CAN0014.

Subsequently, through counsel, Ms. Canales sought an extension of time to submit her

opposition.  A.R. at CAN001.  Ms. Canales then received an extension to January 25, 2006, to

file her opposition.  A.R. at CAN002-4.  Then, on January 25, 2006, her attorney submitted a

four-page letter setting forth the argument against debarment.  A.R. at CAN00102-106.  In that

January 2006 letter, her attorney recited the factual background describing her work at the

Department of the Treasury.  Id.  The letter also discussed the facts that led the OIG to initiate an

investigation into Ms. Canales' receipt of certain gifts from a male consultant, while serving as

the Director of Business Practices for the Chief Information Officer.  Id. at CAN00103.  At that

time, the male consultant represented several information technology companies seeking

contracts with the Treasury Department.  Id.  As a result of this investigation, on April 19, 2004,

Ms. Canales pled guilty to a single count charging her with Making a False Writing in violation

of 18 U.S.C. § 1018.  Id.  The letter also set forth certain legal arguments against debarment.

A.R. at CAN00104-06.[8]

---

[8]    Ms. Canales' January 2006 letter also requested a hearing on her proposed
debarment.  A.R. at CAN00102.  However, the Debarring Official denied this request noting that
"the Federal Acquisition Regulation (FAR) 48 C.F.R.§ 9.406-3(b)(2), provides that agencies
shall provide a contractor a right to appear in person in actions not based upon a conviction or
civil judgment."  A.R. at CAN005.  However, under the FAR, since Ms. Canales' debarment is

Because Ms. Canales' attorney did not submit "documentation supporting [her] position" (A.R. at CAN00102), the Debarring Official gave her attorney another opportunity to submit "[a]ny additional response on behalf of [Ms. Canales], including any supporting documents or material." A.R. at CAN006. In effect, this was another extension of time for Ms. Canales to submit arguments against debarment. Thereafter, on March 17, 2006, Ms. Canales' attorney re-submitted a 6-page letter setting forth both the factual and legal the bases against debarment. A.R. at CAN00107-112 ("March 2006 letter").

Similar to the January 2006 letter, the March 2006 letter traced the background leading up to the OIG's investigation of Ms. Canales' receipt of certain gifts from a male consultant doing business with the Treasury Department. A.R. at CAN00107-108. The March 2006 letter also admitted that Ms. Canales pled guilty to making a false writing in violation of 18 U.S.C. § 1018. Id. at CAN00108. The March 2006 letter then set forth the legal analysis arguing against debarment. A.R. at CAN00110-112. The March 2006 letter also attached several documents, including copies of relevant case law and a transcript of Ms. Canales' sentencing.

The Debarring Official considered the March 2006 letter, the materials provided by Ms. Canales' counsel, and the Report of Investigation in reaching his decision to debar Ms. Canales. Sharpe Decl. at ¶ 4. In fact, the Debarring Official explained that he decided to debar Ms. Canales because of (1) her conviction of a criminal offense that indicates "a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor" (A.R. at CAN0011 citing 48 C.F.R. 9.406-2(a)(5));and

---

based on her conviction (*i.e.*, guilty plea) a hearing was not necessary. See 48 C.F.R.§ 9.406-3(b)(2); A.R. at CAN005.

(2) her violation of 18 U.S.C. § 1018. A.R. at CAN0011. Therefore, as Judge Friedman pointed out, "Canales' plea appears to constitute a legitimate basis for her debarment pursuant to [48 C.F.R. § 9.406-2(a)(3)]." July 2006 Order at 5. Judge Friedman also concluded that "the Court cannot find on the evidence before it that the Government's action was arbitrary, capricious, an abuse of discretion, or not in accordance with law." July 2006 Order at 5. There is no evidence in the record to show the contrary.

With regard to the debarment of M Squared, the basis for that debarment was because Ms. Canales was the sole owner of M Squared. See 48 C.F.R. § 9.406-5 (a). Section 9.406-5(a) provides,

> The fraudulent, criminal, or other seriously improper conduct of any officer, director, shareholder, partner, employee, or other individual associated with a contractor may be imputed to the contractor when the conduct occurred in connection with the individual's performance of duties for or on behalf of the contractor, or with the contractor's knowledge, approval, or acquiescence.

Under this provision, M Squared can be debarred because it is Ms. Canales' alter ego. Id.; see Labdie Coal Co. v. Black, 672 F.2d 92, 97 (D.C. Cir. 1982) (noting that "a corporate form may be ignored whenever an individual so dominates his organization 'as in reality to negate its separate personality.'"). Here, Ms. Canales owns M Squared in its entirety and she is its CEO. Canales Decl. at ¶ 8. She acknowledges that she "is the sole stockholder and Chief Executive Officer." A.R. at CAN00110. Ms. Canales owns 100% of M Squared's interests. Canales Decl. at ¶ 8. Therefore, under the law on alter ego, her knowledge is M Squared's knowledge, and her conduct is M Squared's conduct.

