IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
MARIA CANALES and M SQUARED                 )
STRATEGIES, INC.,                           )
                                            )
       Plaintiffs,                          )
                                            )
v.                                          )   Civil Action No: 1:06CV01330 (GK)
                                            )
HENRY M. PAULSON,                           )
SECRETARY OF THE UNITED STATES              )
DEPARTMENT OF TREASURY *et al*.,            )
                                            )
       Defendants.                          )
_____)

**PLAINTIFFS' REPLY TO DEFENDANTS'
RESPONSE TO PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**

COME NOW Plaintiffs Maria Canales ("Canales") and M Squared Strategies, Inc. ("M Squared") (collectively "Plaintiffs"), by and through their undersigned counsel, and submit their Reply to Defendants' Response to Plaintiffs' Motion for Expedited Discovery "Plaintiffs' Discovery Motion") [Dkt. No. 6].  In support thereof, Plaintiffs state as follows:

**INTRODUCTION**

Plaintiffs bring this action to set aside the Debarment Notice issued by the United States Department of the Treasury ("Treasury").  In addition to Plaintiffs' Discovery Motion, currently before the Court are Plaintiffs' Application for Preliminary Injunction [Dkt. No. 7], M Squared's Application for Temporary Restraining Order [Dkt. No. 18], and Defendants' Motion for Summary Judgment [Dkt. No. 21].

Since Plaintiffs filed Plaintiffs' Discovery Motion, Defendants have filed their Motion for Summary Judgment and have attempted to introduce new evidence, not found in the Administrative Record, by offering various e-mails and other documents in support of their case.

As set forth in Plaintiffs' Discovery Motion, expedited discovery in this matter is essential to allow Plaintiffs to obtain discovery to prevent further imminent injury.  As a legal basis for expedited discovery, Plaintiffs incorporate herein their Reply to Defendants' Opposition to Plaintiffs' Application for Preliminary Injunction and Motion for a Temporary Restraining Order [Dkt. No. 25].  In their papers, Plaintiffs maintain, among other things, that the debarments are based upon unlawful considerations by the Debarring Official, are contrary to the FAR, and that the debarments have caused and are continuing to cause irreparable harm.  Defendants are now attempting to introduce documents absent from the Administrative Record in an effort to cover up their bad faith and improper behavior.  Defendants engaged in bad faith and improper behavior when they deliberately and knowingly lied to Congress and that behavior continues today, as they continue to backfill the record in order to attempt to support the unlawful debarments.

Moreover, despite the Court's request to Defendants' counsel to get the Defendants to explain how false statements regarding Canales were twice published to Congress, the Defendants have failed to provide such an explanation.  This failure further frustrates not only Plaintiffs' ability to understand the putative reasons for their respective debarments, but hinders this Court's ability to effectively review the agency's actions.

Accordingly, because it is the Defendants themselves who are supplementing their case with evidence not found in the Administrative Record, there is a showing of bad faith and improper behavior by the Defendants, the Defendants have hindered this Court's ability to effectively review the Defendants' actions, and, finally, because imminent irreparable harm will befall the Plaintiffs without opportunity for discovery, this Court should allow expedited discovery in this case.

**BACKGROUND FACTS**

On February 25, 2002, the Treasury OIG initiated an investigation based on a complaint from a confidential source that Canales, then the U.S. Department of the Treasury's Chief Information Officer, was involved in unlawful procurement practices, to wit: the receipt of gifts and personal vacations from a personal friend ("Neal") in exchange for "greatly influencing" the sole source award of a $5.7 Million IT contract to Booze Allen Hamilton ("BAH"), which included a $1.5 Million subcontract to a company (Enterasys, Inc) "represented by Neal." In the course of the Treasury's OIG's ("OIG") investigation, OIG agents interviewed Canales on June 6, 2002, and she acknowledged that she had received a vase from Neal, but she denied that she had accepted a personal gift of two blue emerald chips, valued at $800. She also denied any connection between any gifts and the award of the $5.7 Million BAH contract or BAH's subcontract with Enterasys, Inc. This interview was reduced to a written statement on that same day.

The results of OIG's investigation were turned over to the Department of Justice for criminal prosecution. On April 13, 2004, the United States filed a one count Information against Canales, charging her with a violation of 18 U.S.C. § 1018, making a false writing in connection with her acceptance of the two emerald chips (which she initially denied in her interview with the Treasury OIG). At the Arraignment Hearing on April 19, 2004, AUSA Howard Sklamberg (the "AUSA") gave a proffer of what the evidence would have shown had the case gone to trial. After his proffer, Canales's counsel noted, "there is no connection proffered by the United States Attorney's Office that connects any procurement to those gifts." When asked to respond by the judge, the AUSA stated: "This is a plea to Section 1018 *and we're not alleging a violation of the*

*bribery or gratuity statute*, so that statement I think does not detract from the factual proffer." (emphasis added). Canales then entered her plea of guilty to the misdemeanor violation.

