**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MARIA CANALES,  ET AL., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | Civ. No. 06-1330 (GK) |
| v. | ) | ECF |
| | ) | |
| HENRY M. PAULSON, SECRETARY, | ) | |
| DEPT. OF TREASURY, ET AL. | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT (DKT NO. 22); IN OPPOSITION TO PLAINTIFFS'**
**CROSS MOTION FOR SUMMARY JUDGMENT (DKT. NO. 30);**
**AND IN SUPPORT OF A MOTION TO DISMISS AND FOR VOLUNTARY REMAND**

**I.      Introduction**.

Plaintiffs, Maria Canales and her company, M Squared Strategies Inc. ("M Squared"),

file this lawsuit under the Administrative Procedure Act ("APA") seeking to "terminate" the

debarment against them.  The Court issued orders enjoining Plaintiffs' debarment until the Court

resolves the parties' respective dispositive motions.

It appears that the Court enjoined M Squared's debarment based on Ms. Canales'

representations as to when she "started" her company.  Specifically, Ms. Canales attests that she

"started" M Squared in "January 2003"; however, the records from the Maryland Department of

Assessments and Taxation show that she actually "started" the company on July 1, 2002.  In any

event, based on the issues raised in the parties' filings, Defendants are voluntarily withdrawing

M Squared's debarment and move to remand the matter to the agency for further consideration.

This withdrawal effectively deprives the Court of subject matter jurisdiction over M Squared's

claims and, therefore, the Court should dismiss those claims without prejudice.  Furthermore, the

withdrawal also moots the Court's two orders enjoining M Squared's debarment.

As for Ms. Canales' debarment, the Administrative Record supports the primary basis for

debarring Ms. Canales – namely, she was debarred under 48 C.F.R. §9.406-2(a)(5) because of

her guilty plea for making a false writing that demonstrates a lack of "business integrity and

business honesty."   Peel away Plaintiffs' rhetoric and innuendoes that Ms. Canales' debarment

was to cover up the inaccurate reports that the Office of the Inspector General ("OIG") sent to

Congress, the undisputed evidence shows that Ms. Canales pled guilty to making a false writing

and that the primary basis for her debarment rested on that guilty plea.  Accordingly, the Court

should vacate its preliminary injunction order enjoining Ms. Canales' debarment, grant

Defendants' Motion for Summary Judgment, Deny Plaintiffs' Cross Motion for Summary

Judgment, and dismiss Ms. Canales' APA claims with prejudice.

## II.    Argument.

### A.    The Debarment Notice To M Squared Is Withdrawn.[1]

Defendant initially debarred M Squared because of its relationship with Ms. Canales –

namely, she is its sole stockholder and Chief Executive Officer.  See CAN0011, 109-110.  In this

Court, Defendants further supported M Squared's debarment by arguing that Ms. Canales is M

Squared's alter ego.  See Def. Mot. at 15-17 (Dkt. No. 22).  In response, M Squared argues that

the bases for its debarment are not supported by the Administrative Record.  Pl. Mem. at p. 10-

---

[1]    Pursuant to Local Rule 7(m), counsel for the parties conferred on the motion for
voluntary remand and Plaintiffs' counsel oppose.

12.[2]  M Squared also contends that its debarment based on the alter ego theory "was never the subject of any fact finding investigation by the [Debarring Official]."  Pl. Mem. at p. 14.  M Squared further asserts that the agency did not afford it a "due process hearing whether it was, in fact, the 'alter ego' of Canales."  Pl. Mem. at p. 15.

In light of the issues raised by M Squared, Defendants are voluntarily withdrawing M Squared's debarment and request a remand to the agency to review the relationship between M Squared and Ms. Canales.  See Withdrawal/Remand Notice (Gov. Exh. A).  This withdrawal in effect deprives this Court of subject matter jurisdiction over M Squared's APA claims against Defendants.

Federal courts are courts of limited jurisdiction which may exercise only those powers authorized by Constitution and statute.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  Therefore, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."  Id. at 377 (citations omitted).  The first and fundamental question presented by every case brought to the federal courts is whether the Court has jurisdiction to hear it. See Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986); California v. United States, 215 F.3d 1005, 1009 (9th Cir. 2000).

