**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
                                                                       )
MARIA CANALES and M SQUARED          )
STRATEGIES, INC.,                                    )
                                                                       )
      Plaintiffs,                                              )
                                                                       )
v.                                                                     )   Civil Action No: 1:06CV01330 (GK)
                                                                       )
HENRY M. PAULSON,                                 )
SECRETARY OF THE UNITED STATES )
DEPARTMENT OF TREASURY *et al*.,   )
                                                                       )
      Defendants.                                            )
_____)

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 30) AND PLAINTIFFS' OPPOSITION TO DEFENDANTS'
<u>MOTION TO DISMISS AND FOR VOLUNTARY REMAND (Dkt. No. 36)</u>**

      Plaintiffs Maria Canales ("Canales" or "Ms. Canales") and M Squared Strategies, Inc. ("M Squared"), by and through their undersigned counsel, hereby file Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment and Plaintiffs' Opposition to Defendants' Motion to Dismiss and for Voluntary Remand.

<u>**INTRODUCTION**</u>

      During the very first conference that the parties had with the Court in this matter on August 9, 2006, the Court requested that the Defendants determine how false statements regarding Ms. Canales's "procurement fraud" conviction and putative "lifetime" debarment were published by the United States Department of the Treasury's ("Treasury" or the "Government") Office of Inspector General in two separate Semi-Annual Reports ("SARs") to Congress. To date, the only response from the Defendants has been to state that Treasury's Office of the

Inspector General (the "OIG") "has not been able to determine the sources of the error."[1] Evidently, Defendants expect that they will not be held accountable for their actions, and by their Motion, they attempt to avoid accountability and responsibility for the harm intentionally done to Ms. Canales and M Squared.

Over time, Defendants have reluctantly admitted that both statements were absolutely false. In an Affidavit filed on August 23, 2006, Defendants admitted that "the 'debarred for life' report was erroneous, and that Plaintiff Canales had not in fact been debarred" as falsely reported in the two SARs to Congress.[2] In their Memorandum filed on September 29, 2006, Defendants now admit "Ms. Canales was not engaged in any "ongoing procurement" at the time when she made her false writing" and that "the Administrative Record does not support" the Debarring Official's decision and legal position that Ms. Canales was convicted of "making a false writing in connection with an ongoing procurement."[3]

However, while admitting that their statements and debarment actions were unjustified, Defendants continue their shameless attack on Ms. Canales by now asserting that this Court's "two orders enjoining M Squared's debarment"[4] should be set aside "because they were based on inaccurate information Ms. Canales provided to the Court."[5] First, they take Ms. Canales's statements that she started M Squared's contracting business operations in January 2003, and replace the word "started" with "incorporated" (a word never used by Ms. Canales in any affidavit or declaration).[6] Defendants then introduce evidence that the incorporation of M Squared was actually accomplished on July 1, 2002.[7] Through this verbal "slight of hand,"

---

[1] Defs.' Mem. at p. 16. (Dkt. No. 35).
[2] *See* Affidavit of Mr. Richard K. Delmar, dated August 18, 2006. (Dkt. No. 21-3).
[3] Defs.' Mem. at p. 7.
[4] Defs.' Mem. at p. 6.
[5] Defs.' Mem. at p. 8-9.
[6] Defs.' Mem. at p. 6-7.
[7] Defs.' Mem. at p. 7–8.

Defendants conclude that Ms. Canales lied to the Court and that the Court's orders are based on this alleged materially false information. Defendants accusations are baseless and nothing more than a red herring.

