UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARIA CANALES, ET AL., )<br>)<br>    Plaintiffs )<br>) <br>v. )<br>)<br>HENRY M. PAULSON, SECRETARY, )<br>DEPT. OF TREASURY, ET AL. )<br>    Defendants. )<br>_____) | Civ. No. 06-1330 (GK)<br>ECF |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND FOR
VOLUNTARY REMAND (Dkt. No. 36)**

**I.    Introduction**.

Plaintiffs, Maria Canales and her company, M Squared Strategies Inc. ("M Squared"), file this lawsuit under the Administrative Procedure Act ("APA") seeking to set aside the debarment against them. However, Defendants have now withdrawn the debarment notice against Plaintiff M Squared and, therefore, divest this Court of subject matter jurisdiction over M Squared's APA claims. M Squared fails to cite to any authority showing that the Court continues to have jurisdiction over its claim. The Court, therefore, should dismiss M Squared's APA claim for lack of subject matter jurisdiction.

As for Plaintiff Canales, the records supports her debarment because she is a government contractor who was convicted for submitting a false writing in violation of 18 U.S.C. §1018. Therefore, the Court should affirm Ms. Canales' debarment and grant summary judgment in Defendants' favor.

**II.     Argument.**

   **A.    The Court Lacks Subject Matter Jurisdiction Over M Squared's APA Claim Against Defendant.**

As explained in Defendants' Motion to Dismiss and for Voluntary Remand (Dkt. No. 35), Defendants' withdrawal of the debarment notice against M Squared effectively deprives this Court of subject matter jurisdiction over M Squared's APA claims. Def. Mot. at Mem. at 3-5.[1] Defendant explained that given the withdrawal of the debarment notice there no longer exists a final agency decision for the Court to review under the APA. Id.

M Squared, however, argues that Defendants' "'withdrawal' of the debarment does not make the action any less final." Pl. Mem. at 5 (Dkt. No. 39).[2] M Squared fails to cite to any authority to support this contention. In any event, this assertion simply lacks merit. Federal courts are courts of limited jurisdiction, possessing only the power conferred by the Constitution and statutes. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). It is not presumed that a cause of action lies within the federal court's limited jurisdiction, and the plaintiff bears the burden of establishing jurisdiction. Id.; Adelman v. UAL, Inc., 932 F.Supp. 331, 332 (D.D.C.1996). In an APA action context, the justiciability of a plaintiff's claim is exclusively predicated on the fact that plaintiff seeks review of an agency final decision. See 5 U.S.C. § 702.

---

   [1]    Defendants' Reply in Support of Motion for Summary Judgment; In Opposition to Plaintiffs' Cross Motion for Summary; and In Support of Motion to Dismiss and for Voluntary Remand (Dtk. No. 35) (hereinafter "Def. Mem.").

   [2]    Plaintiffs' Reply to Defendants' Opposition to Plaintiffs' Cross Motion for Summary Judgment and Plaintiffs' Opposition to Defendants' Motion to Dismiss and For Voluntary Remand (Dkt. No. 39) (hereinafter "Pl. Mem.").

In this case, the justiciability of M Squared's APA claims is based on the fact that it seeks to set aside its debarment notice. However, with M Squared's debarment notice now having been withdrawn, there no longer is any "final agency action" reviewable under the APA. See Bennett v. Spear, 520 U.S. 154, 178 (1997) (noting that the action must "be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'"). M Squared, however, has not cited one case showing that this Court can continue to have subject matter jurisdiction over M Squared's APA claim in the face of the withdrawal of its debarment notice. Without more, the Court should dismiss M Squared's APA claims for lack of subject matter jurisdiction.

Undeterred, M Squared then argues that "[t]here is simply no showing that the final agency decision in this case was not based on all of the facts in the Administrative Record." Pl. Mem. at 7. In support of this argument, M Squared contends that the Debarring Official stated in the debarment notice that "after consideration of the information presented" there is justification to debar M Squared. Pl. Mem. 7. Based on this fact, M Squared argues that Defendants cannot be allowed to withdraw or remand the matter to the agency for further consideration because the debarment notice is a final agency decision. Id. at 8.

