UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARIA CANALES**, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
|   v. | )   Civil Action No. |
| | )   06-1330 (GK) |
| **HENRY M. PAULSON**, | ) |
| | ) |
|     Secretary of the | ) |
|     Treasury, et al., | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs, Maria Canales and M Squared Strategies, Inc. ("M Squared" or the "company"), bring this case against Henry M. Paulson, Secretary of the Treasury, Thomas A. Sharpe, Jr., Senior Procurement Executive, United States Department of the Treasury ("Treasury" or the "Department"), and Dennis S. Schindel, Treasury's Acting Inspector General, challenging June 27, 2006 Debarment Notices issued by Treasury precluding them from contracting with the federal government for a period of three years.

This matter is currently before the Court on Defendants' Motion for Summary Judgment [Dkt. No. 22], Plaintiffs' Cross Motion for Summary Judgment [Dkt. No. 30], and Defendants' Motion to Dismiss in Part [Dkt. No. 36]. Upon consideration of the Motions, Oppositions, and Replies, and the entire record herein, and for the reasons stated below, Defendants' Motion for Summary Judgment is

hereby **denied**, Plaintiffs' Cross Motion for Summary Judgment is hereby **granted in part**, and Defendants' Motion to Dismiss in Part is hereby **granted**.

## I.   BACKGROUND

### A.   **Facts**[1]

Between 1999 and 2002, Maria Canales was employed by the United States Department of the Treasury and served in various capacities at that agency.  For a brief period in 2002, she held the title Acting Deputy Assistant Secretary and Acting Chief Information Officer.  She resigned in October 2002.  Before her resignation, on June 1, 2002, Canales incorporated M Squared.[2]  A Maryland corporation with twenty employees, M Squared provides management consulting services primarily to government agencies.  Canales is the sole shareholder of M Squared and serves as its Chief Executive Officer.

---

[1] Pursuant to Local Civil Rule 7(h), "[i]n determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Accordingly, unless otherwise noted, the facts recited herein are taken from the parties' Statements of Material Facts Not in Dispute.

[2] Canales maintains that she "started" M Squared in January 2003, and that 2003 was M Squared's first year "in business." Defendants dispute this representation as misleading and request that the Court vacate its temporary restraining order and preliminary injunction as based on the allegedly false information provided by Plaintiffs.  Because the Court dismisses as moot M Squared's claim and grants summary judgment for Canales, it need not reach this issue.

In October 2001, while Canales was still employed at Treasury, the Department allocated $5.7 million for contracts relating to cyber-security software and consulting services. At that time, John M. Neal, an individual with whom Canales had been acquainted for several years, was working as a consultant for companies seeking those contracts. While the Department was considering various bids, including bids from companies Neal was representing, Canales and her husband vacationed in Malta with Neal and stayed at a time-share property belonging to Neal's companion. Subsequently, Canales received a Greek vase and several emerald chips from Neal. In March 2002, Treasury awarded a sole source subcontract worth $1.5 million to one of the companies Neal represented. Canales signed the sole source justification for that subcontract.

Later in March 2002, Treasury's Office of the Inspector General ("OIG") began investigating allegations that there was a connection between Canales' relationship with Neal and the award of a sole source subcontract to Neal's client. On June 6, 2002, a representative from OIG interviewed Canales regarding the gifts she received from Neal. In the course of that interview, Canales made false statements, including denying that she had received emerald chips, which were later memorialized in an affidavit she signed.

Those false statements led the U.S. Attorney for the District of Columbia to file a one-count Information against Canales in April 2004, charging her with making a false writing during an

official investigation, a misdemeanor offense under 18 U.S.C. § 1018. Canales subsequently pleaded guilty and was sentenced to a term of probation. Her plea agreement, and the Government's allocution at her sentencing, made clear that no connection had been established between the gifts Canales received and the contract Neal's client won. The Government specifically stated in its allocution that there was "no allegation that Canales broke any of the bribery or gratuity laws or corruption offenses" and that her sole offense was making a "false written statement to the Inspector General." Sentencing Hr'g Tr., United States v. Maria Canales, No. 04-CR-135 (D.D.C. July 13, 2004).