Furthermore, it is equally clear from Ms. Canales' March 2006 letter that she understood that M Squared was equally a party to the debarment action against her because of the impact the

15

debarment would have on M Squared.  A.R. at CAN00109-110.  Specifically, her letter noted

that since leaving the Treasury Department Ms. Canales has formed M Sqaured to provide

technology consulting services.  A.R. at CAN00109.  Ms. Canales' March 2006 letter indicates

that "[since] 2003, M Squared has bid for and received numerous government contracts."  A.R.

at CAN00110.  As of March 2006, it has "approximately twenty employees and holds five

contracts with the United States government."  A.R. at CAN00110.  The letter also states that

"[d]uring each and every contract bid process, Ms. Canales has disclosed the fact that she pled

guilty to the misdemeanor."  A.R. at CAN00110.  Under the FAR, these undisputed facts show

that Ms. Canales' guilty plea – because she is its alter ego –  is imputable to M Squared.

　　　　Plaintiffs, however, assert two theories challenging the debarment decision.  First,

Plaintiffs argue that the there is no basis in law to debar both Ms. Canales and M Squared and

that the debarment was a purely penal action.  See Pl. *second* PI Mot. at 16 (Dkt. No. 7); Pl.

*second* TRO at 8 (Dkt. No. 2) (claiming that the decision to debar M Squared was to penalize it).

Second, they argue that the debarment was an attempt to "cover up" the OIG's two incorrect

reports to Congress.  See Pl. *second* PI Mot. at 16 (Dkt. No. 7); Pl. *second* TRO at 8 (Dkt. No.

2). Both  arguments lack merit.

　　　　With regard to the first argument, Plaintiffs raised this same issue with the Debarring

Official in response to his proposal to debar Ms. Canales.  Specifically, the Debarring Official

noted that Ms. Canales was correct in pointing out the "the purpose of the debarment is to protect

the Government, not to punish."  A.R. at CAN0011.  However, the Debarring Official rejected

Plaintiffs' argument that the debarment was to penalize them and concluded that "[g]iven the

facts and nature of your offense debarment is the appropriate course of action."  Id.  It is clear

16

from the Administrative Record that the Debarring Official's decision to debar Ms. Canales was because of her guilty plea.  A.R. at CAN0011-12; Sharpe Decl. at ¶ 4.  He debarred M Square because she is its alter ego.  Sharpe Decl. at ¶ 5.

Plaintiffs' "cover up" argument is equally unavailing because the Debarring Official had no knowledge of the OIG's reports to Congress at the time he made the debarment decision.  Sharpe Decl. at ¶ 6.  Indeed, the incorrect reports that went to Congress occurred in April and October 2004 (see Pl. PI Mot. at 5-6); however, the Debarring Official did not assume his current position until September 2005, almost a year after OIG's last incorrect report went to Congress.  Sharpe Decl. at ¶ 1.  Furthermore, the OIG and the Office of the Procurement Executive are two separate offices.  Id. The Debarring Official, as a Deputy Assistant Secretary of Headquarters Operation and a Senior Procurement Executive, does not report to the OIG.  Id. He reports to the Assistant Secretary for Management and Chief Financial Officer.  Sharpe Decl. at ¶ 1.

The Debarring Official attests that he only considered the Report of Investigation and the documents and arguments submitted by Ms. Canales' attorney in making his decision to debar Plaintiffs.  Sharpe Decl. at ¶ 3- 4.  In fact, the Debarring Official did not become aware of the OIG's two SARs to Congress until after he made and issued the debarment determination in June 2006.  Sharpe Decl. at ¶ 6.  Under these facts, there is no evidence showing that the Debarring Official imposed the debarment to "cover up" the OIG's incorrect reports to Congress.  Without more, "the court is not empowered to substitute its judgment for that of the agency" and set side the Debarring Official's decision.  Citizens to Preserve Overton Park, 401 U.S. at  416.

Finally, citing Robinson v. Cheney, 876 F.2d 152, 159-160 (D.C. Cir. 1989) out of

17

context, Plaintiffs argue that Ms. Canales' past misdeeds while employed by the contractor [i.e., M Squared] at the time of the 'misdeeds' is not grounds by itself for debarment if the contractor is 'presently responsible.'" See Pl. PI Mot. at 11 n.1. In Robinson, the D.C. Circuit noted that "the ultimate inquiry as to 'present responsibility' relates directly to the contractor itself, not to the agent or former agent personally responsible for its past misdeeds. Thus, the contractor can meet the test of present responsibility by demonstrating that it has taken steps to ensure that the wrongful acts will not recur." Id. at 160. The D.C. Circuit noted that a contractor that continued to employ a debarred individual may adopt policies to prevent the employee from "exercising any influence over contracts with the Government, sufficiently negated the possibility that the company would be a future business risk to the Government, and that it could not be debarred for want of present responsibility to be a government contractor." Id. The D.C. Circuit explained that "[a]ffording the contractor this opportunity to overcome a blemished past assures that the agency will impose debarment only in order to protect the Government's proprietary interest and not for the purpose of punishment." Id.