On April 30, 2004, following the plea proceedings, Treasury's Inspector General (the "IG") published his Semi-Annual Report ("SAR") to Congress for the period October 1, 2003 – March 31, 2004. Inexplicably, the IG *falsely reported that Canales had pleaded guilty to procurement fraud* – the acceptance of bribes and gratuities in the awarding of a $1.5 Million subcontract:

> **Former Acting Treasury CIO Debarred for Life for Making False Statements**
>
> A complaint filed with Treasury OIG alleged, as part of or in exchange for a $5.8 million contract for cyber-security related software and consulting services, Treasury's former Acting CIO directed the contractor to place a $1.5 million subcontract with a company owned by a friend of the CIO. Our investigation revealed that, in return, the CIO received various gratuities including jewelry and use of a time-share rental property located in the Bahamas. The former CIO agreed to plead guilty to making False Statements in Official Certificates or Writings (18 U.S.C. §1018) and to be debarred from doing business with the federal government for life.

To make these false statements more noticeable and as damaging as possible, the Treasury OIG inserted a color photograph showing a sailboat anchored on a Caribbean island with a palm tree in the foreground!

On July 13, 2004, at Canales's sentencing hearing, the AUSA directly refuted the IG's statements in OIG's April 30, 2004 SAR, by informing the Court:

> As the Court knows from reviewing the actual proffer upon which the parties agreed, this case stems from an investigation by the Inspector General's Office into activities by Ms. Canales. ***There ended up being no allegation that Ms. Canales broke any of the bribery or gratuity laws or corruption offenses.***
>
> In the course of the investigation, however, Ms. Canales made a false written statement to the Inspector General…That false statement forms the basis, the false written statement, forms the basis to the misdemeanor to which Ms. Canales pled.

Apparently displeased with the handling of its allegations by the Department of Justice and the Court, on October 29, 2004, the IG *again* decided to publish the false and defamatory

statements about Canales's misdemeanor conviction, this time publishing her full name in addition to her former position at Treasury:

### Former Acting Treasury CIO Sentenced to Making False Statement and Debarred for Life

In our March 2004 report (p.15), we reported Treasury's acting Chief Information Officer (CIO), Maya Canales, directed a consulting firm under contract with the Department to secure a $1.5 million subcontract with a company owned by the CIO's friend, as part of (or in exchange for), a $5.8 million contract that Treasury awarded to the consulting firm. That investigation revealed the acting CIO accepted various gratuities including jewelry and the use of a time-share rental property.

The former acting CIO pled guilty to making false statements in official Certificates or Writings (18 U.S.C. § 1018) and has been debarred for life from doing business with the federal government. In July 2004, the former action CIO was sentenced in United States District Court to 1 year probation, fined $2,500, and ordered to perform 25 hours of community service.

On November 29, 2005, more than 19 months after first publicly announcing her "Life-Time Debarment," Treasury informed Canales, for the first time, that it was initiating debarment proceedings against her. Then, on June 27, 2006, Treasury's Debarring Official sent Notices of Debarment, effective for three years, to both Canales and M Squared.

In Defendants' Motion for Summary Judgment, they attempt to backfill their reasoning to debar Plaintiffs and *attempt* to explain the *two* defamatory and wholly inaccurate reports to Congress contained in the SARs. More specifically, Mr. Delmar, the Inspector General's counsel, states that he received an inquiry in connection with a pending FOIA request regarding the accuracy of the statements in the OIG's October 2004 SAR. He received the email inquiry on August 9, 2005 at 11:28 a.m. from David Perera, Senior Reporter, Federal Computer Week. By 11:48 a.m., only 20 minutes later, Mr. Delmar informed Mr. Perera that the statement in the SAR concerning the lifetime debarment of Canales was inaccurate. Next, Mr. Delmar states that he received a second inquiry, an email from John Breslin to the OIG Hotline on August 25, 2005,

reporting that Mayi Canales is violating her plea agreement if the statement is true in the OIG's March 2004 SAR that Canales has been debarred for life from doing business with the federal government. A Clifton Brown, Jr. responded to Mr. Delmar, stating that "the Treasury OIG did report that the subject had been debarred for life; however, this statement was made in error. The subject's conviction was reported to the Department of Treasury for appropriate action, which can include suspension or debarment. We will bring the information provided to the attention of the appropriate department officials." On that same day, September 7, 2005, approximately 2½ hours later, the OIG's counsel, Mr. Delmar, reported to his OIG colleagues that he talked directly to Bill Murphy, the Debarring Official's counsel, and "forwarded this email package to him, **stressing the need for fast action. We'll see... .**"(emphasis added).

These newly released communications, which are not in the Administrative Record, raise a number of very serious and troubling questions. First, the issue arises of why the OIG's counsel, Mr. Delmar, is having a "lawyer-to-lawyer" communication with the Debarring Official's attorney, Bill Murphy. Second, unexplained is why Mr. Delmar is telling the Debarring Official's attorney that he "needs fast action" from the Debarring Official. The third issue raised from this new evidence is if there is any legitimate basis for this communication between reputedly independent units of the Treasury Department, then questions remain as to why these communications were not made through official channels, such as the communication of the OIG's September 30, 2004 Report of Investigation. Fourth, it is telling indeed that the actual communication between Mr. Delmar and Mr. Murphy was not also produced.