M Squared necessarily relies on the APA as a waiver of sovereign immunity. See Trudeau v. FTC, 456 F.3d 178, 187 n.11 (D.C. Cir. 2006). The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency

---

[2]     Memorandum of Points and Authorities in Support of Plaintiffs' Cross Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") (Dkt. No. 30).

action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. §

702.  The APA authorizes judicial review of "[a]gency action made reviewable by statute and

final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704

(emphasis added).  Thus, an agency action must be final in order to be judicially reviewable.

See, e.g., Ctr. for Law and Educ. v. Dep't of Educ., 396 F.3d 1152, 1165 (D.C. Cir. 2005) ("APA

... bars review prior to final agency action."); Indep. Petroleum Ass'n of Am. v. Babbitt, 235 F.3d

588, 594 (D.C. Cir. 2001) ("'[T]he requirement of a final agency action has been considered

jurisdictional.  If the agency action is not final, the court ... cannot reach the merits of the

dispute.'" (quoting DRG Funding Corp. v. Sec'y of Housing & Urban Dev., 76 F.3d 1212 (D.C.

Cir. 1996)).

     The Supreme Court has established a two-part test to determine when an agency action is

reviewable as "final."  First, the action under review "must mark the 'consummation' of the

agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature."

Bennett v. Spear, 520 U.S. 154, 177-78 (1997) (citing Chicago & S. Air Lines, Inc. v. Waterman

S.S. Corp., 333 U.S. 103 (1948)).  Second, the action must "be one by which 'rights or

obligations have been determined,' or from which 'legal consequences will flow.'" Bennett, 520

U.S. at 178 (quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,

400 U.S. 62, 71 (1970)).  The "core question" for determining finality is whether the agency has

completed its decision making process, and whether the result of that process is one that will

directly affect the parties."  Dalton v. Specter, 511 U.S. 462, 470 (1994).

     Here, with the debarment of M Squared now withdrawn, there no longer exists any "final

agency action" reviewable under the APA.  Neither part of the two-part test for final agency

action is presently satisfied.  First, there no longer exists the "consummation" of the agency's

decisionmaking process.  To the contrary, Defendants intend to review the relationship between

M Squared and Ms. Canales to determine whether there is a sufficient nexus between them to

support a debarment of M Squared under the Federal Acquisition Regulations ("FAR").   In

short, the decision-making process is ongoing and there is no final agency decision for judicial

review.

Second, with M Squared's debarment withdrawn, there is no agency decision from which

legal rights or obligations flow – or at least no decision that can be challenged in a District

Court. Indeed, with respect to the second prong of the finality test, the fact finding that needs to

be done by the Debarring Official will almost certainly affect the issues that this Court will

ultimately be reviewing under the APA's "arbitrary and capricious" standard.

For these reasons, Defendants submit that the withdrawal of the debarment renders the

matter non-justiciable as it relates to M Squared.  Specifically, since M Squared's Complaint

seeks to "terminate" its debarment, Defendants' voluntary withdrawal and remand of the

debarment effectively moots M Squared's requested relief.  See Complaint at Prayer for Relief at

¶ 2 (Plaintiffs' Complaint seeks to "terminate" the debarment as it pertains to M Squared).

Therefore, the portion of the Complaint that pertains to M Squared should be dismissed, without

prejudice to M Squared's  re-filing if it wishes to contest any new administrative decision that

may be taken concerning M Squared.  Furthermore, the withdrawal moots the Court's August 30,

2006 temporary restraining order (Dkt. No. 28), which enjoins M Squared's debarment and the

portion of the Court's September 15, 2006 preliminary injunction order that also enjoins M

Squared's debarment (Dkt. No. 32).