First, Ms. Canales never stated to the Court in any affidavit or declaration that she "incorporated" M Squared in January 2003. Rather, she stated that she "started" M Squared in January 2003 and that, "in its first year in business, 2003, M Squared had contracts in the private sector."[8] Ms. Canales went on to state that M Squared gained its first government subcontract in April 2004 and its first government prime contract in September 2004.[9] These statements are absolutely true and Defendants offer no evidence to the contrary; indeed, it is both undisputed and unchallenged by Defendants that M Squared conducted no business, in the private or government sectors, prior to January 2003.[10]

Second, Defendants make this defamatory attack on Ms. Canales and this Court's prior orders **only after** advising Plaintiffs and the Court that **"Defendants are voluntarily withdrawing M Squared's debarment"** and that **"this withdrawal effectively deprives the Court of subject matter jurisdiction"** and **"moots the Court's two orders enjoining M Squared's debarment."**[11] It is not difficult to divine the motives of Defendants in attempting to "punch the noses" of Plaintiffs and the Court and then run for shelter by asserting that neither can respond to Defendants' attacks because Defendants have effectively unilaterally divested the Court of jurisdiction by their actions. This further attempt to injure Ms. Canales's reputation only illuminates Treasury's improper vendetta that it is attempting to maintain against Ms.

---

[8]  Affidavit of Maria Canales, July 28, 2006, ¶¶ 8–9, Plaintiffs' Application for Preliminary Injunction, Exhibit 1 thereto. (Dkt. No. 8-1).
[9]  Plaintiffs' Statement of Undisputed Facts, ¶¶ 18-20. (Dkt. No. 30).
[10]  *See* Defendants' Responses to Plaintiffs' Statement of Material Facts Not in Genuine Dispute, ¶¶ 18 – 26 (Dkt. No. 35).
[11]  Defs.' Mem. at p. 1 – 2 (emphasis added).

Canales. Such continued shameless conduct by senior government officials should not be tolerated by this Court.

Defendants have finally admitted that the debarment of M Squared is without merit or support in the Administrative Record.[12] Defendants' contention that they have remanded the decision to themselves and that this Court is thereby divested of jurisdiction over the debarment of M Squared, however, is nothing short of preposterous. Rather, based on their own admissions and withdrawal of their grounds for debarment, the Court should grant M Squared's Motion for Summary Judgment as uncontested.

Defendants have also admitted that the alleged grounds for Ms. Canales's debarment – that she was convicted of "making a false writing in connection with an ongoing procurement." – is baseless and without any support in the Administrative Record.[13] Accordingly, the Court should also grant Ms. Canales's Motion for Summary Judgment as uncontested.

## ARGUMENT

**I.     THIS COURT SHOULD GRANT SUMMARY JUDGMENT FOR M SQUARED.**

    **A.     The Government's "Withdrawal" of the Debarment of M Squared is an Unequivocal Admission that the Debarment Decision was Without Merit and this Court should Grant Summary Judgment for M Squared and Deny Defendants' Request for Remand.**

The Defendants concede that the debarment of M Squared is not sustainable by voluntarily withdrawing that debarment. However, the Defendants then suggest that they have already remanded back to Treasury for further consideration the issue of whether to debar M Squared ("The Department of the Treasury ... remands for further consideration the June 27,

---

[12] *See* Letter from Thomas A. Sharpe to M Squared Strategies, Inc., dated September 29, 2006, a copy of which is attached to Defs.' Mem. as Exhibit A thereto. (Dkt. No. 35).
[13] *See* Defs.' Mem. at p. 7.

2006, debarment notice issued to M Squared Strategies, Inc.").[14]  Such a purported action by Defendants is null and void, as only this Court has the authority to remand this matter after final agency action and assumption of jurisdiction over the matter by this Court.

Simply put, the Defendants do not have the authority to remand this matter to the Treasury Department in order to add facts or findings to the Administrative Record to support the previously issued debarment of M Squared.  Indeed, the Defendants do not cite to any authority permitting such unilateral agency action.  Instead, the Defendants merely cite a litany of cases discussing the limits of this Court's jurisdiction in other contexts.[15]  None of the cases cited by the Defendants discusses an agency's power to unilaterally remand a final agency action (in this case, the decision to debar M Squared) after the final agency action has been made and after a U.S. District Court has taken jurisdiction of the review of the final agency action.