As an initial matter, M Squared fails to provide any legal authority to support its position. Moreover, contrary to its assertions, Ms. Canales (M Square's sole stockholder and CEO) failed to "present" all relevant information to the Debarring Official at the administrative stage. Specifically, in response to Defendants' notice proposing to debar Ms. Canales from participating in government procurement contracts, on March 17, 2006, Ms. Canales (through counsel) stated, "[s]ince leaving the Department of Treasury, Ms. Canales **formed** M Squared

3

Strategies Inc." See CAN0109 (emphasis added). Ms. Canales left the Treasury Department in October 2002.[3] However, the records show that she incorporated M Squared on June 1, 2002, and, a month later, formed M Squared as a business entity on July 1, 2002, when she filed M Square's Articles of Incorporation with the Maryland Department of Assessments and Taxation. Cardellino v. Comptroller of the Treasury, 511 A.2d 573, 576 (Md. App. 1986) (noting that "since the articles [of incorporation] were filed . . . the creation of the corporate entity is conclusively established."); Def. Mot. at Mem. at 6-8 (Exhs. C and D). Therefore, contrary to her statement to the Debarring Official, the forming of M Squared occurred three months prior to her resignation from the Treasury Department in October 2002. Furthermore, there is no dispute that in March 2006 Ms. Canales knew of the true existence of M Squared (she is one of M Squared's incorporators) but she withheld the information from the Debarring Office. Simply put, Ms. Canales provided inaccurate information to the Debarring Official during the administrative process. As explained in Defendants' Motion, in light of this fact and others, Defendants have withdrawn M Squared's debarment to review the relationship between Ms. Canales and M Squared. Def. Mot. at Mem. at 3.[4]

---

[3] See Affidavit of Maria Canales at ¶ 6 (filed July 28, 2006) (Dkt. No. 2) (stating "[i]n late October 2002, I voluntarily resigned as an employee of treasury ."); Affidavit of Maria Canales at ¶ 6 (filed Aug. 2, 2006) (Dkt. No. 5); Affidavit of Maria Canales at ¶ 6 (filed on Aug. 9, 2006) (Dkt. No. 8-1); Affidavit of Maria Canales at ¶ 34 (filed Aug. 9, 2006) (Dkt. No. 8-2).

[4] Courts routinely grant motions for voluntary remand in record review cases where the agency recognizes that consideration of additional issues is warranted. See, e.g., Bublitz v. Brownlee, 309 F. Supp.2d 1, 4 (D.D.C. 2004); see also Southern California Edison Corp. v. FERC, 415 F.3d 17, 21 (D.C. Cir. 2005); Oz Technology Incorporated v. EPA, 129 F.3d 631, 634 (D.C. Cir. 1997).

**B.     The Court Should Set Aside Its Injunctive Orders and Grant Summary Judgment in Defendants' Favor**.

Even assuming that the Court has subject matter jurisdiction over M Squared's APA claim, the Court should nevertheless set aside its injunctive orders and grant summary judgment in Defendants' favor because Ms. Canales provided inaccurate information to the Court about M Squared's existence. There is no dispute that Ms. Canales incorporated M Squared on June 1, 2002, and, a month later, started the company on July 1, 2002, when she filed M Squared's Articles of Incorporation with the Maryland Department of Assessments and Taxation. See Def. Mot. at Mot. at 7-8 (Exhs. B-C). However, Ms. Canales, in her several affidavits to the Court, attested that she "started" M Square in January 2003.[5]

Based on this inaccurate information, the Court issued two orders enjoining Defendants' debarment of M Squared. In doing so, the Court found that "[Ms.] **Canales's criminal conduct occurred** while she was still an employee at Treasury, and thus before her career as a government contractor had begun and **before M Squared had even been incorporated**.."[6] Canales v. Paulson, No. 06-1330 (GK), slip op. at 10-11 (D.D.C. Aug. 30, 2006) (Dkt. No. 28). The record now shows the contrary.

---

[5]     See Affidavit of Maria Canales at ¶ 6, 8 (filed July 28, 2006) (Dkt. No. 2); Affidavit of Maria Canales at ¶ 6,8 (filed Aug. 2, 2006) (Dkt. No. 5); Affidavit of Maria Canales at ¶ 6, 8 (filed on Aug. 9, 2006) (Dkt. No. 8-1); Affidavit of Maria Canales at ¶ 3-4 (filed Aug. 9, 2006) (Dkt. No. 8-2); Second Supplemental Affidavit of Maria Canales at ¶ 3 (filed Sept. 11, 2006) (Dkt. No. 30).