In April 2004, Treasury's OIG published its semi-annual report to Congress. In that document, the OIG inaccurately reported that, as a result of its investigation, Canales had voluntarily agreed to a lifetime debarment from contracting with the federal government. The OIG repeated that inaccurate statement in its next semi-annual report to Congress, in October 2004. In its Opposition to Plaintiffs' Motion, the Government concedes that OIG's statements were false and represents that OIG intended to correct them in its next semi-annual report to Congress, which was due to be published in October 2006. See Defs.' Opp'n and Mot. for Summ. J. at 6-7.[3]

---

[3] It would appear that OIG has amended the statements. See OFFICE OF INSPECTOR GENERAL, DEP'T OF TREASURY, SEMI-ANNUAL REPORT TO CONGRESS (Sept. 30, 2006), available at <http://www.treas.gov/inspector-general/semiannual-reports/aprsep06.pdf>, at 22-23.

In November 2005, Thomas Sharpe, Treasury's Senior Procurement Executive, initiated proceedings to debar Canales. She was represented by counsel during those proceedings, and had opportunities to make legal arguments and present factual documentation in opposition. During that process, she argued, <u>inter alia</u>, that a consideration of several mitigating factors would counsel against debarment in her case. <u>See</u> Admin. R. at CAN0111.

By Notice dated June 27, 2006, Sharpe informed Canales that he had decided to debar her, effective immediately. While he acknowledged that she had presented mitigating factors, he concluded that "[g]iven the facts and nature of your offense debarment is the appropriate course of action." Admin. R. at CAN0011. The debarment, he explained, would apply "throughout the executive branch of the Government" for a period of three years. <u>Id.</u> at CAN0012. As grounds for his action, Sharpe cited Canales' "conviction of a criminal offense," specifically, "making a false writing in connection with an ongoing procurement." <u>Id.</u> at CAN0011. He further explained that M Squared would be debarred for the same period on the ground that Canales is its "sole stockholder and Chief Executive Officer," and therefore a "principal" of the company. <u>Id.</u> at CAN0012. Sharpe also sent a separate Debarment Notice to M Squared, addressed to the attention of Canales.

At the time the debarment took effect, Plaintiffs' entire

business consisted of four contracts with various federal agencies for management consulting services.[4] One of those contracts was terminated on July 31, 2006. Of the remaining three contracts, two were funded through September 2006 and one was funded through November 2006.

### B. Procedural History

Plaintiffs filed their Complaint, together with a Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 2], on July 28, 2006. Finding that Plaintiffs had not established a substantial likelihood of success on the merits, the Motions Judge presiding that day denied their Motion for a Temporary Restraining Order but left open the possibility that a Preliminary Injunction could issue after more comprehensive briefing of the issues. See Dkt. No. 4. On August 9, 2006, Plaintiffs filed an Application for Preliminary Injunction [Dkt. No. 7].

On August 21, 2006, Plaintiff M Squared filed an Application for Temporary Restraining Order [Dkt. No. 18], solely on its own behalf. M Squared represented that the Application was necessary "to preserve the status quo until the Court can rule on the pending Application for P[reliminary] I[njunction]," which had been filed on behalf of both Plaintiffs. See Pl.'s Application for TRO [Dkt.

---

[4] When applying for each of these contracts, Canales disclosed her misdemeanor conviction to the relevant agencies. Neither she nor M Squared concealed or misrepresented that conviction while operating as a government contractor. None of the contracts were with the Department of the Treasury.

No. 18] at 1.  On August 30, 2006, the Court granted M Squared's Application, finding that the company had established irreparable harm and "at least a substantial possibility" that it would succeed on the merits, and that the balance of harms and public interest favored entry of temporary injunctive relief.

Despite the parties' on-the-record agreement that the Court should address Plaintiffs' Application for Preliminary Injunction before making final rulings on the merits, Defendants included a Motion for Summary Judgment in their Opposition to Plaintiffs' Application for Preliminary Injunction.  Soon thereafter, Plaintiffs filed a Cross Motion for Summary Judgment.  Because the Court found that Plaintiffs had established irreparable injury and a likelihood of success on the merits—and because it would have been unduly duplicative and wasteful of judicial resources to address the Application for Preliminary Injunction in any great detail when dispositive Motions would soon be fully briefed—the Court granted Plaintiffs' Application on September 15, 2006.  See Dkt. No. 32.