In this case, there is nothing in the record showing that M Squared has taken steps to ensure that Ms. Canales would not commit the misdeeds that led to her investigation and ultimately her conviction. Indeed, M Squared could not have taken any steps because Ms. Canales, as its sole stockholder and CEO, is M Squared's alter ego. Therefore, under the FAR and Robinson, the Debarring Official properly imputed Ms. Canales' conduct to M Squared and properly debarred M Squared from participating in government procurement contracts.

### (3) Plaintiffs Cannot Establish Irreparable Harm.

Plaintiffs have not shown that they will suffer irreparable harm absent injunctive relief.

18

To be entitled to the extraordinary relief of reversing Plaintiffs' debarment during the pendency of this lawsuit, Plaintiffs must demonstrate that they are being irreparably harmed. Beacon Theatres v. Westover, 359 U.S. 500, 506-07 (1959); see also Rondeau v. Mosinee Paper Corp., 422 U.S. 49 (1975).

Plaintiffs assert that the harm is two-fold. First, they claim that M Squared will suffer irreparable harm because it will lose all of its remaining government contracts. See Pl. *second* PI Mot. at 12-13; Pl. *second* TRO at 9-10. However, as a matter of law, monetary loss is not irreparable harm unless it threatens the very existence of the plaintiff's business. The law is well settled that "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." Sampson v. Murray, 415 U.S. 61, 90 (1974). "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." Wisconsin, 758 F.2d at 674; see also Vencor Nursing L.P. v. Shalala, 63 F. Supp. 2d 1 (D.D.C. 1999) (monetary loss alone accorded little or no weight in analyzing irreparable harm); Nichols v. A.I.D., 18 F. Supp. 2d. 1 (D.D.C. 1998) (loss of job and salary without more insufficient to demonstrate entitlement to injunctive relief).

Citing Patriot v. HUD, 963 F. Supp. 1, 5 (D.D.C. 1997), Plaintiffs further argue that M Squared would suffer irreparable harm because it would go out of business with the loss of the remaining government contracts because it will be forced to terminate its employees and close its offices. See Pl. *second* PI Mot. at 12; Pl. *second* TRO at 9-10. Plaintiffs' reliance on Patriot is misplaced. In that case, the court held that the economic harm flowing from the agency's challenged action was irreparable because it threatened the "very existence of plaintiff's business." Patriot, 963 F. Supp. at 6. Patriot was barred from the reverse mortgage market. The

19

court also noted that "[a]ny senior citizen who does not wish to continue its relationship with Patriot may simply terminate the relationship because Patriot's service fee agreements are terminable by the client at any time prior to the client receiving funds from a reverse mortgage loan." Id. Unlike the senior citizens in Patriot, the federal taxpayers whose funds are used to pay for the federal contracts serviced by M Squared would not have the luxury of discontinuing doing business with M Squared.

Furthermore, nothing in the record shows that M Squared cannot procure private contracts to sustain its business. In fact, prior to servicing federal contracts, Ms. Canales (*i.e.*, M Squared) had private sector contracts. See Compl. at ¶ 21; Canales Decl. at ¶ 9 (noting that M Squared had several contracts in the private sector).[9] Moreover, even if M Squared were debarred, it is not foreclosed from maintaining its current contracts or procuring future ones if "the agency head or a designee . . . states in writing the compelling reasons justifying continued business dealings between the agency and the contractor." 48 C.F.R. § 9.406-1(c). M Squared has not shown that it could not get the agencies with whom it has contracts to apply this exemption. Under these circumstances, M Squared cannot demonstrate irreparable harm.

Second, similar to M Squared, Ms. Canales cannot establish her own irreparable harm. Without citing any law, Plaintiffs contend that absent injunctive relief "Ms. Canales' reputation will undeniably suffer certain irreparable damage." Pl. *second* PI Mot. at 17. In fact, under the law, damages to one's reputation is not adequate to establish irreparable harm. See Sampson v. Murray, 415 U.S. 61, 91-92 (1973); see also Veitch v. Danzig, 135 F. Supp.2d 32, 36-37 (D.D.C.

---

[9]    But see Supplemental Declaration of Maria Canales at ¶8 (stating that M Squared does not do any business unaffected by the debarment) (filed on August 21, 2006) (attached as Exhibit 1 to Plaintiffs' *second* TRO) (Dkt. No. 18).