Once again, it is critical for the Court to note that these communications are not found in the Administrative Record. At this juncture, it is impossible to determine how many other e-

mails or communications have occurred to cover up the illegal debar of the Plaintiffs.  In light of the bad faith and improper behavior by the Defendants, the Plaintiffs are entitled to discovery.

## ARGUMENT

A.     Discovery is Permissible in APA Cases

Incredibly, Defendants assert that Plaintiffs are not entitled to any discovery beyond the Administrative Record in this case and that it "contain(s) all of the material necessary for this Court's disposition of the claims raised by Plaintiffs."  This claim is both legally and factually incorrect.

First, it is the *Defendants* themselves who are attempting to introduce evidence outside of the Administrative Record in an effort to bolster their position.  The cryptic e-mails concerning the SARs, which are referenced above, are not contained in the Administrative Record.  It is disingenuous for the Defendants to claim that judicial review should be confined to the Administrative Record and then proceed to introduce, through the "back door," additional materials in an attempt to bolster their case.

Second, the Government is vague about the law regarding discovery in cases such as this one.  In fact, discovery beyond the Administrative Record is allowed when there has been a showing of bad faith or improper behavior.  *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).  As set forth above, the Defendants have clearly engaged in bad faith and improper behavior.  In this case, Canales was investigated by the OIG for unlawful procurement practices.  During the investigation, Canales made a false statement, to which she pleaded guilty.  The AUSA specifically stated, however, that the false statement that formed the basis of Canales's conviction was unrelated to any procurement. In fact, during the course of the

prosecution, the AUSA made a proffer on the record at two separate proceedings that Canales's false writing was not in any way related to the procurement process.

Apparently, OIG was not satisfied with this outcome. Treasury proceeded to publish two separate reports to Congress containing inaccurate and defamatory claims that Canales had received gratuities in the procurement process as part of a *quid pro* quo, and had been debarred for life. Once these inaccurate reports were uncovered, the Defendants began the "cover up." Treasury quickly initiated debarment proceedings and ultimately saw fit to debar Plaintiffs. These actions by Government officials are clearly outside the realm of proper behavior and the Defendants have not provided any explanation for their actions. Rather, they have only created more questions with their recent submissions to this Court of e-mails detailing these actions.

Third, "supplementation of the record may be permissible where there is 'failure to explain action as to frustrate effective judicial review.'" *Sher v. U. S. Dept. of Veterans Affairs*, 2006 WL 47374 at *5 (D. Me.) (citing *Olsen v. U.S.*, 414 F.3d 144, 155 (1st Cir 2005) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973))). In this case, this Court urged Defendants' counsel to obtain from Defendants an explanation about the false and defamatory statements regarding Canales that were published to Congress. The Defendants' explanation, however, consists only of an admission that Counsel to the IG "[has] been unable to determine how these erroneous statements in the SARs came to be made." (Affidavit of Mr. Richard K. Delmar, attached to Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Application for Preliminary Injunction and Motion for a Temporary Restraining Order [Dkt. No. 21]). This "explanation" hardly provides any answers as to why the two SARs were published despite the fact that Treasury knew the statements about Canales to be untrue. As such, effective judicial review of this critical question is certainly frustrated. Consequently, Plaintiffs should be

afforded the opportunity, through discovery, to explore this fundamental issue and the other related issues surrounding their debarment.

B.    Local Rule 7(m)

Defendants argue that Plaintiffs' Discovery Motion should be denied because Plaintiffs' counsel failed to confer with Defendants' counsel concerning Plaintiffs Discovery Motion and that Plaintiffs' Discovery Motion did not contain a statement detailing whether "the motion was opposed."

Contrary to the Defendants' assertion, counsel for Plaintiffs had numerous discussions with counsel for Defendants concerning discovery in this case. While Plaintiffs did not include such a statement in the Motion for Expedited Discovery, such an omission is not a basis to deny the Motion and Defendants have failed to provide and support for such a conclusion.

## CONCLUSION

**WHEREFORE**, for the aforementioned reasons, Plaintiffs respectfully pray that this Court grant Plaintiffs' Motion for Expedited Discovery and allow Plaintiffs to proceed as set forth therein.

DATED:  August 29, 2006.                                Respectfully submitted,

/s/ Nicholas M. Beizer
By:  One of their attorneys
Steven D. Cundra, D.C. Bar No. 374074
Amy Epstein Gluck, D.C. Bar No. 453525
Nicholas M. Beizer, D.C. Bar No. 485894
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
(202) 973-1212 (fax)
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 29th day of August, 2006, a copy of the foregoing document was served, via the Court's CM/ECF system, upon:

>JOHN C. TRUONG
>Assistant United States Attorney
>555 4th Street, N.W.
>Room E-4206
>Washington, D.C.  20530
>E-mail: John.Truong@usdoj.gov
>Attorneys for Defendants

>/s/ Nicholas M. Beizer
>Nicholas M. Beizer

65984.1:230133:00420