**B.      In Light of the Inaccurate Information Presented by Ms. Canales, the Court Should Set Aside Its TRO and PI Orders Enjoining M Squared's Debarment.**

Even assuming that the Court has subject matter jurisdiction over M Squared's claims in the face of the voluntary withdrawal of M Squared's debarment, the Court should set aside its orders because they were based on the inaccurate information Ms. Canales provided to the Court. Specifically, on August 9, 2006, Plaintiffs filed an Application for a Preliminary Injunction ("P.I. Application") seeking to enjoin, *inter alia*, M Squared's debarment. See Dkt. No. 7. Soon thereafter, on August 21, 2006, Plaintiff M Squared (by itself) filed an Application for a Temporary Restraining Order ("TRO Application") seeking to enjoin its own debarment. See Dkt. No. 18.[3]

In these two applications, Plaintiffs argued that no officer, director, shareholder, partner or employee associated with M Squared has ever been convicted of any crime in connection with the individual's performance of his/her duties for or on behalf of M Squared or with M Squared's knowledge or approval. See P.I. Application at 7. In support of Plaintiffs' applications, Ms. Canales submitted affidavits attesting that she resigned from the Treasury Department in October 2002 and "started" M Squared in "January 2003." Affidavit of Maria Canales at ¶ 6-8 (filed on Aug. 9, 2006) (Dkt. No. 8-1); Declaration of Maria Canales at ¶ 3-4 (filed on Aug. 9, 2006) (Dkt. No. 8-2).

Based on these representations, the Court enjoined M Squared's debarment. In doing so, the Court held that,

---

[3]      M Squared's TRO Application raises substantially similar issues as those in Plaintiffs' P.I. Application.

> On its face, the FAR does allow an individual's debarment to be imputed to a corporation in some cases. See 48 C.F.R. § 9.406-5(a). As M Squared points out, however, this may not be such a case. The Regulations provide that a corporate principal or agent's criminal or fraudulent conduct may be imputed to the corporation itself if such conduct "occurred in connection with the individual's performance of duties for or on behalf of "the corporation or with its "knowledge, approval, or acquiescence." Id. Here, however, **Canales's criminal conduct occurred** while she was still an employee at Treasury, and thus before her career as a government contractor had begun and **before M Squared had even been incorporated**. That conduct therefore could not have occurred "in connection with" the performance of duties related to M Squared or with its "knowledge, approval, or acquiescence."

Canales v. Paulson, No. 06-1330(GK), slip op. at 10-11 (D.D.C. Aug. 30, 2006) (Dkt. No. 28) (emphasis added).   The record proves the contrary.

Specifically, the records from the Maryland Department of Assessments and Taxation show that Ms. Canales incorporated M Squared Strategies, Inc., on June 1, 2002.  See Gov. Exh. B (Articles of Incorporation of M Squared Strategies, Inc.).  Ms. Canales was one of the incorporators and its resident agent. Id.  The OIG interviewed Ms. Canales on June 6, 2002, about gifts she received from a male consultant with business ties to the Treasury Department.[4] In fact, her "criminal conduct" did not occur until June 12, 2002, when she committed the false writing that led to her guilty plea of violating 18 U.S.C. § 1018.  See Plea Hrg. Trans. at p. 12:18-13:8 (Pl. Exh. 3) (Dkt. No. 9) (A.R. at CAN0132).  Under these facts, contrary to the Court's finding, Ms. Canales committed the crime almost two weeks after M Squared's incorporation on June 1, 2002.

Furthermore, the records also indicate that Ms. Canales filed M Squared's Articles of Incorporation on July 1, 2002, one month after incorporating the company.  See Gov. Exh. C.

---

[4]    Affidavit of Maria Canales at ¶ 3 (filed on Aug. 9, 2006) (Dkt. No. 8-1) (attesting that "on June 6, 2002" the OIG interviewed her about gifts received from a consultant).

Ms. Canales paid the $64 filing fees with a check.  Id. at p. 2.  Under Maryland law, Ms.

Canales' filing of M Squared's Articles of Incorporation demonstrated that "the creation of the

corporate entity is conclusively established."  Cardellino v. Comptroller of the Treasury, 511

A.2d 573, 576 (Md. App. 1986) (noting that "since the articles [of incorporation] were filed . . .

the creation of the corporate entity is conclusively established."); see also Md. Corp. & Ass'n

Code Ann. § 2-102.  Therefore, Ms. Canales "started" M Squared in July 2002, not January

2003.  See Gov. Exh. D ("date of formation: 7/01/02").   However, Ms. Canales did not resign

from the Treasury Department until October 2002 – three months after she "started" M Squared.