There is no question that the June 27, 2006 debarment notice to M Squared constituted final agency action.  Moreover, the "withdrawal" of the debarment does not make the action any less final.  The very cases cited by the Government in their memorandum in support of their Motion to Dismiss and for Voluntary Remand support this conclusion.[16]  Plaintiffs agree that the "'core question' for determining finality is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties."[17]  In this case, there is no question that not only was a final agency decision made, but that the same final decision has already irreparably harmed M Squared.[18]  Mere withdrawal of M

---

[14] *See* Letter from Thomas A. Sharpe to M Squared Strategies, Inc., dated September 29, 2006, a copy of which is attached to Defs.' Mem. as Exhibit A thereto.  (Dkt. No. 35).
[15] Defs.' Mem. at p. 3.
[16] *See, e.g.*, *Dalton v. Spencer*, 511 U.S 462, 470 (1994) (discussing the "core question" for determining whether an agency action is final).
[17] *Id.* (quoting Franklin v. Massachusetts, 505 U.S. 788 (1992)).
[18] *See* Supplemental Declaration of Maria Canales, dated August 16, 2006, at ¶¶ 3-4 (noting M Squared's loss of business as a consequence of its debarment), a copy of which is attached to M Squared's Application for Temporary Restraining Order as Exhibit 2 thereto (Dkt. No. 18-2).

Squared's debarment now, therefore, cannot undo the finality of the agency's action in the first instance, and only shows that Defendants concede that the debarment of M Squared was arbitrary, capricious, and contrary to law.

There is also no question that this Court's jurisdiction was properly invoked and Defendants have already submitted to the jurisdiction of this Court. Indeed, both parties have concluded briefing on cross motions for summary judgment before this Court. Under these circumstances, M Squared is entitled to judicial review of the Debarring Official's decision and Defendants lack the authority to remand the matter to themselves in a post hoc effort to divest this Court of jurisdiction.[19]

While the Court unquestionably possesses the power to remand this matter to Treasury, there is no showing in this case that an exercise of that power is warranted. Remand of final agency decisions is only appropriate on Plaintiff's motion (or a joint motion) where Plaintiff can show that the Government failed to consider factors that **already existed** in the administrative record.[20] In this case, unlike in *Roemer*, Plaintiffs are not asking for remand of the debarment decision. On the contrary, Plaintiffs ask this Court to issue summary judgment declaring that the June 27, 2006 debarment of M Squared (and Ms. Canales) was arbitrary, capricious, and contrary to law. Furthermore, Plaintiffs do not contend that the Debarring Official did not consider all of the facts in the Administrative Record. Rather, Plaintiffs assert, and Defendants now concede, that based on the evidence in the Administrative Record, there is no basis to debar Plaintiffs.

---

[19] *See generally*, 5 U.S.C. § 702 (discussing an aggrieved party's right to have judicial review of an agency's action).

[20] *See, e.g.*, *Roemer v. Hoffman*, 419 F.Supp. 130, 132 (D.D.C. 1976) (remanding debarment decision to agency upon showing by plaintiff that the agency failed to consider certain factors present in the administrative record). *Cf. Silverman v. United States Dept. of Defense*, 817 F. Supp. 846, 849-50 (S.D. Cal. 1993) (terminating debarment because the court found that the agency failed to consider evidence in the administrative record).

Nevertheless, the Defendants argue that, because they did not consider counsel's post-hoc rationalization, *i.e.*, that Ms. Canales is the alter ego of M Squared, they should now be allowed to withdraw the final agency decision in order to reconstruct the Administrative Record to repair their decision to debar M Squared – a decision already made and already enjoined.[21] This is, of course, improper.[22] Indeed, this Court recognized that "there appears to be no evidence in the Administrative Record supporting Government counsel's contention that Sharpe made a determination that M Squared was Canales's alter ego and based his decision on that finding."[23] There is no basis to allow new rationalizations or new fact finding for after-the-fact support of final agency decisions.