[6]     More egregiously, knowing that the Court reached this conclusion based on inaccurate information, Ms. Canales did nothing to correct the record or inform the Court of the accurate fact. In fact, she even relied upon the Court's conclusion to support her Cross Motion for Summary Judgment. See Plaintiffs' Cross Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment at 21 (Dkt. No. 30) (citing the Court's holding).

In an attempt to explain her inaccurate affidavits, Ms. Canales claims that she "never intended to mislead or lie to this Court." Pl. Mem. at 9. Ms. Canales also states that "[t]echnically, although M Squared was incorporated in 2002, it did not 'start' business until 2003." Id. Despite Ms. Canales' attempt to downplay her inaccurate information to the Court, the fact remains that she knew that M Squared was incorporated on June 1, 2002, and established as a business on July 1, 2002, and yet she withheld this information from the Court. If she had no intention of misleading the Court, Ms. Canales' several affidavits could have easily explained that she incorporated and established M Squared as a business in June and July 2002, respectively, but did not "start" the business until January 2003. Ms. Canales, however, chose to withhold the true existence of M Squared from the Court. Based on this inaccurate information, the Court issued its two injunctive orders enjoining the debarment of M Squared. In light of this revelation, Ms. Canales' inaccurate affidavits alone are sufficient grounds for the Court to set aside its two injunctions.

Ms. Canales then argues that "the apparent misunderstanding" of M Squared's incorporation is irrelevant. Pl. Mem. at 9. Ms. Canales further maintains that for her debarment "to be imputed to M Squared her criminal conduct must have 'occurred in connection with [her] performance of duties for **or** on behalf of the contractor, **or** with the **contractor's knowledge**, approval **or** acquiescence.'" Pl. Mem. at 9 (citing 48 C.F.R. § 9.406-5(a)) (emphasis added). Here, there cannot be any serious dispute that Ms. Canales' criminal conduct took place with M Squared's knowledge.

Specifically, as discussed above, Ms. Canales incorporated M Squared on June 1, 2002. Ms. Canales is also M Squared's sole stockholder and CEO. See Declaration of Maria Canales

at ¶ 4 (Dkt. No. 8-2).  Subsequently, on June 6, 2002, the Office of Inspector General interviewed Ms. Canales about gifts that she received – while an employee of the Treasury Department – from a male consultant.  Def. Mot. at Mem. at. 7.  As part of that investigation, Ms. Canales submitted a false writing on June 12, 2002.  Id.  This false writing led to her guilty plea for violating 18 U.S.C. § 1018.  Accordingly, Ms. Canales "criminal conduct" (i.e., submitting a false writing) occurred almost two weeks after she incorporated M Squared. Moreover, as M Squared's incorporator, sole stockholder, and CEO, Ms. Canales' knowledge is M Squared's knowledge.  Therefore, Ms. Canales' criminal conduct occurred with M Squared's knowledge.  See 48 C.F.R.  § 9.406-5(a).  Under these circumstances, Ms. Canales' criminal conduct can be imputed to M Squared and the Court should affirm M Squared's debarment on this basis.

      **C.**    **The Evidence Supports the Debarment of Ms. Canales.**

Ms. Canales argues that Defendants are advancing a "new theory" and "for the first time" claim that the "primary basis" for the debarment of Ms. Canales was her conviction of a criminal offense, which demonstrates her lack of business integrity or business honesty.  Pl. Mem. at 11. Ms. Canales' argument is inaccurate.

As explained from the beginning in Defendants' Motion for Summary Judgment, there are two bases for debarring Ms. Canales from participating in government procurement contracts.  Def. Mot. at Mot. at 11-15 (Dkt. No. 21).[7]  Defendants have consistently argued that the first (i.e., primary) basis for her debarment is because of Ms. Canales' conviction for

---

[7] Defendants' Motion for Summary Judgment and Opposition to Plaintiffs' Application for Preliminary Injunction and for Temporary Restraining Order (Dtk. No. 21) ("Def. Mot.").

submitting a false writing. Def. Mot. at Mot. at 11, 14. In fact, the Debarment Notice itself clearly shows that the first or primary basis for Ms. Canales' debarment is because of her conviction for submitting a false writing. See CAN0011.[8] Under the Federal Acquisition Regulations ("FAR"), such a conviction is grounds for debarment because it "demonstrates a lack of business integrity or business honesty and seriously and directly affects the present responsibility of a Government contractor. . ." 48 C.F.R. §9.406-2(a)(5). In any event, Ms. Canales did not even challenge this debarment basis until she opposed it for the first time in her current Reply brief. Therefore, she conceded the point. See Def. Mot. at Mem. at 10.