On September 29, 2006, while the instant Motions for Summary Judgment were being briefed, Treasury voluntarily withdrew M Squared's Debarment, informing the company that it intended to "re-evaluate whether to invoke the debarment process for M Squared." See Defs.' Opp'n, Reply, and Mem. in Support of Mot. to Dismiss Part [Dkt. No. 35], Ex. A ("Withdrawal Letter").  That same day,

Defendants filed a Motion to Dismiss those portions of the Complaint challenging M Squared's debarment. See Dkt. No. 36.

**II. STANDARD OF REVIEW**

**A.   The Instant Cross Motions for Summary Judgment**

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, a "court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); see also Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir. 1989). Ultimately, a court must determine "whether the evidence presents a sufficient disagreement . . . or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "If material facts are susceptible to divergent inferences, summary judgment is not available." Coward v. ADT Sec. Sys. Inc., 194 F.3d 155, 158 (D.C. Cir. 1999).

Where, as here, Plaintiffs challenge a discretionary action by an administrative agency, the Court must apply the deferential standard of review embodied in the Administrative Procedure Act ("APA"). See 5 U.S.C. § 706. That standard allows a court to set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "without observance of procedure required by law." See 5 U.S.C. § 706(2). Courts may not substitute their judgment for that of the agency, Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), and must limit the scope of their review to the administrative record. See Camp v. Pitts, 411 U.S. 138, 142 (1973). A court's role is to ensure that the agency's decision is based on relevant factors and not a "clear error of judgment." Id.

The deference a court must accord is not unlimited, however. For example, the presumption of agency expertise may be rebutted if its decisions are not reasoned. See ALLTEL Corp. v. F.C.C., 838 F.2d 551, 562 (D.C. Cir. 1988). Where an agency fails to articulate "a rational connection between the facts found and the choice made," Baltimore Gas & Elec. Co. v. Natural Res. Defense Council, 462 U.S. 87, 88 (1983), the Court "'may not supply a reasoned basis for the agency's action that the agency itself has not given.'" Dithiocarbamate Task Force v. E.P.A., 98 F.3d 1394, 1401 (D.C. Cir. 1996) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Furthermore, a

court may consider only the rationale an agency gives for its actions at the time they occur and not "post hoc rationalizations by . . . government agency counsel." Ace Motor Freight, Inc. v. I.C.C., 557 F.2d 859, 864 (D.C. Cir. 1977).

### B. The Instant Motion to Dismiss in Part

A motion to dismiss should only be granted if it appears that Plaintiff cannot establish "any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S.___, 127 S. Ct. 1955, 1969 (2007). Because motions to dismiss "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). Accordingly, on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must construe the factual allegations of the complaint in the light most favorable to the plaintiff, "granting plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (internal quotation omitted). However, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl., 127 S. Ct. at 1965.

### III. ANALYSIS

Plaintiffs mount a number of procedural and substantive attacks on the June 27, 2006 Debarment Notices issued to Canales and M Squared, respectively. Because Treasury issued two Debarment Notices, and has since withdrawn the Notice issued to M Squared, the Court will treat the two Notices separately.

### A. Canales' Debarment Must Be Set Aside Because the Debarring Official Did Not Explain His Consideration of the Mitigating Factors and Otherwise Failed to Articulate a Rational Basis for His Action

Plaintiffs contend that there is "no rational basis" for Treasury's debarment of Canales and that it was "based upon unlawful and improper considerations, which are unsupported and contrary to the F[ederal] A[cquisition] R[egulations]." Pls.' Cross Mot. for Summ. J. at 2, 19. After reminding the Court that debarment is a discretionary act, to be reviewed according to the APA's deferential standard of review,[5] the Government argues that "the evidence in the Administrative Record supports the Debarring Official's [decision] to debar Canales." Defs.' Mot. for Summ. J.