2001) (in denying plaintiff's preliminary injunction application the court held that loss of salary, benefits, as well as damage to plaintiff's reputation are not sufficient to show irreparable harm). Accordingly, under the law, Ms. Canales cannot demonstrate irreparable harm for any potential negative impact on her reputation due to the debarment.

### (4)  The Government Will Be Harmed by the Preliminary Injunction Sought.

In contrast to the harm alleged but not substantiated by Plaintiffs, the government faces real and substantial harm if the Plaintiffs' debarment is set aside by the Court.  Federal agencies are under a statutory duty to do business with responsible contractors.  48 C.F.R. § 9.402 (noting that "[a]gencies shall solicit offers from, award contracts to, and consent to subcontracts with responsible contractors.") (emphasis added); see also Robinson, 876 F.2d at 159 (noting that "the Government must be able to fulfill its statutory duty of dealing only with responsible contractors.") (emphasis added).  One of the federal government's most valuable tools in fulfilling this obligation is its power to debar or suspend nonresponsible government contractors. See Gonzales v. Freemen, 334 F.2d at 576-77 (federal government has a strong interest in refusing to deal with companies or individuals when it believes they lack responsibility).  The importance of ensuring that the government deals only with responsible individuals and the role of debarment and suspension in providing that assurance has been explained by the D.C. Circuit:

> The federal acquisition regulation system operates on the assumption that all individuals with whom the government does business are persons of integrity who abide by the terms of their government contracts.  The security of the United States, and thus of the general public, depends upon the quality and reliability of items supplied by these contracts.  When items enter the supply system through fraud or deceit, the national security, public welfare, and personal safety are all potentially compromised and endangered. . . . Debarment reduces the risk of harm to the system by eliminating the source of that risk, that is, the unethical or

21

incompetent contractor.

Caiola v. Carroll, 851 F.2d 395, 398-99 (D.C. Cir. 1988).

The governing inquiry in this debarment is whether Plaintiffs are "presently responsible" and trustworthy to continue to serve federal contracts. The determination to debar Plaintiffs turns on their integrity and trustworthiness. A contractor's responsibility and integrity in the context of government procurement law relates to matters of integrity or business ethics as well as the individual's ability to successfully complete a contract. See Roemer v. Hoffman, 419 F. Supp. 130, 131 (D.D.C. 1976). Defendants' regulations regarding suspensions and debarments are carefully crafted to protect these values: they provide for sanctions only upon adequate evidence of improper conduct after notice and an opportunity to be heard. See 48 C.F.R. §§ 9.406-2 and 9.406-3. To compel the government to contract with Plaintiffs in the face of undisputed evidence that Ms. Canales pled guilty to making a false writing in violation of 18 U.S.C. § 1018 would clearly harm the government.

**(5)  The Public Interest Favors Maintaining the Debarment.**

The final factor weighing against granting the extraordinary relief sought by Plaintiffs is the public interest. The public interest at stake in this matter is closely aligned with the government's interest in ensuring that the government does business exclusively with responsible contractors. See 49 C.F.R. § 9.402. The federal government (and through it the federal taxpayers) has no assurance that Ms. Canales and her alter ego, M Squared, will not commit future misdeeds like those that led to an investigation of Ms. Canales' conduct while at the Treasury Department or her guilty plea. The public will bear the burden of paying for the consequences if Ms. Canales repeats her misdeeds.

22

**IV.    Conclusion.**

For the foregoing reasons, the Court should grant Defendants' Motion for Summary Judgment and deny Plaintiffs' *second* Application for Preliminary Injunction and *second* Motion for a Temporary Restraining Order.  The Court should also dismiss this case with prejudice.


Dated: August 23, 2006                    Respectfully Submitted,


    /s/   Kenneth L. Wainstein
KENNETH L. WAINSTEIN, D.C. BAR #451058
United States Attorney


    /s/   Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

    /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

Attorneys for Defendant

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARIA CANALES,  ET AL., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civ. No. 06-1330 (GK) |
| v. | ) | ECF |
| | ) | |
| HENRY M. PAULSON, SECRETARY, | ) | |
| DEPT. OF TREASURY, ET AL. | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER**

Upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' Second

Application for Preliminary Injunction, Plaintiffs' Second Motion for a Temporary Restraining

Order, the Oppositions thereto, and the entire record, it is this _____ day of _____, 2006,

ORDERED that Defendants' Motion for Summary Judgment be and is hereby

GRANTED; it is

ORDERED that  Plaintiffs' Second Application for Preliminary Injunction (Dkt. No. 7)

be and is hereby DENIED; it is

ORDERED that Plaintiffs' Second Motion for a Temporary Restraining Order be and is

hereby DENIED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

with prejudice.

SO ORDERED        _____

U.S. District Judge

Copies to counsel of record via ECF.