See Affidavit of Maria Canales at ¶2- 3 (filed on Aug. 9, 2006) (Dkt. No. 8-1) (attesting that Ms.

Canales did not resign from the Treasury Department until October 2002).[5]

     Since Ms. Canales was one of the two incorporators and she paid for the filing fees, the

circumstances surrounding M Squared's establishment and existence were in her possession on

July 28, 2006, when she filed her first TRO application and the underlying Complaint.[6]  Ms.

Canales, however, failed to disclose M Squared's true existence in her Complaint and in her

numerous filings with the Court since the beginning of this lawsuit.

     Based on these facts, under Fed. R. Civ. P. 60(b)(3), the Court should set aside its two

---

[5]    It is now evident that Ms. Canales provided similar inaccurate information at the administrative process.  For instance, in response to Defendants' notice proposing to debar her from participating in government procurement contracts, Ms. Canales (through counsel) stated, "[s]ince leaving the Department of Treasury, Ms. Canales **formed** M Squared Strategies Inc." See CAN0109.  Ms. Canales left the Treasury Department in October 2002.  However, as shown above, she "started" M Squared on July 1, 2002, three months prior to her resignation from the Treasury Department.  Therefore, Ms. Canales provided inaccurate information to the Debarring Official during the administrative process.

[6]    There is no evidence showing that the Treasury Department granted Ms. Canales' permission to start a company and engage in outside work.

orders enjoining M Squared's debarment.  <u>See</u> Fed. R. Civ. P. 60(b)(3) (allowing the court to set

aside an order or judgment because of "fraud . . . misrepresentation, or other misconduct of an

adverse party."); <u>see</u>, <u>e.g.</u>, <u>Canady v. Erbe Elektromedizin</u>, 99 F. Supp.2d 37, 50 (D.D.C. 2000)

(granting relief from judgment under Rule 60(b)(3) on the grounds of misconduct by the adverse

party).

### C.    The Administrative Record Supports Ms. Canales' Debarment.

#### 1.    Ms. Canales Fails to Dispute the <u>Primary</u> Basis of Her Debarment.

The Administrative Record supports the Debarring Official's decision to debar Ms.

Canales from participating in federal government contract procurement programs.  Specifically,

the Debarring Official's <u>primary</u> reason for debarring Ms. Canales was because of her

"conviction of a criminal offense," which is a cause for debarment under 48 C.F.R. § 9.406-

2(a)(5).  <u>See</u> A.R. at CAN0011.  The secondary basis for debarment was her violation of 18

U.S.C. § 1018, making a false writing in "connection with an ongoing procurement."  <u>See</u> A.R.

at CAN0011.

As Ms. Canales points out, the Administrative Record does not support the <u>secondary</u>

basis for her debarment – namely, Ms. Canales was not engaging in any "ongoing procurement"

at the time of when she made the false writing.  <u>See</u> Pl. Mem. at Sections B and C.  Therefore,

Defendants no longer rely upon this secondary basis to debar Ms. Canales.  However, the

Administrative Record supports the Debarring Official's <u>primary</u> basis to debar Ms. Canales

under §9.406-2(a)(5).  <u>See</u> A.R. at CAN0011.

§9.406-2(a)(5) provides that a contractor may be debarred for committing "any other

offense indicating a lack of business integrity or business honesty that seriously and directly

9

affects the present responsibility of a Government contractor or subcontractor." 48 C.F.R.

§9.406-2(a)(5). There is no dispute that Ms. Canales' guilty plea for submitting a false writing

in violation of 18 U.S.C. §1018 demonstrates her lack of "business integrity or business honesty"

that directly affects her as a government contractor. Ms. Canales' 31-page Opposition/Cross

Motion, however, fails to dispute this basis and therefore concedes the point. See Pl. Mem. at

Sections B to D.