Nevertheless, the Government apparently intends to have this matter remanded to Treasury so that it may "form a decision that reflects the facts."[24] In light of their vendetta against Ms. Canales, this statement cannot be seen as anything other than a pretext for Treasury's intent to fabricate new facts or new justifications to support their decision to debar M Squared, which is, again, a final agency decision that is already under review by this Court. Thus, the inescapable conclusion is that the debarment of M Squared is without merit and should be dismissed.

There simply is no showing that the final agency decision in this case was not based on all of the facts in the Administrative Record. Indeed, the Debarring Official states in his debarment notice to Ms. Canales that, "**[g]iven the facts** and nature of your offense debarment is

---

[21] Defs.' Mem. at pp. 2-3.
[22] *See Caiola v. Carroll*, 851 F.2d 395, 400, 1997 WL 488745 at *3 (D.C. Cir. 1988) (noting that where assertions are made without support in the administrative record, the court "will not address counsel's post hoc rationalizations") (citations omitted); *see also*, Mem. Op. dated August 30, 3006 (Dkt. No. 28) at p. 12 ("[the Court] must consider only the rationale an agency gives for its actions and not 'post hoc rationalizations by … government agency counsel.'" (quoting *Ace Motor Freight, Inc. v. I.C.C.*, 557 F.2d 859, 864 (D.C. Cir. 1977)).
[23] Mem. Op. dated August 30, 3006 at p. 12.
[24] *See* Letter from Thomas A. Sharpe to M Squared Strategies, Inc., dated September 29, 2006, a copy of which is attached to Defs.' Mem. as Exhibit A thereto. (Dkt. No. 35).

the appropriate course of action."[25]  Similarly, in the debarment notice to M Squared, the Debarring Official states, "**[a]fter consideration of the information presented**…."[26]  These statements clearly indicate that all of the facts in the Administrative Record were considered by Treasury when it made its decision to debar Plaintiffs and that Defendants now admit that none of those facts provided justification for the debarment of M Squared.  Consequently, because there is no evidence or justification in the Administrative Record to support the debarment of M Squared, there is no reason to remand this matter back to Treasury for further consideration and this Court should grant summary judgment in favor of M Squared.

> **B.  Even in the Absence of Defendants' Admissions, M Squared is Entitled to Summary Judgment Because the Alleged Basis for Debarment of Canales Cannot be Imputed to M Squared as a Matter of Law.**

The Government goes to great lengths to argue that Ms. Canales has essentially perpetrated a fraud upon this Court because she stated that she started the business of M Squared in January 2003, when, in fact, M Squared was incorporated in July 2002.[27]  According to the Government, this discrepancy means that the Court should uphold the debarment of M Squared because the debarment of Ms. Canales can be imputed to M Squared, since M Squared was incorporated at the time Ms. Canales made her false statement.[28]  This mudslinging campaign by the Government is not surprising in that the Government appears to be attempting to shift the Court's focus from Treasury's shortcomings in this case and failure to explain why it twice published false public statements regarding Ms. Canales in the two SARs to Congress.  However, the accusations by the Government miss the point and only serve to obfuscate the reality that the debarment of M Squared is without merit.

---

[25]   AF CAN 0011 (emphasis added).
[26]   AF CAN 0013 (emphasis added).
[27]   Defs.' Mem. at pp. 6-9.
[28]   *Id.*

As an initial matter, Ms. Canales never intended to mislead or lie to this Court. Technically, although M Squared was incorporated in 2002, it did not "start" business until 2003. Ms. Canales never stated to this Court in any affidavit or declaration that she "incorporated" M Squared in January 2003. **Rather, she stated that she "started" M Squared in January 2003 and that, "in its first year in business, 2003, M Squared had contracts in the private sector."**[29] Ms. Canales went on to state that M Squared gained its first government subcontract in April 2004 and its first government prime contract in September 2004.[30] These statements are absolutely true and Defendants offer no evidence to the contrary; indeed, it is both undisputed and unchallenged by Defendants that M Squared conducted no business, in the private or government sectors, prior to January 2003.[31]