As a last effort to avoid debarment, Ms. Canales argues that she "is not personally a government contractor as the term is defined by 48 C.F.R. § 9.403.(1)." Pl. Mem. at 13. Ms. Canales also maintains she "has simply not entered into any contract with any government agency and does not hold herself out to be an individual government contractor." Pl. Mem. at 14. These assertions, like those about when she "started" M Squared, are simply inaccurate and not supported by the record.

For instance, in a May 26, 2005 contract with the U.S. Department of Energy, Ms. Canales signed that contract as the "contractor." See Exh. A.[9] In "Box 19b – Name of Contractor" of the contract, Ms. Canales signed her name and held herself out as a "contractor." This evidence alone conclusively demonstrates that she is a "government contractor" under the

---

[8] The Debarment Notice describes the second basis as "[f]urther, causes for debarment also include" a commission of a criminal offense in connection with an ongoing procurement. CAN00111. The "further" indicates that this reason for debarment is a secondary basis for debarment.

[9] Ms. Canales previously submitted this contract as Exhibit D to her Application for Preliminary Injunction (Dkt No. 8).

8

FAR.  The record establishing Ms. Canales as a government contractor does not end there.  In response to Defendants' proposal to debar her, Ms. Canales stated,

> In summary, **Ms. Canales has proven to be an excellent contractor the entire time she has done business with the United States government**.  It is in the best interest of the government to continue to do business with her . . . **Her performance** as a public servant and **currently a government contractor** has been without criticism.

See March 17, 2006 Letter (A.R. at CAN0111) (emphasis added).  Moreover, the Court implicitly found that Ms. Canales is a "government contractor" when the Court held that "Canales' criminal conduct occurred while she was still an employee at Treasury, and thus **before her career as a government contractor had begun**."  Canales, slip op. at 11 (Dkt No. 28) (emphasis added).  Under these facts, Ms. Canales cannot deny that she is not a "government contractor" under the FAR.

Finally, Ms. Canales argues that "even if Ms. Canales is viewed as a contractor as that term is defined by FAR, the record simply does not support the June 27, 2006 debarment of Ms. Canales because she is presently responsible."  Pl. Mem. at 12.  The "present responsibility" inquiry directly relates to the contractor itself.  See Robinson v. Cheney, 876 F.2d 152, 161 (D.C. Cir. 1989); Burke v. EPA, 127 F. Supp.2d 235, 239 (D.D.C. 2006) (noting that "the final decision to debar an individual must focus on that individual's present business responsibility.").  Here, the record shows that Ms. Canales is a "government contractor" and M Squared's sole stockholder and CEO and, therefore, she has the "present business responsibility" of soliciting, negotiating, procuring, performing government contracts for herself and her company  See Burke, 127 F. Supp.2d at 239.  Under these facts, the Court should affirm Ms. Canales' debarment under 48 C.F.R.  § 9.406-2(a)(5) because she is a government contractor who was

9

convicted for submitting a false writing.

## III. Conclusion.

For these reasons and those stated in Defendants' previous filings, the Court should dismiss Plaintiff M Squared's APA claim for lack of subject matter jurisdiction because Defendants have withdrawn its debarment. The Court should affirm the debarment of Plaintiff Canales and grant summary judgment in Defendants' favor. Finally, the Court should deny Plaintiffs' Cross Motion for Summary judgment and dismiss the rest of the case with prejudice.[10]

Dated: October 25, 2006.                            Respectfully Submitted,

                                            /s/   Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

                                            /s/    Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

                                            /s/   John C. Truong
JOHN C. TRUONG, D.C. BAR #465901
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0406

---

[10] Defendants note that Plaintiffs' Memorandum is replete with baseless and gratuitous negative comments about the agency and counsel. However, Defendants will not dignify these comments by responding to them. In any event, these comments are irrelevant and, based on the record, Defendants are still entitled to dismissal or summary judgment as a matter of law.

Attorneys for Defendants