---

[5] There is no question that the APA applies here and that the court's review is, as Defendants point out repeatedly, limited. See Robinson v. Cheney, 876 F.2d 152, 155 (D.C. Cir. 1989). While serving on our Court of Appeals, however, former Chief Justice Warren Burger explained that debarment "directs the power and prestige of government at a particular person and . . . may have a serious economic impact on that person." Gonzalez v. Freeman, 334 F.2d 570, 578 (D.C. Cir. 1964). Consequently, whereas the majority of administrative review actions concern agency rules that often impact citizens only indirectly, the resolution of debarment cases "is a serious matter" that has an immediate and profound effect on the particular individuals involved. Commercial Drapery Contractors Inc. v. United States, 133 F.3d 1, 6 (D.C. Cir. 1998).

at 11.

> **1.  Although the Federal Acquisition Regulations Require the Debarring Official to Consider Mitigating Factors, There Is Insufficient Evidence in the Record that Sharpe Did So in Canales' Case**

The Federal Acquisition Regulations (the "FAR" or the "Regulations") govern debarment of federal contractors and set forth the substantive grounds for debarment as well as the procedural requirements an agency must satisfy when attempting to disqualify an individual from contracting with the government.[6] See 48 C.F.R. §§ 9.400 et seq. The Regulations make clear that debarment is a discretionary punishment and that agency officials have wide latitude to decide whether it is proper in any given case. See id. § 9.406-1. In all cases, however, debarment may be imposed "only in the public interest for the Government's protection and not for purposes of punishment." Id. § 9.402(b).

In addition to basic procedural rights, including notice and an opportunity to respond, the FAR require the Debarring Official ("DO") to take additional steps to ensure that debarment proceedings are fair and accurate and that debarment is warranted under the circumstances. The Regulations explain that "[t]he existence of a cause for debarment . . . does not necessarily

---

[6] Plaintiffs argue that Canales is not a "contractor" within the meaning of the FAR. See Pls.' Cross Mot. for Summ. J. at 19-20. While that argument is far from trivial, it need not be addressed in depth. Even assuming, arguendo, that Canales is a "contractor" under the Regulations, the Court finds that her debarment was procedurally and substantively invalid.

require that the contractor be debarred." Id. § 9.406.1(a). Consequently, "[b]efore arriving at any debarment decision," the DO is required to consider "the seriousness of the contractor's acts or omissions and any remedial measures or mitigating factors" that are relevant. Id. While the "existence or nonexistence of any mitigating factors or remedial measures . . . is not necessarily determinative of a contractor's present responsibility," the Regulations are clear that the Debarring Official should consider such factors. Id.

During her debarment proceedings, Canales presented several mitigating factors to the DO considering her case, Thomas Sharpe. These included, inter alia, her "spotless record before" her criminal offense, the fact that five years had passed without incident since that offense, and her "extensive business" with several other federal agencies in the interim, all of which were aware of her misdemeanor conviction when they chose to contract with her. See Admin. R. at CAN0111. In the Debarment Notice he issued to Canales, Sharpe acknowledged her argument that her "'spotless record' prior to the offense and business record since militate against imposition of debarment" but explained that "I do not agree. Given the facts and nature of your offense, debarment is the appropriate course of action." Id. at CAN0011. Nothing in the Debarment Notice, or the Administrative Record, explains Sharpe's reasoning in coming to this conclusion.

-13-

Sharpe's failure to address in any detail the mitigating factors Canales raised, or to explain why he gave them so little weight, makes it impossible to evaluate whether there was a "rational connection" between the facts of her case and his decision to impose debarment. See Baltimore Gas & Elec. Co., 462 U.S. at 88. Without such evidence, the Court cannot conclude that Sharpe followed the FAR's requirement that he consider mitigating factors prior to debarring Canales and thus cannot "properly exercise its limited review of the substance of [his] decision." Roemer v. Hoffman, 419 F. Supp. 130, 132 (D.D.C. 1976).