     In any event, although not directly addressing the <u>primary</u> basis for her debarment, Ms.

Canales argues that the Court should grant judgment, as a matter of law, in her favor because she

"is not a government contractor under the FAR [and] has never been a government contractor."

Pl. Mem. at p. 20. Ms. Canales submitted her own affidavit to support this contention.[7] Ms.

Canales further suggests that the FAR, by its terms, only applies to a contractor. Pl. Mem. at p.

20. Ms. Canales' strenuous denial that she is a government contractor is not supported by the

Administrative Record and the Court's finding.

     Indeed, in response to Defendants' proposal to debar her, Ms. Canales (through counsel)

stated,

> In summary, **Ms. Canales has proven to be an excellent contractor the entire
> time she has done business with the United States government**. It is in the
> best interest of the government to continue to do business with her . . . **Her
> performance** as a public servant and **currently a government contractor** has
> been without criticism.

See March 17, 2006 Letter (A.R. at CAN0111) (emphasis added). Moreover, the Court

implicitly found that Ms. Canales is a "government contractor" when the Court held that

---

    [7]    See Pl. Mem. at p. 20 (citing Canales Aff. attached as Exh. 1 to Plaintiffs' Motion
for Reconsideration (Dkt. No. 5)).

"Canales' criminal conduct occurred while she was still an employee at Treasury, and thus **before her career as a government contractor had begun**." Canales, slip op. at 11 (Dkt No. 28) (emphasis added). Under these facts, Ms. Canales cannot deny that she is not a "government contractor" under the FAR.

Furthermore, the FAR defines a contractor as "any individual . . .[who] directly or indirectly submits offers for or is awarded, or reasonably expected to submit offers for or be awarded, a Government contract." 48 C.F.R. § 9.403(1). Under this definition, Ms. Canales qualifies as a "contractor." For instance, Ms. Canales submitted a contract that M Squared has with the Department of Energy, in which she was the "individual [who] . . . indirectly . . .is awarded" the contract. See Plaintiffs' Exh. 2b (Dkt. No. 8).

More importantly, Ms. Canales cannot escape from a pattern of misconduct that casts a long shadow on her "business integrity and business honesty." This pattern began when she was a Deputy Chief Information Officer and later as an Acting Chief Information Officer at the Treasury Department. During her tenure at Treasury she accepted gifts from a male consultant, who represented information-technology companies that were seeking contracts with the Treasury Department. See A.R. at 00108; Canales, slip op. at 2-3 (describing Ms. Canales' relationship with the male consultant).

This misconduct led to an investigation by the OIG and, eventually, to her conviction of making a false writing. A.R. at CAN0107-08, Canales, slip op. at 3. In fact, during the plea hearing Ms. Canales also admitted that she suborned perjury. More particularly, at the plea hearing, Ms. Canales admitted that "**pursuant to Ms. Canales' request, [the male] Consultant falsely stated**, A, that the only gifts of that had been given to [her] was a vase; B, that he had

11

offered emerald chips to [her], but she refused them; C, that [they] did not talk about this amount

of the subcontract; and D, that [she] did not send him a statement of work for the subcontract."

See Plea Hrg. Trans. at p. 12:18-12:25 (A.R. at CAN0132-33) (emphasis added).  This conduct

formed the basis for her guilty plea for making a false writing.  Id. at p. 13:1. (A.R. at

CAN0133).

    Based on this conviction, the Debarring Official debarred Ms. Canales in June 2006.

Under these facts and the FAR, the Debarring Official did not act arbitrarily or capriciously

when he debarred for her lack of "business integrity or business honesty" under §9.406-2(a)(5).

See A.R. at CAN0011.  Therefore, the Court should grant Defendants' Motion for Summary

Judgment and deny Plaintiffs' Cross Motion for Summary Judgment on this claim.