More importantly, however, the apparent misunderstanding regarding the date on which M Squared was "incorporated" and when M Squared "started" with active business is irrelevant insofar as it relates to the debarment of M Squared. In order for the debarment of Ms. Canales to be imputed to M Squared, Canales's criminal conduct must have "occurred in connection with [her] performance of duties for or on behalf of the contractor, or with the contractor's knowledge, approval, or acquiescence."[32]

In this case, no matter when M Squared was incorporated or when it started business, there is no question that Canales's criminal conduct did not occur in connection with her performance of duties for or on behalf of M Squared. The false statement to which Ms. Canales pleaded guilty related to certain gifts Ms. Canales received during her employment at Treasury; there is nothing in the record to suggest that the false statement was made in connection with her

---

[29] Affidavit of Maria Canales, July 28, 2006, ¶¶ 8–9 (emphasis added), a copy of which is attached to Plaintiffs' Application for Preliminary Injunction, Exhibit 1 thereto. (Dkt. No. 8-1).
[30] Plaintiffs' Statement of Undisputed Facts, ¶¶ 18-20. (Dkt. No. 30).
[31] *See* Defendants' Responses to Plaintiffs' Statement of Material Facts Not in Genuine Dispute, ¶¶ 18 – 26.
[32] *See* FAR § 9.406-5(a).

duties for or on behalf of M Squared. Indeed, under a best-case scenario for the Government's position, M Squared was incorporated three weeks **after** the date on which Ms. Canales made the false statement, when M Squared was formally registered with the state of Maryland. Given the fact that M Squared was only, at best, a "paper company," without any active business or employees in July 2002, much less engaging in government contracting,[33] it exceeds the bounds of reality to suggest that Ms. Canales's false statement occurred in connection with her duties for or on behalf of M Squared.

Moreover, FAR § 9.406-5(a) provides that "[t]he contractor's acceptance of the benefits derived from the conduct shall be evidence of such knowledge, approval or acquiescence." Thus, the relevant inquiry regarding whether debarment of Canales should be imputed to M Squared is whether M Squared benefited from Ms. Canales's conduct, which it clearly did not. Certainly, the Defendants offer no evidence of any such "benefit" to M Squared in the Administrative Record or anywhere in their subsequent papers, affidavits, or attachments. In fact, the Government does not even allege that M Squared benefited from Ms. Canales's conduct.

Therefore, regardless of the date on which M Squared was incorporated or commenced doing business, it is clear that M Squared was not in the business of government (or even private) contracting at the time Canales made the false statement.[34] Under the undisputed facts of this case, the technical difference of "incorporation" and "start" of a business is a distinction without a difference. Thus, as it is clear and undisputed that M Squared did not derive any benefit from Ms. Canales's conduct while she was an employee at Treasury, Defendants' manufactured

---

[33] *See* Declaration of Maria Canales at ¶ 8 (explaining that M Squared's first government contract, which came in the form of a subcontract, was not until April 2004), attached as Exhibit 2 to Plaintiffs' Application for Preliminary Injunction (Dkt. No. 7).

[34] *See id.*

"misrepresentations" are irrelevant as a matter of law to the issues in this case and do not provide any legal basis to deny M Squared's Motion for Summary Judgment.

Finally, had the Government truly believed that there was any merit to its claim that Ms. Canales was perpetrating "fraud" on this Court, it would have filed a motion for Relief from Order, pursuant to Fed. R. Civ. P. 60(b)(3), not just raise it as a suggestion after they argue that they have unilaterally divested this Court of jurisdiction over any matters involving M Squared. Instead, because it knows that it does not have grounds for such a motion, the Government merely cavalierly raises the specter of fraud on an immaterial issue in an attempt to smear Ms. Canales and further its own vendetta against her. Once again, the Government uses a "hit and run" tactic by making an improper allegation while simultaneously running from this Court's jurisdiction. This Court should not abide such cowardly and improper behavior.