In Roemer, a case that is highly persuasive given the present facts, the Department of the Army debarred the plaintiff eleven years after he was convicted of bribery. See 419 F. Supp. at 131. During the course of his debarment proceedings, the plaintiff presented several mitigating factors that he claimed made debarment inappropriate. Among these was the fact that the Army had been contracting with him for over ten years, and without complaint, with full knowledge that he had been convicted of bribery. See id. In the debarment notice the Army ultimately issued, the DO acknowledged that "he was aware of at least the most important of [the mitigating] factors" but did not discuss why he decided to impose debarment anyway. Id.

Because the DO failed to explain why he "attributed little or no importance to [the mitigating factors] and what it was about the

offense which necessitates, despite these factors, a debarment of three years," the court concluded that the proceedings were procedurally improper. Id.; see also Silverman v. United States Dep't of Defense, 817 F. Supp. 846, 849 (S.D. Cal. 1993) (holding that debarment was arbitrary and capricious because agency "essentially failed to consider the mitigating effects" of contractor's record before, and history since, a misdemeanor plea).

Canales, like the plaintiff in Roemer, presented a variety of mitigating factors to the DO. Here, as in Roemer, the DO acknowledged that such factors existed, but imposed the maximum term of debarment without explaining why he found them unpersuasive.[7] In the absence of such an explanation, the Court must reach the same conclusion as did the Roemer court. Accordingly, because Sharpe did not in any way explain his decision to impose debarment rather than a lesser sanction, given the strength of the mitigating factors, the Court cannot conclude that that decision was rational or that Sharpe satisfied the procedures outlined in FAR § 9.406.1(a).

    **2.  Canales' Debarment Notice Is Facially Inaccurate and Does Not Present a Rational Basis for the Agency's Action**

---

    [7] The contractor in Roemer was tried and convicted of accepting a bribe while employed by the federal government. Canales, by contrast, pleaded guilty to making a false writing during an official investigation. She was never even accused of breaking any bribery laws, let alone convicted for doing so. As a result, a consideration of the mitigating factors would likely carry greater weight in her case than the plaintiff's in Roemer.

Apart from the procedural deficiencies outlined above, there is a separate ground for setting aside Canales' debarment: the Debarment Notice Sharpe issued to her is substantively inaccurate and presents no rational basis for the action taken.

The FAR set forth numerous grounds for debarment, including a contractor's "conviction of or civil judgment for:" "fraud or a criminal offense in connection with (i) obtaining, (ii) attempting to obtain, or (iii) performing a public contract or subcontract;" "commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property;" and "commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects the present responsibility of a Government contractor or subcontractor."  Id. §§ 9.406-2(a)(1), (3), (5).

In Canales' Debarment Notice, which is not a model of clarity, Sharpe cites two of these provisions as grounds for her debarment: Section 9.406-2(a)(5), which authorizes debarment for any offense "indicating a lack of business integrity or business honesty;" and Section 9.406-2(a)(1), which permits debarment where a contractor has been convicted of "fraud or a criminal offense in connection with (i) obtaining, (ii) attempting to obtain, or (iii) performing a public contract or subcontract." According to Sharpe, Canales is subject to debarment because she has been "convicted of violating

U.S.C. § 1018, making a false writing in connection with an on-going procurement." Admin. R. at CAN0011. That conviction, he explains, indicates a lack of business integrity or honesty and therefore "meets the minimum requirements of this section to constitute a cause for debarment." Id.

Sharpe's statement is incorrect on its face. Canales pleaded guilty to making a false writing during an official investigation, which is illegal under 18 U.S.C. § 1018. She was neither charged with, nor convicted of, doing anything improper "in connection with an ongoing procurement."[8] As a result, Sharpe appears to have based his decision to debar her on a conviction that never occurred.[9]

---

[8] Indeed, as noted above, during Canales' Sentencing Hearing, the Assistant United States Attorney prosecuting her case stated explicitly that there was "no allegation that Canales broke any of the bribery or gratuity laws or corruption offenses." Sentencing Hr'g Tr., United States v. Maria Canales, No. 04-CR-135 (D.D.C. July 13, 2004).