    Ms. Canales' misconduct, however, does not end there.  Subsequently, in July 2006,

faced with the prospect of losing her business because several government contracts could not be

renewed in light of her debarment, Ms. Canales provided inaccurate information in her affidavits

in an effort to set aside her debarment.  In fact, as discussed above, her several affidavits attest

that she did not start M Squared until January 2003, after she resigned from the Treasury

Department in October 2002.[8]  By contrast, Maryland corporate records now show that she in

fact incorporated M Squared in June 2002 and filed its Articles of Incorporation in July 2002.

Under Maryland law, Ms. Canales effectively "started" her company in July 2002.  See Cardello,

---

[8]      See Affidavit of Maria Canales at  ¶6, 8 (filed July 28, 2006) (Dkt. No. 2);
Affidavit of Maria Canales at ¶ 6,8 (filed Aug. 2, 2006) (Dkt. No. 5); Affidavit of Maria Canales
at ¶ 6, 8 (filed on Aug. 9, 2006) (Dkt. No. 8-1); Affidavit of Maria Canales at ¶ 3-4 (filed Aug. 9,
2006) (Dkt. No. 8-2); Second Supplemental Affidavit of Maria Canales at ¶ 3 (filed Sept. 11,
2006) (Dkt. No. 30).

511 A.2d at 576.

Accordingly, to extent that the Court relied upon Ms. Canales' inaccuracies to issue a preliminary injunction order enjoining her debarment, under Fed. R. Civ. P. 60(b)(3), the Court should vacate that order. Moreover, Ms. Canales' inaccurate statements provide the Court with an independent basis to grant Defendants' Motion for Summary Judgment and deny Plaintiffs' Cross Motion for Summary.

## 2. The OIG's Reports To Congress Are Not Relevant to Ms. Canales' Debarment.

Perhaps knowing that she cannot defend the primary basis for her debarment, Ms. Canales challenges her debarment by arguing that the Debarring Official debarred her to cover up the inaccurate reports that the OIG sent to Congress. Pl. Mem. at p. 26-31. Ms. Canales makes two equally untenable arguments.

First, Ms. Canales claims that the e-mails submitted with Mr. Richard Delmar's affidavit constitute "new evidence" and that it was improper for Defendant not to include those documents with the Administrative Record. Pl. Mem. at p. 2-4, 26-27. In this connection, Ms. Canales argues that the Court should deny Defendants' Motion for Summary Judge because the debarment was based on "documents and affidavits that were not part of the record underlying the debarment." Pl. Mem. at p. 26. Ms. Canales' assertion lacks merit.

As an initial matter, the documents and information relied upon by the Debarring Official to issue the debarment notice against Ms. Canales is in the Administrative Record, with bates

number CAN0001-175.  <u>See</u> Affidavit of Thomas Sharp at ¶ 4.[9]  Defendants had already

provided the entire Administrative Record to Plaintiffs.  The Debarring Official attested that he

only considered the Report of Investigation and the documents submitted by Ms. Canales'

counsel.  <u>Id</u>.  The Debarring Official did not consider Mr. Delmar's e-mails to form his decision

and, therefore, those documents are not part of the Administrative Record in this case.  <u>See</u>

<u>James Madison Ltd. v. Ludwig</u>, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (noting that "the

administrative record includes all material 'compiled' by the agency that were 'before the

agency at the time the decision was made'"); <u>Pacific Shores Subdivision v. U.S. Army Corps of</u>

<u>Engineer</u>, – F. Supp.2d –, 2006 WL 2290499, at *5 (D.D.C. Aug. 10, 2006) (noting that only

documents considered directly or indirectly by the decisionmaker should be included in the

administrative record).   Defendants provided Mr. Delmar's e-mails to present a fuller picture

and explain the reasons for the OIG's inaccurate reports to Congress about Ms. Canales.  The e-

mails played no role in the Debarring Official's decisionmaking process.  <u>See</u> Sharpe Decl. at ¶

4.

        Second, Ms. Canales seizes upon the OIG's inaccurate reports to Congress as evidence

that her current debarment is intended to "backfill" the OIG's misconduct.  Pl. Mem. at p. 28.

Moreover, construing Mr. Delmar's e-mails to various officials out of context, Ms. Canales

further claims that the e-mails show that the "OIG was putting the full court press on the

[Debarring Official] to move forward with the debarment, which was clearly result oriented."  Pl.