**II.    THE DEBARMENT AGAINST MS. CANALES IS NOT SUSTAINABLE AND THIS COURT SHOULD ALSO GRANT SUMMARY JUDGMENT IN FAVOR OF MS. CANALES AS A MATTER OF LAW**

The Government now urges, for the first time, that the "primary basis" for the debarment of Ms. Canales was her conviction of a criminal offense, which "demonstrates her lack of 'business integrity or business honesty.'"[35] This is yet another improper post-hoc rationalization by counsel for the Government.[36] There is no testimony from any Government witness stating that the "primary basis" for Ms. Canales's debarment is that she was convicted of a false statement, notwithstanding that the false statement was unrelated to an ongoing procurement. Nor is there any such evidence or support for this new theory in the Administrative Record. Indeed, such an argument rings hollow when viewed in light of Treasury's notice of intent to

---

[35] Defs.' Mem. at p. 10.
[36] See footnote 17, supra.

- 11 -

debar Ms. Canales[37] and the two false statements in the two (now admittedly) erroneous SARs to Congress, which make a point of claiming that Ms. Canales's false statement was in connection with an ongoing procurement.[38] Consequently, this thinly veiled attempt to recreate another post-hoc basis or justification for debarment of Ms. Canales should be summarily rejected.[39]

Moreover, in order to debar Ms. Canales for her false statement under FAR § 9.406-2(a)(5),[40] the Government must show that the false statement demonstrates "a lack of business integrity or business honesty that **seriously and directly affects the present responsibility** of a Government contractor…."[41] Notably, the Government does not argue that Ms. Canales is not presently responsible. Rather, the Government engages in its now familiar tactic of trying to paint Ms. Canales in a false light without explaining how the allegations affect Ms. Canales's present responsibility as a government contractor.[42] The Government either is under the misapprehension that the latter part of FAR § 9.406-2(a)(5) is inapplicable to its determination of whether to debar Ms. Canales or it knows it cannot prevail on such an absurd argument. In any event, even if Ms. Canales is viewed as a contractor as that term is defined by FAR, the record simply does not support the June 27, 2006 debarment of Ms. Canales because she is presently responsible.

It is undisputed that M Squared is currently contracting with the Department of Veterans Affairs (the "DVA") and the Department of Energy (the "DOE") and that M Squared has not

---

[37] *See* AF CAN0014.
[38] Plaintiffs' Application for Preliminary Injunction, Exhibits 5 and 6 thereto. (Dkt. Nos. 9-3 and 9-4).
[39] The Government admits that the justification for Ms. Canales's debarment, which is based on her conviction being related to an ongoing procurement, is unsupported by the record.
[40] This assumes that Ms. Canales is a "contractor" within the meaning of that term as it is defined by FAR § 9.403(1). As discussed *infra.*, however, Ms. Canales does not fall with the definition of "contractor" and her debarment should be terminated.
[41] FAR § 9.406-2(a)(5) (emphasis added). *See also*, *Burke v. v. United States Environmental Protection Agency*, 127 F.Supp.2d 235, 239 (D.D.C. 2001) ("The initiation of a debarment proceeding requires the existence of past misconduct; however, **the final decision to debar an individual must focus on that individual's present business responsibility**" (emphasis added)).
[42] Defs.' Mem. at pp. 11-13.

received any complaints from those agencies. It is further undisputed that those agencies were aware of Ms. Canales's conviction for a false statement at the time they entered into a contract with M Squared. Notwithstanding this evidence of M Squared's abundance of business integrity **and** present responsibility,[43] Treasury evidently believes that it is entitled to usurp the determinations made by the DVA and the DOE to contract with M Squared by debarring Ms. Canales. Amazingly, Treasury maintains this untenable position even though it has never had a single contract with Ms. Canales or M Squared and that Ms. Canales's only contract with Treasury was her employment contract, which ended two years before M Squared started its government contracting business. This action by Treasury only further proves the arbitrary and capricious nature of Ms. Canales's debarment.