[9] Given that Canales was not convicted of any bribery or anti-gratuity offense, there can be no question that Section 9.406-2(a)(1) is inapplicable to the facts of this case. Whether her guilty plea for making a false writing during an official investigation could be grounds for debarment under FAR Section 9.406-2(a)(5), as an "offense indicating a lack of business integrity or business honesty" is likely a closer question. That issue is not before the Court at this time, however, because Sharpe failed to reference her actual conviction in the Debarment Notice, instead grounding his decision on a mistaken impression that she had been convicted of "making a false writing in connection with an on-going procurement." Notwithstanding Government counsel's representation that Sharpe did, in fact, make a determination that Canales' actual offense indicated a lack of business integrity, there is no evidence in the administrative record that Sharpe recognized the precise offense Canales pleaded to, let alone that

-17-

Because the Debarment Notice is facially inaccurate, the Government has presented no "rational connection" between the facts of her case and the decision to debar Canales. See <u>Baltimore Gas & Elec. Co.</u>, 462 U.S. at 88. Exercising its limited review, the Court must conclude, therefore, that the debarment was arbitrary, capricious, and contrary to the FAR. It must be, and is hereby, set aside. Consequently, Plaintiffs' Cross Motion for Summary Judgment is granted in part, as to Canales' debarment.

**B.   Because Defendants Have Withdrawn M Squared's Debarment, Plaintiffs' Challenge to it Is Moot and Must Be Dismissed Without Prejudice**

On September 29, 2006, Treasury voluntarily withdrew M Squared's debarment, informing the company that it intended to "re-evaluate whether to invoke the debarment process for M Squared." <u>See</u> Withdrawal Letter. In their Motion to Dismiss, filed on September 29, 2006, Defendants also informed the Court that they are voluntarily withdrawing M Squared's debarment. Defendants argue that as a result of this withdrawal, any loss has been restored and M Squared's challenge to its debarment is therefore

---

he believed such an offense constituted grounds for debarment under Section 9.406-2(a)(5). For this same reason, Defendants' <u>post</u> <u>hoc</u> effort to draw a distinction between the DO's "primary" reason for debarring Canales, i.e. her "conviction of a criminal offense," and the "secondary" basis, i.e. making a false writing in "connection with an ongoing procurement," is unpersuasive. <u>See</u> Defs.' Opp'n, Reply, and Mem. in Support of Mot. to Dismiss Part, at 9.

moot.[10]  The Court agrees.

"A case is moot if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Pharmachemie B.V. v. Barr Lab., Inc., 276 F.3d 627, 631 (D.C. Cir. 2002) (internal citation omitted).  Where there is no harm redressible by the Court, the claim is moot and must be dismissed. Id.

In the Complaint, M Squared seeks as relief the termination of Treasury's June 27, 2006 debarment.  Compl., Prayer for Relief, ¶ 2.  As a result of Treasury's intervening withdrawal of the debarment, M Squared's claim is moot "because [it] already has 'obtained everything that [it] could recover . . . by a judgment of this court in [its] favor.'"  Hall v. CIA, 437 F.3d 94, 99 (D.C. Cir. 2006) (citing Better Government Ass'n v. Department of State, 780 F.2d 86, 91 (D.C. Cir. 1986)) (internal citations omitted, bracketed pronouns added). Plaintiffs' claim as to M Squared's debarment must therefore be dismissed without prejudice.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, Defendants' Motion for

---

[10] The September 29, 2006 letter from Treasury to M Squared purports to "remand" M Squared's debarment notice "for further consideration." Withdrawal Letter. Defendants' Motion to Dismiss also requests a remand order from the Court.  Because the Court finds that the withdrawal of the debarment moots M Squared's claim, the proper remedy is dismissal of the claim, not remand.

Summary Judgment [Dkt. No. 22] is **denied** and Plaintiffs' Cross Motion for Summary Judgment [Dkt. No. 30] is **granted in part** as to Canales' Debarment.  Defendants' Motion to Dismiss in Part [Dkt. No. 36] is **granted.**

An Order will issue with this Memorandum Opinion.


July 16, 2007
/s/
Gladys Kessler
U.S. District Judge


**Copies to**: **attorneys on record via ECF**