Mem. at p. 30.  This argument similarly lacks merit.

_____

        [9]        Mr. Sharpe's affidavit was previously submitted with Defendants' Motion for
Summary Judgment.  <u>See</u> Dkt. No. 22

For instance, Mr. Delmar's communications with Mr. William Murphy, an attorney in the General Counsel's Office, were to ascertain whether the agency was planning to take any action with respect to the issues reported in the Report of Investigation ("ROI"). Affidavit of Richard Delmar ("Delmar Aff.") at ¶ 3(attached herein). Mr. Delmar explains that he had a pending Freedom of Information Act ("FOIA") request that he must respond to and he could not process the request until the agency took action on the ROI. Delmar Aff. at ¶ 3.

Citing these e-mails out of context, Ms. Canales also insinuates that Mr. Delmar pressured the General Counsel's Office to take "fast action" to debar Ms. Canales. Pl. Mem. at p. 28. This insinuation has no support in the record. Mr. Delmar explains,

> Plaintiffs misconstrue the wording and meaning of [my] note. My note says: "per Clif - 1/11/06 - open. Debarment proposal 11/29/05. Check @ end Feb 06." This was my contemporaneous memorialization of a discussion I had had with Mr. Brown in which I determined, as of January 11, 2006, that the case was still open. It reflects the fact that the OIG had been notified by the Department that it had issued a debarment proposal on November 29, 2005, and it contains a reminder to myself to check the status again at the end of February, 2006. I used the term "fast action" in a different email dated September 7, 2005 (third attachment to my August 18, 2006 affidavit) . . . which was solely related to my concern that the Department had had the ROI for over 11 months at that point, that I had a pending FOIA request, and that some response from the Department was needed so that the OIG could close the file, which was the necessary predicate for me to respond to the FOIA request.

Delmar Aff. at ¶ 4.

Relying on a September 7, 2005 e-mail out of context, Ms. Canales then claims that "the newly released communications" raise serious questions about the improper motive behind the decision to debar Ms. Canales. Pl. Mem. at p. 29 n.92. Ms. Canales then questions why there are no additional follow-up e-mails. In response, Mr. Delmar explains,

> This email [September 7, 2005], which I had sent to Mr. Brown, his assistant, Kenneth Everetts, and then-Deputy Assistant Inspector General for Investigations

> Carl Hoecker, stated that I had forwarded to Mr. Murphy an email in which Mr. Brown told John Breslin that the "debarred for life" references in the OIG's Semi Annual Reports were wrong. Plaintiffs ask for the whereabouts of any follow-up emails. In fact, I did not electronically forward the email to Mr. Murphy. Instead, I had gone to Mr. Murphy's office to show him the email and explain the OIG's error, and to ask again if the Department was planning to take any action in response to our ROI. I stressed that I had an aging FOIA request that could not be answered while the case was pending. At no time did I demand or suggest that the Department debar Ms. Canales.

Delmar Aff. at ¶ 5. As a last effort to attribute improper motive to these e-mails, Ms. Canales

argues that the e-mail correspondence "veiled in attorney-client privilege between counsel . . .

speaks volumes." Pl. Mem. at p. 30. There is no basis for this contention. Mr. Delmar explains,

> Plaintiffs suggest that my communicating with Mr. Murphy was an effort to mask improper communications behind an attorney-client privilege. There was nothing improper or unusual about my communicating with Mr. Murphy on this matter. I was responsible for processing FOIA requests, and I was seeking information I needed in that role. That was my purpose in talking to Mr. Murphy. At no time did I assert, or consider asserting, an attorney-client privilege with respect to this communication.

Delmar Aff. at ¶ 5.

As explained in Defendants' Motion for Summary Judgment, in response to a FOIA

request, the OIG discovered that, on two occasions, it incorrectly reported to Congress that Ms.

Canales had agreed to be debarred for life following her guilty plea. Def. Mot. at 6-7. The OIG

has not been able to determine the sources of the error. Id. at 6. As a result, the OIG intends to

correct the inaccurate reports the next time it reports to Congress. Id. at 6-7. Aside from Ms.