Additionally, much has been made by the Government as to whether Ms. Canales is a contractor who is capable of being debarred in the first place.[44] According to the Government, the FAR defines a contractor as "any individual … [who] directly or indirectly submits offers for or is awarded, or reasonably expected to submit offers for or be awarded, a Government contract."[45] While Ms. Canales enjoys a career in a business that relies on government contracts, Ms. Canales is not personally a government contractor as that term is defined by FAR § 9.403(1).

---

[43]    *See Roemer*, 419 F.Supp. at 132 (D.D.C. 1976) (discussing the factors to be considered when determining the present responsibility of a contractor, which include "the contractor's character since the offense and conviction"); *see also Robinson v. Cheney*, 876 F.2d 152, 159-160 (D.C. Cir. 1989) (stating that "the Government must be able to fulfill its statutory duty of dealing only with responsible contractors…," but that a contractor with an agent who has performed "past misdeeds" in connection with the agent's employment for the government contractor may still be able to show that it is presently responsible because "the ultimate inquiry as to 'present responsibility' relates directly to the contractor itself, **not the agent or former agent personally responsible for its past misdeeds**") (emphasis added). Notably, in this case, in contrast to the agent's actions in *Robinson*, Ms. Canales's "past misdeeds" did not occur in connection with her employment by M Squared and, as mentioned, M Squared has multiple contracts with government agencies. Thus, M Squared is indisputably presently responsible.

[44]    Defs.' Mem. at pp. 10-11.

[45]    *Id.* at p. 11.

To support their position, that she is a government contractor, Defendants cite to what they call a DOE contract submitted by M Squared in which Defendants state that Ms. Canales was the "'individual [who] … indirectly … is awarded' the contract."[46] However, the exhibit to which the Government refers is not a contract with the DOE, it is a contract with the DVA. Moreover, there is nothing in that contract that states that Ms. Canales is the "individual [who] … indirectly … is awarded the contract." Indeed, although Ms. Canales is the contact person for M Squared, she is not even the party who signed the contract on behalf of M Squared.[47] Ms. Canales has simply not entered into any contract with any government agency and does not hold herself out to be an individual government contractor.

M Squared is the only government contractor. However, as the Government now admits, there is no basis in the Administrative Record to debar M Squared. Apparently unhappy with the lack of any basis to debar M Squared, the Government is attempting to punish a non-contractor, Ms. Canales, by debarring her individually. This is an improper use of the power to debar and should not be abided by this Court.[48] Because Ms. Canales is not a government contractor, there is no basis whatsoever to debar Ms. Canales. Thus, the debarment of Ms Canales was arbitrary and capricious and she should be awarded summary judgment as a matter of law.

### III. THE LATEST EXPLANATION AS TO WHY THE OIG IMPROPERLY INVOLVED ITSELF WITH THE DEBARRING OFFICIAL BY REQUESTING "FAST ACTION" ON THE DEBARMENT OF THE PLAINTIFFS IS NOT CREDIBLE.

In his Affidavit, the OIG's counsel states that his request for "fast action" from the Treasury Debarring Official on September 7, 2005 (before any debarment proceedings were ever initiated) "was solely related to my concern . . . that I had a pending FOIA request" to which he

---

[46] *Id.*
[47] *See* Plaintiffs' Exhibit 2b (Dkt. 8).
[48] *See* FAR 9.402(b).

could not respond because "the case was still open."[49] More than one year earlier, however, the OIG had twice reported to Congress – in April 2004 and again in October 2004 – that the investigation was "closed" and that Ms. Canales had been "debarred for life."[50] This new explanation – "stress" over "an aging FOIA request that could not be answered while the case was pending" – is as lacking in consistency with the OIG's prior statements as it is lacking in credibility. This trail of contorted stories and explanations is a sad commentary on government officials in the conduct of their official duties.