Canales' unsubstantiated innuendoes and accusations, there is nothing in the record showing that

the Debarring Official debarred Ms. Canales to "cover up" the OIG's inaccurate reports to

16

Congress.[10]  Without more, the Court should grant summary judgment in favor of Defendants

and deny Ms. Canales' cross motion for summary judgment on her debarment.[11]

## III.     Conclusion.

For the foregoing reasons and those in Defendants' Motion for Summary Judgment, the

Court should dismiss claims pertaining to Plaintiff M Squared Strategies Inc., without prejudice,

because Defendant has voluntarily withdrawn M Squared's debarment notice, and remand the

matter for further consideration.  The Court should affirm the Debarring Official's primary

decision to debar Ms. Canales under §9.406-2(a)(5) because of her conviction for making a false

writing and grant summary judgment in Defendant's favor on this issue.  The Court should deny

Plaintiff's Cross Motion for Summary and dismiss this case as it pertains to Ms. Canales, with

prejudice.

---

[10]     Even assuming there was improper conduct on the OIG's part, the conduct does not detract from the underlying primary basis for Ms. Canales' debarment – namely, she was debarred because she pled guilty to a crime that indicates "a lack of business integrity and business honesty that seriously and directly affect the present responsibility of a Government contractor or subcontractor."  48 C.F.R. § 9.406-2(a)(5).

[11]     Defendants will not dignify Plaintiffs' gratuitous attacks on Defendants and their counsel by responding to the following statements:

• Defendants made "**utterly shameless** false and defamatory statements."  Pl. Mem. at p. 4.

• "It is merely post hoc rationalization or **hallucination of Defendants' counsel**."  Pl. Mem. at p. 12.

• "Even if **such simple minded analysis** were permitted under the cited regulation . . ."  Pl. Mem. at p. 14.

• "Indeed there appears to have been through a 'Vulcan Mind Meld' between the Treasury OIG's lawyer and Treasury DO's lawyer worthy of any Star Trek episode."  Pl. Mem. at p. 28.

Dated: September 29, 2006.                    Respectfully Submitted,


                                              ___/s/   Jeffrey A. Taylor_____
                                              JEFFREY A. TAYLOR, D.C. BAR # 498610
                                              United States Attorney


                                              ___/s/   Rudolph Contreras_____
                                              RUDOLPH CONTRERAS, D.C. BAR #434122
                                              Assistant United States Attorney

                                              ___/s/   John C. Truong_____
                                              JOHN C. TRUONG, D.C. BAR #465901
                                              Assistant United States Attorney
                                              555 Fourth Street, N.W.
                                              Washington, D.C.  20530
                                              (202) 307-0406

                                              Attorneys for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| MARIA CANALES,  ET AL., | ) | |
| | ) | |
|     Plaintiffs | ) | |
| | ) | Civ. No. 06-1330 (GK) |
|     v. | ) | ECF |
| | ) | |
| HENRY M. PAULSON, SECRETARY, | ) | |
| DEPT. OF TREASURY, ET AL. | ) | |
|     Defendants. | ) | |

**ORDER**

Upon consideration of Defendants' Motion for Summary Judgment, Plaintiffs' Cross Motion for Summary Judgment, Defendants' Opposition thereto, and Defendants' Motion to Dismiss and for Voluntary Remand, and the entire record herein, it is this _____ day of _____, 2006,

ORDERED that Plaintiffs' Cross Motion for Summary Judgment be and is hereby DENIED; it is

ORDERED that Defendants' Motion for Summary Judgment be and is hereby GRANTED; and it is

ORDERED the above-captioned action be and is hereby DISMISSED with prejudice, as it pertains to Plaintiff Maria Canales; it is

ORDERED that Defendants' Motion to Dismiss and for Voluntary Remand be and is hereby GRANTED; and it is

FURTHER ORDERED that the above-captioned action be and is hereby DISMISSED

without prejudice, as it pertains to Plaintiff M Squared Strategies Inc.

SO ORDERED.

_____

U.S. District Judge