Previously, the Defendants tried to distinguish between what the OIG said and did and what the Debarring Official knew and did. In a classic example of "talking out of both sides of its mouth," the OIG now states that Ms. Canales's investigation was (a) "closed" and she was "debarred for life" when it was meeting its statutory obligations of publishing the SARs to Congress, and (b) "open" with no action taken when meeting its statutory obligations of responding to FOIA requests. The OIG's claim that the only purpose of communicating with the Debarring Official was "that I had an aging FOIA request that could not be answered while the case was pending," when the same OIG had twice reported to Congress that the investigation was "closed," and that Ms. Canales had been "debarred for life,"[51] lacks all credibility. The only credible explanation for the need for "fast action" is that the OIG was aware of the false information that was published to Congress and needed to "backfill" the record.[52]

---

[49] Affidavit of Mr. Richard K. Delmar, September 27, 2006, ¶ 4. (Dkt. 35).
[50] Plaintiffs' Application for Preliminary Injunction, Exhibits 5 and 6 thereto. (Dkt. Nos. 9-3 and 9-4).
[51] *Id.*
[52] It is also alarming to note that, in addition to Treasury's Orwellian "doublespeak" regarding the FOIA requests, the OIG has utterly failed to determine how the false and defamatory statements by the OIG were twice published in the SARs to Congress. Such a failure would be of concern if the OIG only once published such a false report, but for the OIG to twice publish such falsehoods and still not have any idea how such "mistakes" could have occurred is a glaringly unacceptable explanation. If anything this failure to provide an explanation and continued misconduct by the Government against an individual is sanctionable.

## CONCLUSION

WHEREFORE, for the aforementioned reasons, Plaintiffs respectfully request that this Court issue an order:

1. Denying Defendants' Motion for Remand of the debarment of M Squared Strategies, Inc.;

2. Denying Defendants' Motion for Summary Judgment;

3. Granting Plaintiffs' Cross Motion for Summary Judgment;

4. Awarding reasonable attorneys' fees and costs; and

5. Awarding any other relief to Plaintiffs that this Court finds just and proper.

DATED: October 13, 2006                    Respectfully submitted,


/s/ Steven D. Cundra
Steven D. Cundra, D.C. Bar No. 374074
Amy Epstein Gluck, D.C. Bar No. 453525
Nicholas M. Beizer, D.C. Bar No. 485894
**HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.**
1120 20th Street, N.W.
Suite 700, North Building
Washington, D.C. 20036
(202) 973-1200
(202) 973-1212 (fax)
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 13${}^{\text{th}}$ day of October, 2006, a copy of the foregoing document was served, via the Court's CM/ECF system, upon:

>John C. Truong
>Assistant United States Attorney
>555 4th Street, N.W.
>Room E-4206
>Washington, D.C. 20530
>John.Truong@usdoj.gov
>*Attorney for Defendants*

                                    /s/ Steven D. Cundra
                                    Steven D. Cundra

68004.1:230133:00420

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| MARIA CANALES and M SQUARED STRATEGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> HENRY M. PAULSON, SECRETARY OF THE UNITED STATES DEPARTMENT OF TREASURY *et al.*, <br><br> Defendants. | Civil Action No: 1:06CV01330 (GK) |

## ORDER

Upon consideration of Plaintiffs' Cross Motion for Summary Judgment and Plaintiffs' Opposition to Defendants' Motion to Dismiss and for Voluntary Remand, and the entire record herein, it is this ____ day of _____, 2006,

**ORDERED** that Plaintiffs' Cross Motion for Summary Judgment is hereby **GRANTED**; and it is

**FURTHER ORDERED** that Defendants' Motion for Summary Judgment is hereby **DENIED**; and it is

**FURTHER ORDERED** that Defendants' Motion to Dismiss and for Voluntary Remand is **DENIED**; and it is

**FURTHER ORDERED** that Plaintiffs' request for reasonable attorneys' fees and costs is hereby **GRANTED**.

**SO ORDERED**.

_____
U.S. District Judge

68016.1:230133:00420